J8R7MCCC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

CHANCE MCCURDY,

                    Plaintiff,

          v.                              17 Civ. 5168 (GHW)

CITY OF NEW YORK, et al.,

                    Defendants.

------------------------------x
                                          New York, N.Y.
                                          August 27, 2019
                                          10:00 a.m.

Before:

                    HON. GREGORY H. WOODS

                                          District Judge

                         APPEARANCES

THE LAW OFFICES OF FRED LICHTMACHER, P.C.
     Attorneys for Plaintiff
BY:  FRED LICHTMACHER

NEW YORK CITY LAW DEPARTEMENT
     Attorneys for Defendants
BY:  BRACHAH GOYKADOSH

J8R7MCCC

1          (In open court)

2          (Case called)

3          MR. LICHTMACHER:  Good morning, your Honor.  For the

4   plaintiff, Fred Lichtmacher.

5          THE COURT:  Thank you.  Good morning.

6          MS. GOYKADOSH:  Brachah Goykadosh on behalf of

7   defendants City of New York, Captain Bell and Correction

8   Officer Mitchell.  Good morning, your Honor.

9          THE COURT:  Thank you very much.  Good morning.

10          So, thank you all for being here.  We're here for a

11   final pretrial conference with respect to this matter.  There

12   are a number of matters that are on my agenda for this

13   conference.  Let me provide you with a brief overview of what

14   those are before we begin.

15          So, first, I hope to discuss the motions in limine.

16   Then I hope to discuss trial logistics generally.  Then I will

17   take up the topic of jury selection.  And we will talk about

18   the timing of our charging conference and something about the

19   jury instructions generally and special interrogatories with

20   respect to any qualified immunity issues.  I will provide you

21   with some guidance about trial practice generally.  I hope to

22   then discuss briefly the parties' witness list.  We will also

23   talk about your exhibits and engage in a discussion of the

24   joint pretrial order.  And I hope to spend some time talking

25   about the prospect for an amicable resolution of the case prior

J8R7MCCC

1      to trial at the end of the conference.

2              So, that's my agenda.  There are a number of things

3      that are on the agenda which may take us some time to go

4      through.  Let me ask the parties if there is anything that you

5      would like to raise at the outset before we begin.

6              First, counsel for plaintiff?

7              MR. LICHTMACHER:  Sure.  Small matter.  I didn't

8      receive from my adversary -- though she assured me I'm going to

9      get them soon -- their proposed jury instructions.  And as I

10     informed the Court and my adversary in a phone conference I'm

11     going to be tied up tomorrow, which is why I couldn't make a

12     conference tomorrow.  So, I'm hoping I can get an extra day or

13     so -- and that's all I'll need -- with the jury instructions if

14     we're going to do joint instructions.  Otherwise, it would be

15     quite difficult if not impossible.  I haven't received anything

16     from them.  I'm being assured I'm going to get them soon, but I

17     need the time, otherwise I can't work on them.

18             THE COURT:  Thank you.

19             Counsel?

20             MS. GOYKADOSH:  Your Honor, we have not given

21     Mr. Lichtmacher our proposed jury instructions yet.

22     Mr. Lichtmacher is correct that he has sent me some of his.  If

23     the Court would give us until Thursday, I think that would be

24     helpful for both parties.  We are working on it, and I intend

25     to give it to plaintiff's counsel as soon as I can.

J8R7MCCC

<table>
<tr><td>1</td><td>THE COURT:  Fine.</td></tr>
</table>

1          THE COURT:  Fine.

2          MR. LICHTMACHER:  Your Honor, if I may.  As long as I

3   get them at some point Thursday before the close of business --

4   well before the close, so I can actually explore them.

5          THE COURT:  Thank you.  I understand they will be

6   provided sooner than that.  Is that right, Ms. Goykadosh?

7          MS. GOYKADOSH:  Yes, your Honor.

8          MR. LICHTMACHER:  Thank you, your Honor.

9          THE COURT:  Good.  Thank you.

10         Counsel for defendants, anything that you'd like to

11   raise that falls outside of the scope of the agenda that I've

12   just described?

13         MS. GOYKADOSH:  Not at this point, your Honor.

14         THE COURT:  Good.  Thank you.

15         So, let me just raise two issues which are slightly

16   unique.  They fall into the category of trial logistics, but I

17   want to raise them at the outset because they're relatively

18   discrete.

19         First, seating of the parties.  So here counsel for

20   plaintiff you are seated at the front table, as is customary.

21   Counsel for defendant is at the back table.  I expect that the

22   marshals will ask that we switch that seating arrangement given

23   that the defendant is in custody.

24         MR. LICHTMACHER:  Plaintiff, your Honor, if I may

25   correct you.

J8R7MCCC

1        THE COURT:  I'm sorry.  So that plaintiff will be

2   sitting at the back table -- thank you.  Sorry if I said

3   defendant -- given that the plaintiff is in custody.

4        So, I expect that during the trial and subsequent

5   proceedings I will ask you, counsel for plaintiff, to sit at

6   the back table, counsel for defendants can sit at the front

7   table.  I don't expect that anyone on the jury will take

8   anything from that, but I think it will be necessary

9   logistically for the marshals.

10        Second, we have the executed version of the order to

11   produce Mr. McCurdy.  We had the executed version that was

12   signed by Judge Cote prior to the case's transfer to me.  It

13   should still be effective, and counsel for plaintiff, if you

14   wish to collect that, you're free to do so.  I recommend that

15   you do so so that Mr. McCurdy is timely produced.

16        MR. LICHTMACHER:  Do you want me to correct it?

17        THE COURT:  No, to collect it.

18        MR. LICHTMACHER:  Yeah, we did, and we served it, and

19   then I got it bounced, and I believe the clerk had approved the

20   new one.  So should I just leave those alone, and Judge Cote's

21   part will know to bring Mr. McCurdy up here?

22        THE COURT:  Yes.  We will notify the marshals that

23   they should bring Mr. McCurdy to this courtroom rather than

24   Judge Cote's.

25        MR. LICHTMACHER:  So I need do nothing with the writs

J8R7MCCC

1    at this point.

2              THE COURT:  Correct.  Just properly provide it to the

3    correct people so that they produce him.

4              I think that you need the hard copy of the writ, which

5    my clerk has from Judge Cote.  They handed it to us.  They had

6    been holding it, waiting for it to be picked up by counsel.

7              Good.  So let's talk about the motions in limine.

8    There are a number of motions.  I hope to take them up in turn.

9    I'm prepared to rule with respect to substantially all of them.

10   There are certain of them as to which I believe that I would

11   benefit from additional argument.  I will try to highlight

12   where those are.

13             What I propose to do, counsel, is to rule on these

14   based on the written submissions that have been presented to

15   the Court, to the extent that I'm capable of doing so.

16             Where there are issues that I expect I will benefit

17   from additional oral argument, I will solicit it.  So that is

18   my proposed approach.  I would be happy to hear from either of

19   you if you have an alternative proposal, but that appears to be

20   a relatively efficient means of proceeding.  I would be happy

21   to hear from either party if you would like to suggest a

22   different approach.

23             First, counsel for plaintiff?

24             MR. LICHTMACHER:  That's fine, your Honor.

25             THE COURT:  Thank you.

J8R7MCCC

1          Counsel?

2          MS. GOYKADOSH:  No, your Honor.

3          THE COURT:  Good.  Thank you.

4          So, please bear with me.  I will turn to you when I

5     ask for argument.  So I'm now prepared to rule on certain of

6     defendant's motions in limine filed at docket number 76.

7     Plaintiff's motions in limine filed at docket number 90, and

8     defendant's supplemental motions in limine which were included

9     in defendants' letter filed at docket number 93.  As I have

10    just noted, I also have some questions for counsel regarding

11    some of the motions.

12         "The purpose of an in limine motion is to aid the

13    trial process by enabling the Court to rule in advance of trial

14    on the relevance of certain forecasted evidence, as to issues

15    that are definitely set for trial, without lengthy argument at,

16    or interruption of, the trial."  *Hart v. RCI Hosp. Holdings,*

17    *Inc.* 90 F.Supp. 3d 250, 257–58 (S.D.N.Y. 2015) (quoting

18    *Highland Capital Management L.P. v Schneider,* 551 F. Supp. 2d

19    173, 176 (S.D.N.Y 2008)).  "Evidence should not be excluded on

20    a motion in limine unless such evidence is 'clearly

21    inadmissible on all potential grounds.'"  Id. (quoting *National*

22    *Union Fire Insurance Company of Pittsburgh Pa. v. L.E. Myers*

23    *Co. Group* 937 F.Supp. 276, 287 (S.D.N.Y. 1996)).

24         The Federal Rules of Evidence govern the admissibility

25    of evidence at trial.  Under Rule 402, evidence must be

relevant to be admissible.  Federal Rule of Evidence 402.  The

"standard of relevance established by the Federal Rules of

Evidence is not high."  *United States v. Southland Corp.*, 760

F.2d 1366, 1375 (2d Cir. 1985).  If the evidence has "any

tendency to make a fact more or less probable than it would be

without the evidence" and "the fact is of consequence in

determining the action" it is relevant.  Federal Rule of

Evidence 401.  Nonetheless, under Rule 403, relevant evidence

may be excluded if "its probative value is substantially

outweighed by a danger of one or more of the following:  Unfair

prejudice, confusing the issues, misleading the jury, undue

delay, wasting time or needlessly presenting cumulative

evidence."  Federal Rule of Evidence 403.  The Second Circuit

has instructed that "district courts have broad discretion to

balance probative evidence against possible prejudice" under

Rule 403.  *United States v. Bermudez*, 529 F.3d 158, 161 (2d

Cir. 2008) (citation omitted).

     Federal Rule of Evidence 404(b) provides that

"evidence of a crime, wrong, or other act is not admissible to

prove a person's character in order to show that on a

particular occasion the person acted in accordance with the

character."  However, the "evidence may be admissible for

another purpose, such as proving motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake or

lack of accident."  Federal Rule of Evidence 404(b).  "The

Second Circuit's 'inclusionary' rule allows the admission of

such evidence 'for any purpose other than to show a defendant's

criminal propensity as long as the evidence is relevant and

satisfies the probative prejudice balancing test of Rule 403 of

the Federal Rules of Evidence.'" *United States v. Greer*, 631

F.3d 608, 614 (2d Cir. 2011) (quoting *United States v. Inserra*,

34 F.3d 83, 89 (2d Cir. 1994)).  "The district court has wide

discretion in making this determination ..." *United States v.*

*Carboni*, 204 F.3d 39, 44 (2d Cir. 2000).

Defendants' motion in limine number one.

Defendants have moved to dismiss plaintiff's claim for

Monell liability or in the alternative to bifurcate the trial

into an individual liability stage followed by a Monell

liability stage.  Plaintiff's motion to dismiss is denied as

untimely, but its motion to bifurcate is granted.

Defendants argue that plaintiff's Monell liability

claim should be dismissed "as a matter of law."  It is not

clear from the face of defendants' motion whether defendants

intend their motion to be a motion for judgment on the

pleadings under Federal Rule of Civil Procedure 12(c) or a

motion for summary judgment under the Federal Rule of Civil

Procedure 56.  Although parts of defendants' motion reference

the sufficiency of plaintiff's pleadings, defendants also argue

that plaintiff has failed to put forth any evidence in support

of various aspects of his claims.  Regardless of how

defendants' motion is construed, the Court concludes that it is

untimely.  And I recognize that despite the arguments that

point to the evidence or lack thereof in this case, defendants

characterize this as a Rule 12(c) motion.

Plaintiff filed his second amended complaint on June

22, 2018.  Docket number 51.  Defendants chose not to move to

dismiss the second amended complaint in the window following

the filing of that complaint.  A decision presumably based on

strategic considerations regarding the likelihood of success of

such a motion are strategic considerations that the Court can

appreciate.  Instead, defendants filed an answer to the second

amended complaint on July 6, 2018.  Docket number 52.  Pursuant

to the Court's February 20, 2018 order issued pursuant to Rule

16, motions for summary judgment were to be filed no later than

August 30, 2018.  Docket number 38.  Defendants did not file a

motion for summary judgment.  Instead, defendants waited for

almost a year after they filed their answer before filing the

motion to dismiss now under consideration styled as a motion in

limine.

Although Rule 12(c) permits a party to bring a motion

for judgment on the pleadings at any point after the pleadings

are closed, as long as it is "early enough not to delay trial"

courts in this circuit have consistently held that "in limine

motions are generally not the appropriate vehicle for effecting

dismissal."  See *Weiss v. La Suisse, Societe D'Assurances Sur*

J8R7MCCC

*La Vie*, 293 F. Supp. 2d 397, 403, (S.D.N.Y. 2003) (quoting *TVT*

*Records, et al. v. Island Def Jam Music Group*, et al., 250 F.

Supp. 2d 341, 344-45 (S.D.N.Y. 2003)); see also *New Am. Mktg.*

*FSI LLC v. MGA Entm't, Inc.*, 187 F.Supp. 3d 476, 481 (S.D.N.Y.

2016); *Ling Nan Zheng v. Liberty Apparel Co, Inc.*, 2009 WL

10699702 at *2. (S.D.N.Y. January 14, 2009).  Given the factors

that I am about to outline, I have no difficulty concluding

that this motion was not filed early enough so as to not delay

trial.

            As I mentioned a moment ago, while styled as a Rule

12(c) motion, the motion also raises evidentiary issues that

are appropriate for resolution on summary judgment.  To the

extent that the defendants seek to raise challenges to the

sufficiency of the evidence now, as suggested by their

submission, defendants' motion is clearly delinquent under the

scheduling order entered by the Court pursuant to Rule 16,

which established a deadline for submissions of motions for

summary judgment.  In a manner reminiscent of the defendants'

failure to challenge the amended complaint shortly after it was

filed, defendants failed to file a motion for summary judgment

by the deadline established by the Court under Rule 16.  They

provided no justification for their failure to do so, and have

not requested an extension of that deadline.  Because they

failed to challenge the sufficiency of the plaintiff's evidence

at summary judgment, they are left to take up the question of

J8R7MCCC

1    whether his evidence is sufficient at trial.  This is the

2    natural consequence of the defendants' failure to file a timely

3    motion for summary judgment.

4         Now, understanding that this motion is styled as a

5    Rule 12(c) motion, it is untimely.  Defendants' motion was

6    filed approximately three weeks before trial was scheduled to

7    begin on July 22, 2019, so far too little time in which the

8    Court then presiding over the case could resolve a substantive

9    motion to dismiss the complaint.  And it is a scantly longer

10   period of time prior to the actual trial date.

11        I note too that indeed only one week in advance of

12   trial defendants have filed a letter with the Court just

13   yesterday detailing additional arguments why plaintiff's Monell

14   claim should be dismissed.  The Court perceives no

15   justification for this inordinate delay and believes that

16   arguments brought the week before trial with respect to

17   potential dismissal of an action are, simply put, clearly not

18   early enough to not delay trial.

19        Informing my decision here is the fact that

20   defendants' motion was styled as a motion in limine.  Simply

21   put, the submission by defendants did not flag that there is a

22   substantive issue going to the merits of the case for the

23   Court's consideration.  The manner of presenting this argument

24   in the form of a motion in limine informs my decision that it

25   is untimely.  The defendants did not alert the Court to the

fact that they're filing a dispositive motion and, as I'll comment on briefly, it does not satisfy the requirements for such a motion.

I note just as an observation, that under my individual rules of practice, such a motion for dismissal on the pleadings would not be permitted to be filed without first requesting a premotion conference.  At the time, this case was before Judge Cote, and therefore my rule did not apply.  I mention this only as a point of reference to explain very simply that courts find it useful -- I find it useful for a party to identify if they expect to bring a dispositive motion to the Court so that I can plan for it.  Here defendants did not do so.  Instead, they stealthily built this purported motion for dismissal of the action into a motion that was styled as a motion in limine.  That fact informs my judgment that it was not brought early enough not to delay trial.

Similarly, as I noted earlier, whether under Rule 12(c) or 56, the briefing with respect to this motion was not adequate.  It did not, as we discussed in our brief conference last week, do even the simple work of analyzing the specific deficiencies of the complaint.  The Court cannot be reasonably expected to take up and decide what I believe to have been an inadequately briefed and noticed motion in the timing permitted by defendants' filing.  Defendants' motion to dismiss is denied as untimely.  Again, it was not filed early enough so as to not

delay trial.

And, as I have commented upon here, defendants had
ample opportunities to raise this type of issue with the Court
through earlier motion practice under Rule 12 or through motion
practice under Rule 56, and the decision to raise this at this
late stage does not weigh in favor of its granting the motion.

There is, however, considerable support in this
Circuit for Defendants' motion to bifurcate, which is why I'm
going to grant it.  Rule 42(b) states that "for convenience, to
avoid prejudice, or to expedite and economize, the court may
order a separate trial of one or more separate issues, claims,
cross-claims, counterclaims or third-party claims."  "Courts in
this Circuit favor bifurcating Monell claims." *Mineo v. City
of New York*, No. 09-cv-2261 (RRM), 2013 WL 1334322 at *1
(E.D.N.Y. March 29, 2013) (collecting cases); see also *Bombard
v. Volp*, 44 F.Supp. 3d 514, 528 (D. Vt. 2014) (granting motion
to bifurcate because jury's decision on individual liability
could moot plaintiff's Monell claim and because evidence of
other alleged incidents of excessive force within the
department could prejudice the individual defendant).  I point
to the *Volp* decision in part because its holding is very
similar to my analysis of the situation presented here.

The Court agrees with defendants that there are
significant efficiencies to be gained by bifurcation due to the
differences in proof required for the individual liability

J8R7MCCC

Monell claims.  Deferring the Monell claims will substantially
shorten the length of the trial in the event that there is no
finding of liability against the individual defendants.  Many,
if not most of, the plaintiff's proposed witnesses at this time
go to the Monell issues.

Defendants have represented that they believe that the
Monell claims fully tried would add weeks to the length of the
trial.  While I discount that as a possible overestimate, based
on our discussion last week, I believe that the trial of the
Monell issues will add substantial time to the duration of the
trial.  I understand that the individual defendants constitute
all of the officers involved in the alleged use of force, so
there is no basis for Monell liability in the absence of a
finding of liability as to them.  Therefore, if there is a
finding of no liability -- or if plaintiff, rather, does not
establish liability -- we will avoid the need to try the Monell
claims at all, resulting in substantial efficiency for the
court and our prospective jurors as well as the parties and
their counsel.

Furthermore, the evidence of other violent incidents
which plaintiff intends or wishes to introduce in support of
his Monell claims could significantly prejudice the individual
defendants because of the nature of those incidents and create
a risk of jury confusion, so I believe that there is ample
justification for the request that I bifurcate the trial of the

J8R7MCCC

1    Monell claims, and I am granting that application.

2         We will discuss momentarily how it is that we will

3    handle the effect of this bifurcation in terms of discussing

4    scheduling with the jury.

5         Defendants' motion in limine number 2.

6         Defendants have moved to preclude plaintiff from

7    referring to defendants counsel as "city attorneys" citing the

8    risk of prejudice if plaintiff is allowed to imply to the jury

9    that the City of New York will pay a potential verdict rendered

10   against the individual officer defendants.  This is a standard

11   request in these types of actions and is frequently granted by

12   courts in this Circuit for good reason.  See, e.g. *Nnodimele v.*

13   *Derienzo,* 2016 WL 3561708 at *3 (E.D.N.Y. June 27, 2016);

14   *Estate of Jaquez v. Flores*, 2016 WL 1060841 at *2 (S.D.N.Y.

15   March 17, 2016); *Simpson v. the City of New York*, 2015 WL

16   5918182 at *6, (S.D.N.Y. October 9, 2015).  The Court agrees

17   that defendants' concerns of prejudice are valid.  Accordingly,

18   Defendants' motion is granted.

19        The Defendants' motion in limine relates to a request

20   that the name of the City of New York be removed from the

21   caption of this action.  Plaintiff does not oppose this motion

22   but simply states that the outcome of this application should

23   be premised on the Court's ruling on the defendants' first

24   motion in limine regarding plaintiff's Monell claim.

25        The reasons that I've discussed already which favor

1   bifurcation of the trial -- specifically defendants' concern

2   about jury confusion -- also favor granting this motion as to

3   the caption and verdict sheet used during the individual

4   liability phase of the trial.  If, I believe, we include the

5   name of the City in the caption of the case during the

6   individual liability phase of the case, jurors may speculate

7   regarding the reason for its inclusion.  Excluding the

8   reference from materials submitted to them during the

9   individual liability stage of the case will avoid that

10  potential juror confusion with no countervailing disadvantage.

11  Accordingly, defendants' motion is granted in part.  We will

12  take up what the nature is of the caption with respect to

13  submissions to them in the Monell liability phase of the case

14  as and when we reach it.

15          Defendants' motion in limine number 4.

16          Defendants have moved to preclude plaintiff from

17  presenting any evidence or suggesting to the jury that the City

18  of New York may indemnify the individual defendants in this

19  case.  Plaintiff does not oppose this motion, indicating that

20  he does not intend to present such evidence.  Because I accept

21  plaintiff's proffer on this issue, I decline to rule on

22  defendants' motion at this time.  I expect that plaintiff will

23  conduct himself as represented.

24          Now, counsel, defendants' motions in limine number 5

25  and number 6 both relate to evidence of Department of

J8R7MCCC

Correction policies or directives.  They also with respect to

defendants' motion in limine number 5 in particular relate to

Department of Correction training.  So, counsel, I'd like to

hear from you briefly on this set of issues.  I ask because

plaintiff has indicated in response to defendants' motion in

limine number 6 that he does not intend to introduce such

evidence, namely evidence of DOC policies or directives, and as

a result he would request leave from the Court before doing so.

What I want to clarify is whether that proffer by

plaintiff -- commitment by plaintiff -- applies to the subject

of both defendants' motion in limine number 6 and defendants'

motion in limine number 5, which involves a slightly broader

pool of potential evidence.

Counsel for plaintiff, can you comment?

MR. LICHTMACHER:  It certainly does apply to both,

your Honor, and I have every intention -- I would not like to

have a mistrial -- of approaching and clearing it with your

Honor and presenting a legitimate reason that the evidence

should be accepted and heard by the jury before I introduce it.

THE COURT:  Thank you.  Fine.

So, I will make a single comment about both

defendants' motion in limine 5 and 6.  Defendants have moved in

each of those respectively to preclude plaintiff from referring

to or offering any evidence of Department of Correction

policies or directives, arguing that the jury may conflate a

J8R7MCCC

violation of the DOC policies with a constitutional violation.
They have also moved to preclude plaintiff from inquiring about
any DOC training.

Plaintiff has indicated and has confirmed here that he
does not intend to introduce such evidence, and that should an
unanticipated need arise, he would request leave from the Court
before doing so.  Accordingly, defendants' motion in limine is
denied without prejudice based on that proffer.

Should plaintiff decide that he wishes to refer to or
offer any of the evidence that I have just identified and which
are the subject of defendants' motions in limine 5 and 6, he
should -- as he has just committed to do -- promptly notify the
Court and defendants so that the defendants may renew their
objection before the evidence is presented to the jury and so
that the Court has the opportunity to review the arguments.

Now, with respect to defendants' motion in limine
number 7, defendants have moved to preclude plaintiff from
introducing any evidence concerning the New York City
Department of Correction's use of force investigation into the
underlying incident.  Plaintiff has indicated that he does not
intend to introduce such evidence, except that he may use
related evidence for impeachment purposes.  Plaintiff again
with respect to this pool of evidence has represented that he
would request leave from the Court before introducing such
evidence.  Again, I'm happy to accept the proffer by plaintiff

J8R7MCCC

on this issue, and on that basis decline to rule on the
defendants' motion.  Should plaintiff decide again that he
wishes to put forth evidence regarding the NYC DOC use of force
investigation for possible impeachment purposes, he should
notify the Court and the defendants, so the defendants can
renew their objection before any such evidence is presented to
the jury.

          Defendants' motion in limine number 8.

          Defendants have moved to preclude plaintiff from
inquiring about any disciplinary histories and civil rights
actions which have been filed against defendants.  This motion
appears to apply only to the individual liability phase of the
trial.  The Court notes that one of plaintiff's theory of
Monell liability is premised on Captain Bell's disciplinary
history.  At this junction the Court will not preclude evidence
presented by plaintiff of that disciplinary history during the
Monell liability phase of the trial.  However, with respect to
the individual liability phase of the trial, the Court expects
to hold plaintiff to his representation that again he would
request leave from the Court before he introduced any evidence
regarding the individual defendant's history and civil rights
actions which may have been filed against them.

          Should plaintiff decide that he wishes to put forth
evidence on those topics, for the reasons that we discussed
indicatively during our prior conference, among others, he

J8R7MCCC

1    should promptly notify the Court and the defendants, so that

2    defendants may renew their objection before any such evidence

3    is presented to the jury.

4            Defendants' motion in limine number 9.

5            Defendants have moved to preclude plaintiff from

6    introducing evidence or testimony that the actions of

7    defendants Bell or Mitchell, or any other officer, on February

8    19, 2015, caused him to experience any specific medical

9    injuries.  Defendants' motion is granted in part and denied in

10   part.

11           As we discussed -- and I understood from our

12   conversations -- and the parties generally agreed -- but

13   defendants are correct that plaintiff is not qualified to

14   testify to "medical matters beyond his knowledge." *Lisowski v.*

15   *Reinauer Transp. Co*. 2009 WL 763602, at *11 (E.D.N.Y. March 23,

16   2009).  However, plaintiff may testify regarding injuries that

17   he is capable of perceiving in his capacity as a lay witness.

18           For example, while plaintiff may not testify that the

19   incident underlying this case caused him to suffer a concussion

20   or nerve damage -- matters which require medical expertise in

21   order to diagnose those particular conditions -- he may testify

22   that after the incident he had, for example, bones sticking out

23   of his face or difficulty seeing or hearing, in other words,

24   things that are within his personal experience as a lay person.

25           To the extent that defendants wish to challenge the

J8R7MCCC

1    admissibility of specific testimony offered by the plaintiff,

2    they may renew -- or they may and should object to any such

3    evidence at trial.   But, as I've described, I'm granting this

4    motion in part and denying it in part.   Plaintiff is not

5    qualified to testify as a medical expert and, as a result, is

6    limited in his ability to testify regarding the causation of I

7    will call it specialized medical diagnoses.

8             Defendants' motion in limine number 10.

9             MS. GOYKADOSH:   Your Honor, may I just be heard with

10   regard to the causation point?

11            THE COURT:   You may.

12            MS. GOYKADOSH:   Just one point of concern.   I know

13   your Honor said that plaintiff can testify about some things

14   such as bones sticking out.   The reason why I have a concern is

15   because there were a number of fractures -- I'm sorry -- there

16   were no fractures besides for what is described as a cortical

17   step-off.   So, a lot of x-rays were conducted, and the only

18   finding was that there was a cortical step-off.   My lay

19   person's understanding of what a cortical step-off is is a

20   previous fracture that has not healed correctly.   That is the

21   only x-ray finding.   So I'm just --

22            THE COURT:   Let me say this.   I frankly don't know

23   that there is a lay understanding of what a cortical step-off

24   is.   I don't have any idea what that means.   I don't purport to

25   have more information than any prospective juror, but I would

J8R7MCCC

1    not even be able to guess at what that terminology meant.  So,

2    to the extent that the question is whether or not a lay person

3    can testify regarding the cause of the cortical step-off or

4    what a cortical step-off is, I will happily hear argument from

5    plaintiff.  But I appreciate the nature of the concern that

6    you're identifying.

7            Counsel for plaintiff, any argument on this particular

8    issue which relates, I will call it, to the capacity of

9    plaintiff to construe medical terminology that may be included

10   in medical records that may be admitted at trial?

11           MR. LICHTMACHER:  Without revealing conversations with

12   my client directly, it is my practice -- after having done many

13   of these -- that clients are not qualified to give what is

14   deemed to be medical evidence.  On the other hand, if someone

15   comes out and says I was hit here, I was hit there, they

16   x-rayed me over here, they x-rayed me over there, I hurt, I had

17   problems with it for six months afterwards, I didn't have a

18   problem before, that in my understanding and in my experience

19   has always been acceptable.

20           I don't expect Mr. McCurdy to be able to even use the

21   words that my adversary was just using.  I would be shocked,

22   and I would certainly inform him not to use any medical

23   terminology.  Other than that, I expect him to fully testify

24   about every place he was injured, you know, what he perceived

25   his injuries to be without medical terminology.  And frankly --

J8R7MCCC

```
 1     and I'm sure it was innocent -- but there is a little mistake

 2     about what is in the medical records, but that's not important

 3     at this moment.

 4              What is important is that he be allowed to indicate

 5     where he was injured, when he incurred those injuries.  He will

 6     not use medical language if I have my way, your Honor.  And I

 7     will attempt to again to inform him -- as I do with all of my

 8     clients -- that they're not doctors.

 9              THE COURT:  Thank you.

10              Counsel for defendant, any comments regarding that

11     response?

12              MS. GOYKADOSH:  Two comments, your Honor.  The first

13     is just going back to the cortical step-off issue.  I'm just

14     concerned that Mr. McCurdy might say my wrist was injured.  And

15     there is something on the x-ray that indicates that he has a

16     cortical step-off.  But there would be no way to counter that

17     testimony and explain to the jury that the cortical step-off

18     could be something that was a result of a previous injury.  So,

19     I just want to be sure about how we're going to deal with this.

20              THE COURT:  Let me see if I can focus this point, and

21     I will do so in just a moment.  What was your second comment?

22              MS. GOYKADOSH:  It was just with regards to the

23     x-rays, your Honor.  This was something that Mr. Lichtmacher

24     did say on our telephone conversation with the Court last week

25     and also again today.  Plaintiff did receive a number of
```

J8R7MCCC

1    x-rays, but I don't necessarily believe that the fact of

2    receiving x-rays in and of itself means that an inmate suffered

3    an injury, so I'm just a little bit concerned about how that

4    might be presented to the jury.  And I think I have Rule 403

5    concerns about misleading the jury that, oh, Mr. McCurdy got so

6    many x-rays, therefore there must have been something wrong.

7    So, that is my second concern.

8            THE COURT:  Thank you.

9            So, let me focus this first based on the scope of the

10   motion in limine.  The motion in limine relates to testimony

11   that the plaintiff would provide regarding I will call it

12   causation.  So, this is a motion in limine that's directed at

13   what I will describe as the first testimony regarding

14   causation.  And the argument here has been focused on the

15   question of what plaintiff can say regarding the things that

16   happened to him in his view and then his experiences of the

17   consequences of it.

18           I don't understand there to be substantial debate

19   regarding the scope of plaintiff's permissible testimony as

20   just described by Mr. Lichtmacher.  I do not take issue with it

21   in broad brush.  I'm not making a ruling on any testimony; it

22   hasn't been presented to me.  But I understand that the

23   testimony that's offered -- anticipated to be offered -- will

24   be about the plaintiff's personal experiences, how he alleges

25   he was hit, and then how he felt afterwards in the places where

J8R7MCCC

he was hit.  To the extent that he wants to talk about what

they did to him at the hospital afterwards in terms of x-rays,

I'm happy to discuss that separately under the rubric of Rule

403.

          The separate question goes to the medical documents.

And I read the motions in limine, and I did not see them as

being clearly addressed to I think the underlying concern

that's being raised now, namely what can plaintiff do with

medical records that they expect to introduce which contain

complicated medical terminology and as to which there is no

medical expert who can explain that medical terminology.

          I understand that that may be the gravamen of the

current concern, but the motion in limine does not specifically

address it, and doesn't address it in the context of the

defendants' proposed exhibit, which makes it a little more

difficult for us to address this question with specificity now.

          I understand that to be the issue raised, and I would

be happy to discuss it.  I believe it is a reasonable concern.

It's just not apparent to me that it was clearly raised in the

motion, because there is no discussion of the medical records

in the motion.  So, I understand that to be the principal

concern.  How would you like to go about addressing it, counsel

for defendants?

          MS. GOYKADOSH:  If your Honor would like, I would be

happy to brief the issue.  I apologize for not raising it in

J8R7MCCC

```
 1    our papers, however, I thought it would be best to raise it in
 2    advance of the trial.  Again, if your Honor would like a
 3    letter, I'm happy to do that.  I'm happy to discuss it with the
 4    Court now, whatever is the Court's preference.
 5              THE COURT:  Good.  Thank you.
 6              Let's come back to that.  I will save the point, and I
 7    understand the question.  Raising it before trial is a very
 8    good idea, and it is certainly the type of issue that might
 9    fall within the scope of a motion in limine.  We will discuss
10    how it is that any such issue will be presented to the Court
11    after I've gone through the remainder of these motions in
12    limine.
13              With respect to the actual issue presented, namely
14    plaintiff's testimony regarding causation, I will say again
15    that I'm granting it in part and denying it in part.
16    Directionally, the scope of plaintiff's anticipated testimony
17    as described by counsel appears to be consistent with my ruling
18    as a general matter.  Again, I reserve and will decide any
19    specific objections raised at trial with respect to any
20    particular testimony.  So, I'm not blessing in advance all
21    testimony by plaintiff.
22              Defendants' motion in limine number 10.
23              Defendants have moved to preclude plaintiff from
24    offering any testimony or arguing about what he believes
25    defendants could or should have done during the incident at
```

1    issue in this case because such testimony is irrelevant to the

2    legal questions at issue in this case.  Plaintiff concedes --

3    and the Court agrees -- that plaintiff may not testify as a use

4    of force expert.  However, the scope of the request here is

5    very broad.  The Court finds it very difficult to preclude

6    plaintiff from providing any testimony which relates to what

7    defendants could or should have done during the incident at

8    issue in this case.  Plaintiff, for instance, may testify -- or

9    might testify -- that he was not resisting the officers'

10   commands, from which a jury might infer that no force was

11   necessary to secure his compliance with the officers' orders.

12   Such testimony would arguably be barred by the defendants'

13   request, which is very broad.  It relates to what the officers

14   would or should have done, read in the very broad sense.

15           To the extent that the scope of this request is in

16   essence trying to limit plaintiff from testifying about the

17   alternatives that are available to police officers with respect

18   to the use of force, plaintiff I understand has conceded that

19   that does not fall within the scope of plaintiff's proper

20   testimony.  And because the scope of the request could be read

21   in such a broad way as I've described, I'm not going to grant

22   the motion; I'm denying it without prejudice.  Again, any

23   specific objection can be offered at trial, and I will rule on

24   it at the time.  I believe, however, that plaintiff's

25   concession may address much of the principal issue that was

J8R7MCCC

raised by the concern, namely whether plaintiff could testify

regarding alternative uses of force that a law officer in that

situation might have used or had available to her.

Defendants' motion in limine number 11.

Defendants have moved to preclude plaintiff from

referring to other purported instances of misconduct by

Department of Corrections officials.  As with defendants'

motion in limine number 8, this motion appears to apply only to

the individual liability phase of the trial.  The Court agrees

with defendants that any probative value this evidence may have

during the individual liability phase of the trial is

significantly outweighed by the risk of unfair prejudice to the

individuals.  Simply put, the jury could take from the prior

misconduct that they necessarily acted in conformity with that

conduct here, in connection with the individual claim at issue

in the individual liability phase of the case.  That is unduly

prejudicial to the defendants and risks jury confusion.

The motion is therefore granted in part.  However, I

note that the Court is not ruling on the preclusion of

plaintiff's reference to other instances of misconduct during

the Monell liability stage of the trial, if and to the extent

we reach that stage.

To the extent that there is any specific evidence of

misconduct that the defendants wish to exclude at such a phase

of the trial, defendants may and will have the opportunity to

1    at their discretion renew any objections under Rules 403 and

2    801, or any other applicable federal rules.

3            Now, defendants have also argued that plaintiff should

4    be barred from using terminology and colloquialisms, including

5    but not limited to the term or phrase "send a message".

6    Plaintiff has not contested this aspect of defendants' motion.

7    I could grant it as a result.  Instead, I'm going to grant it

8    in part and deny it in part, without prejudice as to renewal.

9            I decline to grant defendants' blanket request that

10   plaintiff be barred from using any colloquialism.  I would find

11   it very difficult to excise from counsel's vocabulary any

12   colloquialism.  Many colloquialisms are completely anodyne.

13   Defendants may renew their application at trial with respect to

14   any specific trial language that they find objectionable.

15           With respect to the specific request that I not permit

16   plaintiff's counsel to use the phrase "send a message," I will

17   grant that application in part at this time.  I will not permit

18   plaintiff's counsel to use the phrase "send a message" in his

19   opening statements to the jury, because I believe that it would

20   be inappropriately argumentative.  I can't see a vehicle in

21   which counsel would use those words in the context of his

22   examination of witnesses.  I am directing counsel to inform the

23   Court and defendants if that phrase is something that he may

24   wish to use during his closing arguments, particularly in the

25   context of the Monell liability stage of the case.  I question

J8R7MCCC

1    the justification for using it in the context of the individual

2    liability phase of the case, but again in order to police that

3    issue I simply ask that I and defense counsel be alerted if

4    that phrase, or a cognate of it, is expected to be used by

5    counsel for plaintiff at closing.  And I should say that I

6    would ask counsel for plaintiff to be very cautious about using

7    a cognate of that phrase in opening statements as well.

8              Defendants' motion in limine number 12.

9              In the event that plaintiff proves that he is entitled

10   to money damages, defendants have moved to preclude him from

11   suggesting a specific dollar amount to the jury.  Plaintiff

12   does not oppose this motion, indicating that he does not intend

13   to propose a dollar amount to the jury.  I accept plaintiff's

14   proffer on this issue.  I expect that he will conduct himself

15   accordingly and, as a result, I'm not ruling on defendant

16   defendants' motion.  Instead, I will rely on plaintiff's

17   proffer.

18             I now turn to defendants' motion in limine number 13.

19   In this motion, defendants have moved for permission to

20   introduce evidence of plaintiff's three prior convictions:

21   Plaintiff's July 17, 2014 conviction for attempted sexual

22   assault and for misdemeanor petty larceny, and his April 26,

23   2007 conviction for felony criminal sexual assault in the first

24   degree.

25             First, counsel for defendants, you included the

1    misdemeanor in the list of offenses that you say that you wish

2    to present to the jury, but you don't argue in favor of its

3    admission.  Is that a crime that you wish to put before the

4    jury?

5              MS. GOYKADOSH:  No, your Honor.

6              THE COURT:  Thank you.

7              So, counsel, I would benefit briefly from argument

8    regarding I will call it the probative value of these

9    convictions.  The July 17, 2014 felony conviction is admissible

10   under Rule 609, subject to Rule 403 considerations.  The April

11   I think it's 2017 -- I believe I said 2007 earlier -- felony

12   conviction is also admissible if I also find that its probative

13   value -- I'm sorry -- if I find that its probative value

14   supported by specific facts and circumstances substantially

15   outweighs its prejudicial effect.  I apologize, 2007 was the

16   earlier conviction.  With respect to it, I would need to find

17   that its probative value supported by specific facts and

18   circumstances substantially outweighs its prejudicial effect.

19             So here, counsel for defendants, I'd like to hear from

20   you why the probative value of each of these convictions meets

21   the threshold under 403 and under 609(b) with respect to the

22   2007 conviction.  And as to the latter, that is, the 2007

23   conviction, by virtue of the requirements of 609(b), I must

24   find that there are specific facts and circumstances that

25   substantially outweigh its prejudicial effect.  Can you make a

J8R7MCCC

1    proffer regarding why it is that that standard is satisfied

2    with respect to the 2007 conviction at the outset?  And then we

3    will also talk about the 2014 conviction.  Counsel?

4         MS. GOYKADOSH:  Yes, your Honor.  With regards to both

5    convictions, broadly speaking the 2007 and the 2014, both of

6    these involve sexual acts, and I believe it's sexual abuse,

7    actually rape, so what it goes to is plaintiff's status in

8    prison.  A rapist is not somebody who is well regarded in

9    prison; it's not an inmate who is respected, to say the least.

10   And this is important because plaintiff paints himself as an

11   influential Bloods member, a person who he claims Captain Bell

12   and Officer Mitchell relied upon.

13        What the officers will testify to is that they would

14   not rely on somebody who is a rapist, somebody who has these

15   convictions, because this person is not well regarded with

16   other inmates, he is not somebody who other inmates would

17   respect or look to.  So, that is why it is very relevant to

18   this case to have these convictions come in.

19        THE COURT:  Thank you.  Let me pull that apart with

20   respect to each of the two convictions.

21        So, I understand the argument that the fact that he is

22   known to be a sexual predator -- perhaps not, perhaps that's

23   not the right word -- we will develop the correct terminology

24   here, but I will use that word for purposes of our discussion.

25   Why is it important for the jury to know that he has been

1    convicted of it twice?  And, in particular, why is it important

2    for them to know that he was convicted of the earlier

3    conviction for felony criminal sexual act in the first degree?

4    In other words, if the important or probative value of this is

5    to establish a narrative that he is a known sex offender, why

6    is it that the probative value as to that offense substantially

7    outweighs its prejudicial effect, given that the 2014

8    conviction also establishes his sex offender status?

9           MS. GOYKADOSH:  Well, I think it goes to what your

10   Honor was saying with regards to calling him a sex offender.

11   With regards to the 2014 conviction, that's just for attempted

12   sexual abuse, so he tried to rape someone but he was not

13   successful.  In 2007 he actually raped somebody as an act of

14   retaliation.  So he did rape somebody in 2007.  In 2014 he just

15   tried to rape someone.

16          I mean we might be slicing hairs, but they are

17   different things.  He is a rapist; he raped somebody in 2007.

18   In 2014 he only tried to rape someone.  So, that's the

19   distinction, and that's why both of those felonies would be

20   relevant.

21          THE COURT:  Thank you.

22          Counsel, can you make a proffer that any -- well,

23   first, that either of the individual defendants was aware of

24   the specific nature of his prior conviction?

25          MS. GOYKADOSH:  Yes, your Honor.

J8R7MCCC

<pre>
 1              THE COURT:  Thank you.
 2              Each of them was aware of that?
 3              MS. GOYKADOSH:  Captain Bell was aware.
 4              THE COURT:  Thank you.
 5              Can you make a proffer regarding whether they can
 6    testify that it was common knowledge that they knew that people
 7    in the facility knew that he had been convicted of the earlier
 8    crime for rape as well as the attempted rape, to the extent
 9    that goes to his credibility in the jail environment?
10              MS. GOYKADOSH:  Yes, Captain Bell knew that.
11              THE COURT:  Thank you.  Fine.  Understood.
12              Counsel for plaintiff, let me hear from you with
13    respect to these issues.
14              MR. LICHTMACHER:  Counsel is attempting to get around
15    the enormous prejudice that any mention of these specific
16    crimes affects this trial.  These are words today that
17    justifiably are offensive to most people.  There is certainly a
18    heightened awareness of this type of problem.  It's been all
19    over the news.
20              I'm afraid that when people look at that particular
21    testimony or that particular evidence they will be able to
22    ignore the most important facet of this case, which is was he
23    abused himself -- not sexually -- but was he beaten up for no
24    reason, was excessive force used.  It gets us off the focus of
25    what is appropriate here.
</pre>

1          And for Captain Bell to testify as to what other

2     inmates knew, I mean that goes to her having hearsay knowledge.

3     I mean she can't testify to what people who aren't showing up

4     in court told her, clearly.

5          I think my allegation is more about the fact that they

6     believed that this was his status, that they believed he was a

7     powerful Blood.  And their belief that he is a powerful Blood

8     is very different than reaching into the minds of inmates who

9     are not going to testify and say, well, they believed he was a

10    powerful Blood, or they did not, or why not.  I'm left in the

11    position of what do I have to do, call other inmates to see if

12    he was respected and if the officers respected him or

13    thought -- it gets way off track, your Honor.  We are getting

14    far off.

15         Look, they have plenty of impeachment material here.

16    My client is not an angel, there is no doubt about that.  They

17    have the felonies; they're going to come up, I understand that;

18    but to have any mention of sex offender, the prejudice clearly

19    far outweighs any probative value that it has to what happens

20    in this case and what happened in these instances.  So, I just

21    can't see them testifying as to what other people thought of my

22    client.

23         THE COURT:  Thank you.

24         Counsel for defendants, any additional argument on

25    this point?

J8R7MCCC

1          MS. GOYKADOSH:  Yes, your Honor.  I think plaintiff

2     raised three points.  The first is the prejudice; the second is

3     what other inmates know; and then the third is the defendants'

4     own belief.

5          Just starting with the prejudice, it's always going to

6     be prejudicial to have a felony on somebody's record, but the

7     rules do allow felonies in some instances.  So, while there is

8     a lot in the news about rape and sexual abuse, that doesn't

9     necessarily mean that it doesn't come in in this trial.

10    Mr. McCurdy was convicted of these things; he can't run away

11    from them now.  So, there might be some prejudice, but that

12    doesn't necessarily mean that the evidence is automatically

13    excluded on that basis.

14         Going back to what the other inmates know and the

15    officers' beliefs, I think these things are intertwined.

16    Obviously, Captain Bell can't testify as to what other inmates

17    knew, however, she can testify that she would not rely on

18    somebody who is a rapist to help in prison because that person

19    would not be well regarded by other inmates.  She can testify

20    to that.  That is something that is within her knowledge.  So,

21    she can't speculate as to what other inmates might be talking

22    about, but she can testify based on her experience how somebody

23    who has been convicted of these things -- such as plaintiff --

24    would be regarded by the other inmates.

25         THE COURT:  Thank you.

J8R7MCCC

1              MR. LICHTMACHER:  May I, your Honor?

2              THE COURT:  Yes, please proceed.

3              MR. LICHTMACHER:  That's interesting, because although

4    we didn't have the issue until now in this case, my

5    understanding of DOC's procedures is that the particular crime

6    that somebody has been convicted of is not to be published

7    within the prison to the other inmates.  Now, I know that's

8    true upstate, and I will have to look at directives, and maybe

9    we can have further quick discussion about it, but my

10   understanding is when I have done extensive litigation upstate

11   with inmates, that people didn't know what the other people

12   were convicted of, and they didn't know a lot about the

13   people's backgrounds.

14             For instance, I had an instance -- without saying the

15   name, obviously -- where the woman was a police officer who had

16   been convicted of murder, and there was great pains taken not

17   to let the other inmates know that because of how prejudicial

18   it would be to her.

19             So, because I'm really hearing it put this way,

20   essentially for the first time, I would like to take a look at

21   the directives, and maybe we will have a short further argument

22   before it comes in.  But right now the overwhelming point here

23   is the prejudice in saying this is so far outweighed by any

24   need and any probative value.  It's clearly going to come in;

25   he's a felon; there is no way getting around it.  And the

J8R7MCCC

1    incident is while he is in jail.  There is no doubt he is in

2    jail when this goes on.  And there is no doubt he is in jail at

3    other times.  So, I don't see the need for this.  And, again,

4    I'm being redundant, I know, but the prejudice is excessive

5    here.  It should not be allowed in in any manner, your Honor.

6             THE COURT:  Thank you.

7             MS. GOYKADOSH:  Your Honor, may I briefly respond?

8             THE COURT:  You may.

9             MS. GOYKADOSH:  Just with regards to publishing the

10   charges, there is no allegation here that Captain Bell

11   published Mr. McCurdy's charges to anybody.  It could be the

12   inmates knew because of something else.  So there is simply no

13   allegation as to that.  I'm not really sure why we would need

14   any briefing on that, but I just wanted to touch that point.

15   And then with regards to the prejudice, again I just want to go

16   back to the statute that plaintiff was convicted of in 2014.

17            THE COURT:  I'm sorry.  Please go on, counsel.  I'm

18   sorry.  I apologize.  Please proceed.

19            MS. GOYKADOSH:  Sorry, your Honor.  One of the

20   elements of that crime are forcible compulsion, so that is to

21   force somebody to engage in a sexual act with plaintiff.  So, I

22   think that necessarily goes to Mr. McCurdy's credibility and

23   who he is on the witness stand and why he might do certain

24   things to force people to behave in a certain way.  So, I do

25   think it's relevant; I do think that any probative value is

J8R7MCCC

 1    substantially outweighed by any prejudice.

 2              THE COURT:  Thank you.

 3              Counsel, let me ask one other question just as a

 4    factual matter.  This goes to the applicability of Rule 609.

 5    And let me say that I'm looking at this both with the

 6    expectation that these will be questions that will be asked of

 7    plaintiff for impeachment purposes under Rule 609 and that it

 8    is something that may have an impact on the narrative of the

 9    defendants' defense.

10              As I'm evaluating this under Rule 609, counsel, as you

11    are aware, 609(b) applies if more than ten years have passed

12    since the witness's conviction or release from confinement for

13    it, whichever is later.  So, as an analytical matter, counsel,

14    when was the plaintiff released for his 2007 conviction?  Was

15    it within or outside of the ten year window?

16              MS. GOYKADOSH:  I have the rap sheet, and I can check,

17    your Honor.

18              THE COURT:  Thank you.

19              MS. GOYKADOSH:  Just looking at the rap sheet, your

20    Honor, it appears that Mr. McCurdy was sentenced on -- I'm

21    sorry.  It appears he took a guilty plea on September 5, 2007,

22    and he was sentenced to a term of 60 days on that same day.

23              THE COURT:  I'm sorry.  60 days on a rape charge?

24              MS. GOYKADOSH:  That's what it --

25              MR. LICHTMACHER:  Your Honor, he had been in already

J8R7MCCC

1   for a while.  That's why.  So, he was out.  My understanding

2   is -- I could be wrong too, so I don't want to make a

3   misrepresentation to the Court.  My understanding is the

4   incident was earlier, he had been in for a while, and when he

5   did take the plea, that he was eligible to be released on that

6   charge, you know, in a short period of time.  I didn't remember

7   it was exactly 60 days, but a short period of time.  So it

8   clearly would not come in, your Honor.  If he is held on

9   something else, on say a parole violation or something else,

10  it's relevant to that charge coming in specifically.

11          THE COURT:  Counsel, can you confirm that information?

12          MS. GOYKADOSH:  That was incorrect, your Honor.  That

13  was an attempted assault conviction.  I'm going to need another

14  second, your Honor.  I apologize.

15          THE COURT:  Thank you.  Please take your time.

16          MS. GOYKADOSH:  OK.  Thank you.

17          I'm sorry, your Honor.  He was actually sentenced on

18  May 7, 2007 to an order of protection term of five years

19  post-release supervision time five years.  And then it appears

20  that he was discharged from parole or he revoked his parole on

21  August 5, 2014.

22          THE COURT:  Thank you.

23          So he was not confined.

24          MS. GOYKADOSH:  It appears he was confined for some

25  time but not for a long period of time.

J8R7MCCC

1          THE COURT:  Thank you.

2          MR. LICHTMACHER:  And, your Honor, if parole is

3     revoked in 2014 -- excuse me -- or probation -- I'm not sure

4     which it was -- that's past the five years, so you're probably

5     confusing -- defendant -- and I don't blame her, this is

6     complicated -- may be confusing his convictions and the reasons

7     for him being held.  I think until we know for certain --

8     unless somebody can show for certain that it was held and the

9     ten year limitation is not applicable here, it should not come

10    in.

11         THE COURT:  Thank you.

12         So, let me pick up this issue.  So, I will hear from

13    counsel if there is evidence that the 2007 conviction does not

14    fall within the rubric of Rule 609(b).  I understand that the

15    conviction occurred more than ten years ago, and at this point

16    I understand that he was released from confinement for that

17    offense also more than ten years ago.

18         MS. GOYKADOSH:  Your Honor, I'm sorry.

19         THE COURT:  That's fine.

20         MS. GOYKADOSH:  I apologize.  I did find the release

21    date at this point.  He was released on May 25, 2011 for the

22    2007 conviction.

23         THE COURT:  Thank you.  Can you show that information

24    to counsel for plaintiff, because it does change the analysis

25    substantially.

J8R7MCCC

1          MS. GOYKADOSH:  Yes, your Honor.

2          MR. LICHTMACHER:  With all due respect, this doesn't

3    make sense, because it has his maximum release date as May 25,

4    2016.  I think we need more information.  I think we need

5    something from the CJA, you know, that confirms exactly when he

6    was in and what he was in for.  And in light of the substantial

7    prejudice that this may cause, I don't think this is

8    determinative.

9          THE COURT:  Thank you.

10          Counsel, would you mind handing forward the document

11    that you're referring to.  And let me ask, is there a resource

12    that you think would be helpful for the parties to review that

13    may provide more definitive information that would address the

14    question of whether or not there is a disputed factual issue

15    regarding the date of his release from confinement?

16          MS. GOYKADOSH:  I don't believe so, your Honor.  This

17    is his rap sheet that we received from upstate, so I don't

18    believe so.  It is from the New York State Division of Criminal

19    Justice Services, so I think this document is fairly clear, but

20    Mr. McCurdy can probably tell Mr. Lichtmacher if there is any

21    dispute how long he was in for.

22          THE COURT:  Thank you.

23          Please hand it forward.

24          So, I have been handed a document which is a

25    repository inquiry for Mr. McCurdy.  I have reviewed the pages

J8R7MCCC

1   that have been indicated to me by counsel, which are

2   principally at page 12 of 13, but which relates to a charge

3   that begins on page 9 of 13.

4           Page 12 of 13 describes a new commitment starting May

5   24, 2007, with a sentence to a term of five years, with a

6   maximum expiration date of May 25, 2011.  The line under

7   incarceration release information states that the release date

8   was May 25, 2011 and that the release reason was maximum

9   expiration post-release supervision to parole.

10          From this information and the defendants' proffer, I

11  understand that Mr. McCurdy's period of confinement ended in

12  2011, which is less than ten years from now.

13          If there is additional information that either party,

14  in particular the plaintiff, would like to present to the Court

15  that would show a different date of release from confinement, I

16  would welcome it.  At this point I will rule on this

17  application based on the information that has been presented to

18  me through the New York State repository inquiry, otherwise his

19  rap sheet.

20          MR. LICHTMACHER:  May I?

21          THE COURT:  Please.

22          MR. LICHTMACHER:  I don't want to interrupt the Court.

23          THE COURT:  That's fine.

24          MR. LICHTMACHER:  I believe that what's on that

25  document is the anticipated release date, not the date he was

J8R7MCCC

1    actually released.  I'm not positive, but when I have read them

2    before, that's the way I have in fact read them.  You know, I

3    think these documents frequently are generated at the beginning

4    of the incident and they give prospective dates, and that's

5    very similar to what they publish on line.

6           THE COURT:  Thank you.  Let me comment on that.  And

7    again I will rule on this on the basis of the information that

8    I have before me.  I will provide you the opportunity to

9    present an alternative construction of this, or additional

10   evidence that would support a different determination.

11          The document that's been handed to me is clearly not

12   prospective in that on the same page, that is 12 of 13, that

13   includes his release date.  There is also a line for parole

14   release information and parole discharge information, which

15   includes discharged from parole on August 5, 2014, discharge

16   type:  Revoked-PV (parole violation).

17          So, unless they have an oracle, this was not done

18   prospectively, so I will rule on this on the basis of the

19   information that's been provided but, again, counsel, please

20   feel free to provide me with any additional information that

21   may modify my view of the facts.

22          So, each of the convictions is admissible under Rule

23   609, subject to 403 considerations for impeachment purposes.

24   Here I believe that the probative value is not outweighed by

25   the prejudicial effect.  With respect to the use of this

1   information for impeachment purposes, I expect that I will

2   permit questioning regarding the fact of his conviction for

3   these offenses for impeachment purposes.  I do not expect to

4   permit expansive questioning about the facts underlying these

5   offenses.  I expect that the cross-examination for impeachment

6   purposes will be limited to the nature of the offense and the

7   fact that he was convicted of it, the very basic pedigree

8   information regarding the offense for impeachment purposes.

9           Now, that's my analysis with respect to the

10  introduction of this evidence under Rule 609 for impeachment

11  purposes.  There is a separate question -- and I apologize for

12  framing it in a slightly different way than it was presented to

13  me -- which is whether the Court will permit defendants to

14  repeatedly refer to plaintiff as a rapist throughout the course

15  of their testimony.  That is a very charged word, as the jury

16  will know it is true as to him.  Still, it's not apparent to me

17  that the defendants have to use the kind of charged language

18  repeatedly during the recitation of the narrative.

19          Counsel, as I'm looking to try to balance prejudice

20  versus probative value, I am persuaded that the narrative that

21  you've presented, namely that the fact that as your clients

22  view it Mr. McCurdy was tarred as a sexual offender reduced his

23  ability to influence other inmates, is an important narrative

24  which has substantial probative value.  I'm concerned, however,

25  about repeated references to plaintiff as a rapist, and I'm

J8R7MCCC

1    also concerned -- particularly absent any proffer that anyone

2    in the facility other than Captain Bell was aware of the nature

3    of his offenses -- to comments regarding the nature of the

4    actual offense, i.e., the rape for which he was convicted in

5    2007.

6              So, counsel I am wanting to try to develop language

7    that can be used that is less inflammatory, and I want to, to

8    the extent possible -- given the proffers that no one other

9    than Captain Bell was aware of these offenses -- to steer clear

10   of references to offenses which are not, as I understand it,

11   part of the broader narrative related to plaintiff's

12   reputation, I will call it, within the facility.

13             Counsel for defendants, I understand that you want to

14   use more inflammatory language, but I'm concerned about it.

15   Can you make a suggestion regarding potential alternative

16   terminology that your clients could be directed to use when

17   describing this, I will call it, narrative?

18             MS. GOYKADOSH:  Your Honor suggested sex offender.  We

19   can certainly use that language, if that's what the Court

20   prefers.

21             THE COURT:  Thank you.

22             Counsel for plaintiff, any further comments on this

23   issue?

24             MR. LICHTMACHER:  I don't see why anything but "felon"

25   should be used, your Honor.

J8R7MCCC

1          THE COURT:  Thank you.

2          MR. LICHTMACHER:  It has a strong enough negative

3     effect on my client's credibility, and the same arguments

4     apply.  Of course sex offender is a little less offensive than

5     rapist, but I believe strongly that it is sufficient for

6     impeachment material that he has convicted felonies.

7          THE COURT:  Thank you.  And thank you very much for

8     saying it that way.  Let me say a couple of words.

9          First, for impeachment purposes, as I said, I expect

10     that the questioning will be limited to what I've described as

11     the pedigree information related to each of these two offenses.

12     Now I'm focused on the language that will be used by the

13     defendants in describing the narrative that they've worked out.

14     For that purpose, clearly limiting the defendants to referring

15     to plaintiff as a felon would not allow them to tell the

16     narrative that they're describing.  The narrative they are

17     describing is one in which the plaintiff is an outlier.

18     Unfortunately, if he was merely described as a felon, he might

19     not be an outlier among the community at Rikers.  So, I believe

20     that using that terminology for those purposes would sanitize

21     the narrative to the point of meaninglessness.

22          I will permit the defendants to use the term sex

23     offender.  I believe it is somewhat less prejudicial than the

24     inflammatory term rapist.  I recognize in ruling this way that

25     the jury will be aware of the nature of his underlying offenses

J8R7MCCC

by virtue of the pedigree information that will come in, but I
think that the probative value substantially outweighs the
prejudicial effect on the plaintiff with the use of the
nomenclature that we've just described.  Its probative value is
substantial because it undermines the plaintiff's narrative
that the officers -- and the captain, rather -- believed him to
be an effective interlocutor with members of the jail
community.

Let me turn to plaintiff's motions in limine, first,
plaintiff's motion in limine number 1.

Plaintiff has moved under Federal Rule of Evidence 609
to preclude defendants from referencing the current charges
against plaintiff.  As defendants correctly note, Federal Rule
of Evidence 609, which relates to impeachment by evidence of a
criminal conviction, does not directly have a bearing on the
admissibility of evidence related to the charges currently
pending against plaintiff.

Counsel, I am going to deny this motion because the
arguments that have been presented to me are those that have
been presented to me, and because I'm evaluating plaintiff's
arguments based on the arguments presented to the Court.  The
court does not express an opinion at this time whether such
evidence might be precluded under Federal Rule of Evidence 403
or any other rule, simply because those arguments weren't
presented to me, and I accept defendants' invitation to decline

J8R7MCCC

1   to extrapolate that argument from the submissions that were

2   made to the Court.

3          MR. LICHTMACHER:  Your Honor, I don't quite understand

4   your ruling.  I think you might have confused the word

5   plaintiff and defendants.  Can you clear it up?  I'm sorry.

6          THE COURT:  Thank you.  Yes.  You argued this under

7   Rule 609 which didn't apply.  You didn't argue this under any

8   rule that might apply.  I'm not doing your work for you,

9   therefore, I'm denying your motion.  If you wanted to make the

10  motion under a rule that might apply, you can do that, but I'm

11  not doing your work for you.  Is that clear?

12         MR. LICHTMACHER:  That is clear, your Honor.

13         THE COURT:  Thank you.

14         Let me take up plaintiff's motions in limine numbers 2

15  and 3.

16         The plaintiff has moved to preclude defendants from

17  impeaching plaintiff with evidence of prior arrests that did

18  not result in a conviction, or with evidence that plaintiff

19  does not accurately remember his prior arrests.  I would invite

20  some argument from defendants on this issue.

21         Counsel, what are you referring to here?  What is the

22  purpose of this?  Why would there be testimony about his arrest

23  history as part of this case such that evidence of his lack of

24  memory regarding that would come in properly as impeachment?

25         MS. GOYKADOSH:  Well, I think in part it depends on

J8R7MCCC

1    what plaintiff testifies to on the stand.  I think he can't

2    have it both ways, so he can't necessarily come up on the stand

3    and say, oh, I've never been arrested, I don't remember ever

4    being arrested, and then use that as both a sword and a shield.

5    So, I think that's point number one.  It depends on what

6    plaintiff says.  If he says something, we should be able to

7    impeach him with that.

8            The second is just, you know, he does have this

9    extensive arrest history; he has been in Rikers before.  It

10   again just goes to the level of his damages, what he is

11   claiming happened to him here, how he might perceive something

12   just based on his experience at Rikers.  If he affirmatively

13   brings it up, I think that might be a situation where we would

14   use it for impeachment.  I don't necessarily see a situation

15   where we would use this affirmatively as evidence.

16           THE COURT:  Thank you.  Understood.  Let me just ask

17   for a little bit of clarification about the comments regarding

18   his prior arrests and the fact that he had been at Rikers

19   before, to the extent it goes to damages.  Why would the fact

20   of his former incarceration have any pertinence to his damages

21   for being assaulted at the facility at this date and time,

22   assuming that that's the finding of the jury?

23           MS. GOYKADOSH:  I think to the extent that he argues

24   that he would never resist, he would never resist a corrections

25   officer at Rikers, there are other instances where he has, A,

J8R7MCCC

1    resisted other corrections officers, and I believe that the

2    current pending charges include resisting arrest, however, I am

3    not a hundred percent sure; I do need to check.  But I think

4    that might be one of the reasons why.

5          THE COURT:  Thank you.

6          So, I'm going to grant this motion in part and deny it

7    in part.  To the extent that there is testimony by plaintiff

8    regarding I will call it a lack of arrest history or other

9    facts that would make questioning regarding his prior arrest

10   history somehow valuable for impeachment purposes, you should

11   feel free to request leave to inquire about that.  I would ask

12   that you let me know and the plaintiff know if you plan to

13   embark on that, if you believe he has opened the door to it.

14         Otherwise, I'm granting the plaintiff's motion.  I

15   don't see a justification to include evidence of an arrest.  I

16   will use Rule 609 not because it's applicable but because it

17   provides a logical framework.  An arrest in and of itself is

18   not proof of conduct, and I am concerned that presenting

19   evidence of an arrest has very little probative value because

20   it's merely a charge, an arrest and not a conviction, and

21   because it has substantial prejudicial value to the plaintiff

22   by I will call it tarring him with alleged conduct for which he

23   was not convicted.

24         So, to the extent that this comes up in the context of

25   impeachment, I expect that I would permit that following a

J8R7MCCC

1    request and notice to your adversary.  Otherwise, I don't see

2    the basis for the introduction of this information.  Again, to

3    the extent that there is additional justification that you

4    would like to present to the Court for introduction of this

5    evidence, you should feel free to present it to the Court.  At

6    this point I'm provisionally ruling as I just have.

7        Now, let me turn to plaintiff's motion in limine

8    number 4.

9        Plaintiff has moved to preclude defendants from

10   introducing evidence regarding injuries plaintiff sustained in

11   encounters not related to this lawsuit.  That motion is denied.

12   Such evidence may have relevance to plaintiff's claims that

13   certain injuries he suffered were caused by the individual's

14   actions as well as to plaintiff's damages claims.  If

15   appropriate, defendants may also have the opportunity to use

16   this evidence to impeach plaintiff's testimony.

17       At this juncture, as a result, the Court will not

18   endorse a wholesale bar on the use of evidence of plaintiff's

19   prior injuries without additional information about the

20   specific testimony which the defendants intend to introduce and

21   the relevance of that testimony.  The Court expresses no

22   opinion at this time whether such evidence may be precluded

23   under 403 any or any other rule.  If such an argument is to be

24   presented by plaintiff, he may make that argument or renew that

25   motion -- or, I should say, make that objection at trial.

J8R7MCCC

1            Plaintiff's motion in limine number 5.

2            Plaintiff has moved to preclude defendants from

3    discussing plaintiff's disciplinary history, specifically any

4    "tickets" he received while incarcerated.  Defendants have

5    opposed this motion on the ground that they should be allowed

6    to impeach plaintiff with questions regarding his disciplinary

7    history if he testifies in a misleading way about his prior

8    conduct or disciplinary history, and on the ground that such

9    evidence demonstrates "absence of mistake" under Federal Rule

10   of Evidence 404(b).

11           Counsel for defendants, can you provide me with more

12   commentary regarding your "absence of mistake" argument here?

13   Are you suggesting that this evidence would be used for

14   anything other than impeachment purposes?

15           MS. GOYKADOSH:  No, your Honor, it would really just

16   be for impeachment.  What I meant by absence of mistake is if

17   Mr. McCurdy does suggest that he has never resisted before, he

18   could never resist, he is not the type of person who resists,

19   he has received discipline prior for resisting, so I think it

20   would go to impeachment.

21           THE COURT:  Thank you.

22           Counsel for plaintiff, any rebuttal comments in

23   response to defendants' supplemental argument?

24           MR. LICHTMACHER:  Criminal charges can be brought for

25   actions taken in the prison as well as for actions taken

J8R7MCCC

1    outside.  I know of none that we've discussed here that were

2    brought against him for actions he allegedly took inside the

3    prison, you know, incorrect acts -- bad acts -- excuse me.

4         So, for that reason you would be allowing the DOC to

5    sanitize their own activities by bringing charges against

6    people, verifying evidence and saying, see, this is a bad guy.

7    And this type of policy just would not be permissible.  I mean

8    you are allowing them to police themselves, and you would be --

9    I'm not saying you -- the court would be allowing them to

10   police themselves.  The court would be allowing them to make

11   determinations as to who has a bad history within the facility,

12   to again sanitize themselves by recent charges up against the

13   individuals involved.  Now, in light of the fact that they

14   could bring criminal charges if he does something bad, if there

15   is such a thing as that, if like he resisted arrest, he

16   assaulted a correction officer, and he was convicted of it, I

17   don't think I can rightfully protest.  But if it's only

18   internal, you know, I don't think it should be allowed in, your

19   Honor.

20        THE COURT:  Thank you.  Fine.

21        As I understand it, these are questions that would

22   come in as questioning for impeachment purposes to the extent

23   that plaintiff's direct testimony puts his disciplinary history

24   or prior conduct related to his disciplinary history at issue.

25   To the extent that plaintiff opens the door by putting those

J8R7MCCC

1    issues at issue, I expect that I will permit impeachment

2    questioning with respect to them.

3            I understand that defendants are not expecting to

4    introduce this as direct evidence of defendants' conduct but

5    instead are planning to limit its use potentially to

6    impeachment purposes, and on that basis, and accepting that

7    proffer, I'm denying the motion.

8            Now, counsel, that leaves us with two motions.  I'd

9    like to take each of those up.  Then I may propose a short

10   break.

11           The first relates to spoliation.  This is plaintiff's

12   motion in limine number 6.

13           Plaintiff has moved for a spoliation instruction

14   regarding videotapes which he claims are relevant to these

15   proceedings which have not been produced.  "A party seeking an

16   adverse inference instruction based on the spoliation of

17   evidence ... must establish, one, that the party having control

18   over the evidence had an obligation to preserve it at the time

19   it was destroyed, two, that the records were destroyed 'with a

20   culpable state of mind' and, three, that the destroyed evidence

21   was 'relevant' to the party's claim or defense such that a

22   reasonable trier of fact could find that it would support that

23   claim or defense."  *Orbit One Commc'ns, Inc. v. Numeriex*

24   *Corp.*, 271 F.R.D. 429, 436 (S.D.N.Y. 2010).  I'm not reviewing

25   all of the law pertinent to this application, but I've reviewed

J8R7MCCC

1    it in evaluating the motion.

2            As plaintiff essentially admits, he hasn't

3    demonstrated that any of these requirements for spoliation

4    instruction have been met here.  I do not have a showing that

5    evidence has been destroyed, that they were destroyed with a

6    culpable state of mind, that they were relevant.  I don't have

7    evidence of any of those aspects of potential findings that

8    would support a spoliation application.  As a result, I must

9    deny the motion on the basis of the record that is presented to

10   me in the motion.

11           MR. LICHTMACHER:  Your Honor, may I be heard on this?

12           THE COURT:  Yes.

13           MR. LICHTMACHER:  OK.  As I said, I made it

14   conditional on purpose because I didn't want to overreach, and

15   I didn't want to make a disingenuous statement to the Court.

16   However, there may be evidence that comes out at trial that

17   these videos were in fact made -- or this video was made -- and

18   I have requested discovery, and I have not received it.  If in

19   fact that evidence does come out at trial, I would like your

20   Honor to hold your ruling open in light of that, to explore it

21   more fully at that time.  And that's why I tread very carefully

22   on this.  Even though it's a simple sentence, I used the word

23   "can".  I made it conditional intentionally, but there are some

24   reasons to believe that there was a video made.

25           THE COURT:  Thank you.

1          Plaintiff may renew his motion at trial, should the

2    evidence adduced support such an instruction.  However,

3    plaintiff should be aware that the Court will not allow

4    plaintiff to engage in a protected fishing expedition in order

5    to undercover evidence of spoliation during the trial.  That's

6    an issue that the parties had the opportunity to explore during

7    discovery in the case; and I expect to focus the trial on the

8    issues that are pertinent to the jury's evaluation of the case,

9    not to be an expansion of the discovery process.

10          MS. GOYKADOSH:  Your Honor, may I be heard on that

11   issue briefly?

12          THE COURT:  Yes.

13          MS. GOYKADOSH:  Just with regards to plaintiff

14   counsel's representations about certain evidence coming out at

15   trial, I'm just concerned about how this is going to be

16   handled.  Are the defendants going to be questioned about

17   videos?  I just don't want there to be anything misleading to

18   the jury about the existence of some video.  So I don't know

19   what Mr. Lichtmacher means when he says certain evidence is

20   going to come out, and I think there is certainly a Rule 402

21   and a Rule 403 concern about if these two defendants are going

22   to be questioned about some video.  So I just want to tread

23   with caution here.

24          THE COURT:  Thank you.  Counsel for plaintiff, would

25   you like to make a proffer regarding the nature of the

J8R7MCCC

1    questioning that you would expect to engage in with the

2    individual defendants?

3           MR. LICHTMACHER:  Well, I understood the caveat that

4    the Court gave about a fishing expedition, and I'm not

5    conducting discovery during a federal trial.  However, there

6    may be other ways that something is mentioned that would lead

7    to additional information.  With the Court's caveat in mind, I

8    would tread very lightly, and only if it becomes obvious that

9    there is something there would I seek to move forward, and I

10   would seek to approach before I did so.

11          THE COURT:  Thank you.  And, obviously, as we will

12   discuss momentarily, counsel won't be testifying.  To the

13   extent that any evidence or reference to a tape came out, it

14   would have to come through the evidence, namely through the

15   testimony of the witnesses.  I do not know what the testimony

16   of the defendants would be if asked whether there were

17   recordings of the incident, for example.

18          In any event, defendants' supplemental motions in

19   limine 1 and 2.

20          These are motions where I'm going to invite some

21   additional commentary, counsel, just to help me evaluate the

22   application.

23          So, in their supplemental motions in limine filed on

24   July 9, 2019, defendants argue that plaintiff should be

25   precluded from calling the witnesses listed in the proposed

1    joint pretrial order who are not disclosed pursuant to Rule 26,

2    as well as precluded from introducing two exhibits that were

3    not produced in discovery, and similarly, not disclosed within

4    the timeframe set forth in Rule 26.

5            Under Local Rule 6.1(b), "any opposing affidavits and

6    answering memoranda [were due] 14 days after service of the

7    moving papers," or July 23, 2019.  To date, plaintiff has not

8    filed an opposition to defendants' motion, or asked for an

9    extension of the deadlines for him to file his opposition.  As

10   a result, I expect that the application is fully submitted.

11           MR. LICHTMACHER:  May I be heard on that?

12           THE COURT:  Yes.  I understand that while it should

13   have been fully submitted, I'm still going to give you the

14   opportunity to present argument on it.

15           MR. LICHTMACHER:  I was actually in the hospital at

16   that time with a stroke; I think the Court is aware of that.

17   This is the first time I'm hearing about it.  And I should have

18   seen it on the docket sheet, but there have been extensive

19   entries.  I wasn't even aware of these until this moment, so I

20   would love the opportunity to look at them.

21           THE COURT:  Thank you.  Let me propose the following

22   then.  We have done a substantial amount of work, which is to

23   our credit.  I will propose that we take a half hour long break

24   so that we can eat something and so that counsel for plaintiff

25   can review these motions.

1          Counsel for plaintiff, the motion is substantial, as

2     you will see.  The motion was filed on July 9.  The effect of

3     the motion is a request that I exclude substantially I

4     shouldn't say all of but many of your proposed witnesses and

5     documents.  Under the Second Circuit's reading of Rule

6     37(c)(1), I did not see an opposition from you that was timely

7     submitted.  My thought had been that I would hear from you on

8     the relevant factors orally before ruling, notwithstanding.

9     I'm happy to let you use this break to review the motion and to

10    collect your thoughts for oral argument on the point.  Let me

11    just give you a brief comment regarding the nature of the law,

12    just so that you can hear what it is that I expect to be

13    applying.

14         "Rule 37(c)(1) provides that any party that without

15    substantial justification fails to disclose information

16    required by 26(a) ... is not, unless such failure is harmless,

17    permitted to use as evidence at a trial ... any witness ... not

18    so disclosed." *Paterson v. Balsamico*, 440 F.3d 104, 117 (2d

19    Cir. 2006).  In determining whether exclusion is warranted

20    under 37(c)(1), the court should consider:  "(1) the party's

21    explanation for the failure to comply with the [disclosure

22    requirement]; (2) the importance of the testimony of the

23    precluded witnesses; (3) the prejudice suffered by the opposing

24    party as a result of having to prepare to meet the new

25    testimony; and (4) the possibility of a continuance." *Id.*

J8R7MCCC

1    (quoting *Softel, Inc. v. Dragon Med. & Scientific Commnc'ns,*

2    *Inc*, 118 F.3d 955, 961 (2d Cir. 1997).

3         MR. LICHTMACHER:  I can save you some time. I will

4    waive as to the witnesses.  I'm more interested -- I'm sorry.

5    I would like to hear about the documents though.

6         THE COURT:  Thank you, that's fine.  That's good.

7         So, when we return, I understand that the witnesses

8    will not be coming in.  We will limit our arguments with

9    respect to the documents when we return.  So, counsel, it's

10   noon now.  We will see you back at here at 12:30.

11        MR. LICHTMACHER:  Is there any chance I can find out

12   what the documents are that are being moved to be precluded?

13        THE COURT:  Yes, counsel for defendants will identify

14   them.

15        MS. GOYKADOSH:  I'm happy to identify them after --

16        THE COURT:  Thank you.  I will step down and see you

17   back in here in half an hour.

18        (Recess)

19        THE COURT:  Thank you, counsel.  Let's begin where we

20   left off, which was a discussion of the defendants' motion with

21   respect to witness testimony and documents that were not

22   disclosed during the period required under Rule 26 or the

23   Court's scheduling order.

24        MR. LICHTMACHER:  Can I clear up one thing I said?

25   Just in case it wasn't clear, I didn't mean I'm calling no

J8R7MCCC

1    witnesses.  I meant the additional witnesses that were on the

2    list.  I didn't want to be misunderstood on that.

3              THE COURT:  That's fine.

4              MR. LICHTMACHER:  I know you're a stickler for rules.

5    All right.  So long as that's clear.

6              THE COURT:  That's fine.  We will identify the

7    specific witnesses at issue now, and then we will turn to each

8    of the exhibits at issue.

9              So, I understand the witnesses at issue to be the

10   following:  Officer Gatta, Officer Stout, Captain Reed, Officer

11   Charles, Captain Thomas.  Counsel for defendants, is that the

12   universe?

13             MS. GOYKADOSH:  Yes, your Honor.

14             THE COURT:  Good.  So, I understand that counsel will

15   not be calling any of those people.

16             So, let's now talk about the documents at issue.

17   Counsel, let me hear from defendants about each of the records.

18   You understand that for all segments of the trial none of the

19   witnesses that I just listed will be called.  We are talking

20   now about this evidence and for purposes of all stages of the

21   trial.  Let me hear from you regarding each of the documents at

22   issue here.  And, counsel, I will ask you to point me

23   specifically to each of the plaintiff's exhibits by exhibit

24   number.

25             MS. GOYKADOSH:  Yes, your Honor.  I just received from

J8R7MCCC

1    plaintiff this morning his exhibits, and I do not know if

2    Mr. Lichtmacher has provided the Court with the numbered

3    exhibit list that he has provided me with, but what I am

4    referring to is Plaintiff's 16, which is the Nunez consent

5    decree, and then plaintiff's 20 and 21, which are photos from a

6    2014 incident.  So, if the Court is ready, I'm happy to

7    proceed.

8          THE COURT:  Fine.  Please do.  Let's proceed.  Again,

9    I'm looking at this under the law that I outlined earlier.

10   Please go ahead, counsel.

11         MS. GOYKADOSH:  Yes, your Honor.  Starting with the

12   Nunez consent decree, this was never formally produced during

13   discovery.  My understanding is that we received this when we

14   were working on the pretrial submissions, so it was just never

15   produced.

16         There is also a question about how this is going to be

17   used during this trial.  I don't believe that it can be used

18   during the liability stage of this trial -- I'm sorry -- the

19   individual liability stage of this trial.  To the extent that

20   counsel would like to use it during the Monell stage of this

21   trial, I don't know who could be a witness that this could be

22   introduced through.  It's a consent decree, but there would

23   need to be a foundation, and the jury would need to understand

24   what this is.

25         THE COURT:  Thank you.

1          Let me just interrupt you just briefly to focus your

2     arguments.  At this point I'm not inviting arguments regarding

3     other potential bases for the exclusion of these records.  I

4     understand that there may be challenges with respect to the

5     authenticity, or hearsay, or other similar matters included in

6     these records.  At this point, however, I'm focused solely on

7     the arguments presented in the motion in limine, mainly the

8     failure by plaintiff to disclose them timely.  So, counsel, I

9     apologize for the interruption, but I just wanted to focus your

10    argument.

11          MS. GOYKADOSH:  Yes, your Honor.  So just going

12    through the Paterson factors, which I think would be the

13    relevant factors for excluding these documents, there has been

14    no explanation as to why any of the documents -- including the

15    Nunez consent decrease -- were not timely disclosed.  I

16    understand that plaintiff's counsel has said that he has not

17    had an opportunity to respond to this letter, but there just

18    simply hasn't been any explanation.

19          The second factor, the importance of the potentially

20    precluded evidence, I don't understand how the Nunez consent

21    decree would be important to plaintiff's case in chief, both to

22    the individual liability phase or to the Monell phase.  Again,

23    it's something that plaintiff has not responded to.  It does

24    not seem to be important or relevant, but that's point number

25    two.

J8R7MCCC

1        The prejudice suffered by defendants as a result of

2   having to meet to prepare this Nunez consent decree, there is

3   no Rule 30(b)(6) witness who can talk about why this consent

4   decree was put in place.  There is an extreme prejudice if we

5   would now at the eve of trial have to prepare to talking about

6   the Nunez consent decree as part of this trial.

7        With regards to the photos, again, it's completely

8   prejudicial; it has nothing to do with this incident.  We are

9   talking about two photos, so that the preparation is a little

10  bit different than what would be required to prepare for the

11  entire Nunez consent decree, but I think there still is harm

12  when you produce something as part of the JPTO and it's not

13  produced during discovery.  There is always harm associated

14  with that.

15        Finally, the possibility of a continuance, there is no

16  possibility of continuance.  We're on the eve of trial; it's

17  starting in a few days.  As the Court is aware, this trial date

18  has been adjourned a number of times, and defendants are eager

19  for a trial on September 3, so there is no possibility of a

20  continuance at this point.

21        THE COURT:  Good.  Thank you very much.

22        Let me hear from counsel for plaintiff.  Counsel?

23        MR. LICHTMACHER:  The Nunez decree -- consent

24  judgment, excuse me -- is mentioned in the complaint

25  specifically.  It is signed by corporation counsel.  In fact,

J8R7MCCC

1    an attorney who I believe appeared on this case, Arthur Larkin,

2    if I'm not mistaken, in the beginning of the case, is one of

3    the people signing onto it.  They have had it in their

4    possession since October 2015.  It's almost analogous to

5    demanding that I produce their answer and then saying, OK, you

6    know, we didn't get it, can't use it.  I know it's a little

7    off, your Honor.  It's not a direct analogy, but the point is

8    it was referenced in the complaint, they know what it is, they

9    signed onto it in 2015.  There is no prejudice to them in any

10   way.  How we use is it is a different issue, and I think it's

11   more applicable to the Monell facet of the case -- if we get

12   there -- than it is to liability of the individuals.

13          But under that, there can be questioning about

14   portions of it regarding individuals if we get to the Monell

15   phase that are in Nunez, and I could ask them questions about

16   it.  You know it's an acknowledgment by the City that they had

17   a problem.  And Monell is about an ongoing problem.  Monell is

18   about a policy.  This is their acknowledgment that they signed

19   to that they had a problem, and it's directly on point.  And

20   it's not, by the way, just a juvenile document.  If you take a

21   look at it -- and I'm sure you have -- if you look at page 2,

22   they expand the class, and it involves not only juveniles but

23   it involves all inmates.  I think it's page 2, number 2, if I

24   remember correctly.  Yes, it's expanded.

25          So, under these circumstances, there is no surprise,

J8R7MCCC

1    there is nothing here that is in any way prejudicial.  You

2    know, if in a very strict sense I didn't produce it, they had

3    it.  It was referenced, they had it, they signed onto it.  So I

4    can't imagine what the problem would be with that.  Should I

5    move to the photos, your Honor?

6          THE COURT:  Thank you.  Let me just confirm -- and I

7    apologize for not knowing this.  Can I confirm that this

8    incident, that is, the one that is part of this case, occurred

9    at the Taylor Center?  Where did it occur?

10         MS. GOYKADOSH:  It occurred at AMKC, which is the Anna

11   M. Cross Center.

12         THE COURT:  Thank you.  Please proceed.

13         MR. LICHTMACHER:  OK.  But if we go to Monell, there

14   are other incidents, and that's why it's applicable there.  It

15   includes Nunez talks about all of the facilities, it expanded.

16   At one point it didn't include -- I forgot the building -- ERTC

17   or NC -- I always get that spelling wrong.  In any event, there

18   is absolutely -- I don't want to be redundant -- there is no

19   surprise whatsoever, and it's strictly in the complaint.  You

20   know, it's specifically mentioned in the complaint.  I talk

21   about it.  And it's in a couple places, I believe, in our

22   statement of facts and in the Monell liability section.  So,

23   this is a completely technical objection, and I think it's

24   worthless under these circumstances, your Honor.

25         THE COURT:  Thank you.  Please proceed.

J8R7MCCC

1      MR. LICHTMACHER:  Now in terms of the photos, the

2  photos are from the Daily News, 20 and 21.  They were published

3  after McCurdy was subjected to being in the wrong place

4  intentionally, we contend, and being abused severely and being

5  sent to Elmhurst.

6      By the way, I have the certification page I promised.

7  I produced it to adversary counsel this morning from the 2014

8  records.  We went down to Elmhurst and got them yesterday.

9      THE COURT:  Thank you.  Which records are you

10  referring to, counsel?

11      MR. LICHTMACHER:  For the -- I think it's Exhibit 19,

12  2014.  I'm going to produce the whole set of records again

13  because, as you probably know, when they print out medical

14  records, frequently the pagination gets different.  So, I will

15  produce those to you over again, and to counsel.  I told her I

16  would get them to her either today or tomorrow.  But they're

17  the same records, just they finally certified it.  We asked for

18  five years and finally got them to do it.

19      THE COURT:  Thank you.

20      MR. LICHTMACHER:  Can I give you this, your Honor?

21  Can I pass it up?

22      THE COURT:  Yes, you may hand it to my clerk.  The

23  copy of Exhibit 19 I have is not marked.  I assume that there

24  will be a complete copy of it.

25      MR. LICHTMACHER:  Oh, it should be.  Wow, that's an

J8R7MCCC

1   error.  You don't have the complete 19?

2           THE COURT:  I have pages from what is marked as 1 of

3   29.

4           MR. LICHTMACHER:  No, no, it should be 1 through 74.

5   I apologize.  I will send it to you again.  My people must have

6   copied it wrong.  I will get it to you.

7           THE COURT:  Thank you.  That's fine.  I expect that

8   there will be a complete copy.  The certification does not go

9   to the jury.  The record itself would go.

10          Counsel for defendants, this set of medical records I

11  expect raises the same issue that we will talk about

12  momentarily.

13          MS. GOYKADOSH:  Yes, your Honor.

14          THE COURT:  Good.  So, counsel, what else can you say

15  regarding the photos, addressing the factors and the Balsamico

16  case?

17          MR. LICHTMACHER:  Well, that's really it.  I mean they

18  were all over the papers, you know, and Corp. Counsel was aware

19  I did not produce them, that is correct.  I had not produced

20  them until this time; it was an oversight.  And they are what

21  they are; they are from 2014, and they were directly after he

22  was stuck in the wrong gang's area and stabbed repeatedly.

23          MS. GOYKADOSH:  One point.  The 2014 incident that

24  Mr. Lichtmacher is referring to, these injuries, I don't think

25  there is any dispute that they resulted from other inmates.

J8R7MCCC

1    So, there is no question here that this is not from any use of

2    force by any DOC officials.  I just want that to be clear.

3            MR. LICHTMACHER:  That is correct, but we specifically

4    allege in the complaint that they've been abusing him in

5    various manners, and one of the ways was subjecting him to

6    force by other inmates when they knew he would be in danger.

7    And that's specifically in there.  If the Monell is going to go

8    forward, we say it's a continuing violation of his rights.

9    They did not like him; they subjected him to many things, not

10   only beatings by them but sticking him again in the wrong

11   gang's unit, and that resulted in these harms.

12           THE COURT:  Anything else on these issues, counsel for

13   plaintiff?

14           MR. LICHTMACHER:  Nothing further from the plaintiff.

15           THE COURT:  Good.  Counsel for defendant, any

16   rebuttal?

17           MS. GOYKADOSH:  Just one quick point, your Honor, with

18   regards to the Nunez consent decree.  Mr. Lichtmacher has

19   mentioned that this is referenced in the complaint.  I am not

20   aware of any case law as I stand before the court that says

21   that just because something is referenced in the complaint and

22   the City might be in possession of it, you do not have an

23   obligation to produce it under Rule 26.  So, again I'm not

24   aware of any case law as I stand here before the Court.

25           THE COURT:  Thank you.  There is actually case law to

J8R7MCCC

1   the contrary, which I will pull out as I'm evaluating this

2   application.

3          What I hope to do is to reserve on this.  Now that I

4   understand the basis for the plaintiff's position on this, I

5   would like to consider it in light of the documents and the

6   arguments presented, and I will weigh the factors articulated

7   by the Circuit in the Paterson case as well as the Design

8   Strategies case.  I will rule on this on Tuesday.  Because

9   these issues go to the Monell liability stage, I believe that I

10   can defer adjudication of this until then.

11          I'm deferring adjudication for two reasons:  One,

12   because I like to give due consideration to plaintiff's

13   arguments and, two, because I would like to move forward with

14   some other elements of my agenda before we end our conference

15   today.  So, I will come back to that.

16          Now, with respect to the issue related to medical

17   records, counsel for defendants, to the extent that your

18   application is to exclude from trial I will call it statements

19   in the medical records, whatever those may be, I will invite

20   you to write me with respect to that.  I will ask to the extent

21   you can be, that you be specific about the basis for your

22   objection, and also the specific contents of the medical

23   records that you believe should be excluded.  Any such

24   application should be submitted to me no later than the 29th of

25   the close of the day.  Any opposition to that will be due by

J8R7MCCC

 1    plaintiffs on the 31st.  I will review those applications in

 2    advance of trial.  Let me talk about some trial --

 3            MS. GOYKADOSH:  I'm sorry to interrupt.  Just one more

 4    thing with regards to the medical records.  I know I mentioned

 5    that we have the issue with the cortical step-off -- and I will

 6    brief that as the Court has now instructed -- but I just want

 7    to be clear about something.  In plaintiff's medical records,

 8    for everything except the cortical step-off, it's my

 9    understanding it says no fracture.  So if plaintiff actually

10    says that he did indeed suffer a fracture, can I show him the

11    medical records and just ask him it does say there is no

12    fracture?  I just want to make sure that's not a medical term

13    that he wouldn't be able to testify about.

14            MR. LICHTMACHER:  Actually, with all due respect --

15    and I mean this; I'm not being disrespectful to my adversary --

16    that's not what it says.  It says something different.  I wish

17    I had them in front of me, but I will point it out to the Court

18    when we are here next.  It does not say that.

19            THE COURT:  Thank you.

20            So, counsel, please do write me on this.  I understand

21    the issue to perhaps not be limited to simply that one

22    statement -- although I am not nearly as familiar with the

23    evidence as the parties are.  I understand the question to be

24    in part what the jurors will make of these medical records and

25    the absence of testimony regarding its proper construction.

J8R7MCCC

1          There is a particular issue that is the focus of

2     defendants' current application, but to the extent that there

3     are similar issues that you would like to raise, you will have

4     the opportunity to do so in the briefing schedule that I just

5     described.

6          MS. GOYKADOSH:  Thank you, your Honor.

7          THE COURT:  Thank you.

8          So, let's talk trial dates.  We have a substantive

9     issue which is what do we do given the bifurcation of the

10    Monell issues in terms of what we tell the jury.

11         The trial itself with respect to individual liability

12    issues, I expect -- as the parties have proffered -- the trial

13    will last a short period of time, a number of days.  The Monell

14    liability claims -- to the extent we get to that point -- may

15    last a substantial amount of time in addition to that.  It may

16    be less given plaintiff's concession that they will not be

17    calling additional witnesses.

18         Still, I'd like to hear the parties' views about what

19    you believe I should tell the jurors about the length of their

20    service.  My preference is to tell them something that

21    overstates their potential length of service rather than

22    understating it.

23         Counsel, let me hear from each of you in turn.  First,

24    counsel for plaintiff.

25         MR. LICHTMACHER:  In terms of the liability against

J8R7MCCC

1    the individual defendants, this is an extremely short trial.  I

2    mean I can't imagine it taking more than two days, depending of

3    course how long jury selection is.  And I have a feeling your

4    Honor gets jury selection completed rather quickly, you know.

5    So, I think this will be a two day trial, you know, that part.

6           Monell, I don't know what they intend to put on.  I

7    know what I intend to put on.  I know how I intend to go about

8    it, and it's also going to be relatively short, not quite as

9    short.  But it will be relatively short, and it will be mostly

10   the plaintiff talking about his experiences -- mostly the

11   plaintiff.  OK, let's put it that way.

12           THE COURT:  Thank you.

13           Counsel for defendants, what is your view, and how

14   would you translate that to an estimated length of trial that I

15   can give the prospective jurors?

16           MS. GOYKADOSH:  With regards to the individual

17   liability phase of the trial, I don't think that

18   Mr. Lichtmacher's estimation is incorrect.  I think two to

19   three days is a fair estimate.  I would note that it appears

20   that plaintiff's counsel now intends to be calling only

21   plaintiff, Captain Bell and Correction Officer Mitchell.

22   However, we would likely call Officer Cutler as well, whom we

23   have listed on our list of witnesses, and we may need to call a

24   rebuttal witness, depending on what plaintiff testifies to as

25   to Captain Bell's location.  However, I do not believe that

J8R7MCCC

1   those two extra witnesses would impact the length of the trial

2   substantially.  So, two to three days for the individual

3   liability phase, and then perhaps two to three days for the

4   Monell as well.

5         THE COURT:  Thank you.  So I should tell the jurors

6   that we expect the trial will be finished no later than a week

7   and a half from the commencement of trial, although it may be

8   that it will be substantially less time, depending on the

9   evidence presented by the parties.  Is that fair?

10         MR. LICHTMACHER:  I think that may be overstating the

11   amount of time it's going to take.

12         THE COURT:  Thank you.  Counsel?

13         MS. GOYKADOSH:  That's fair, your Honor.

14         THE COURT:  Thank you.  So, I will tell them up to a

15   week and a half, although it may be substantially less time.

16   It changes perhaps modestly the pool of people who are able to

17   serve, but I don't expect it will change it substantially.  I

18   would rather not disappoint them, and as the parties are aware,

19   this could actually proceed in I'll call it three stages,

20   because if there is a finding of liability, there may need to

21   present to the jurors special interrogatories for qualified

22   immunity purposes, and then we may need to proceed to take up

23   Monell liability.  So, I would rather overestimate than

24   underestimate and have dissatisfied jurors.  I will tell them

25   we expect it may last until I will call it the Thursday of the

J8R7MCCC

following week.

So, the trial day will begin at 9 a.m. each day including the first day.  I understand that Judge Cote's order setting trial in the case stated that the trial will begin at 9:30 a.m. but, counsel, we will begin at 9 a.m.

I expect that our jury panel may not arrive until ten a.m. or later on the first day, but we will use that time earlier to discuss any outstanding issues before the venire arrives, including issues such as the motions in limine as to which I'm deferring resolution, and any issues regarding the medical records.

Each day we will begin at 9 a.m.  I expect to take the bench at 9 a.m.  As a result, you should be here earlier than 9 a.m. so that we can start promptly at that time.  We will use the window from 9 until 9:15 or so to discuss any evidentiary or other issues that you would like to raise with the Court for that trial day.

Trial will begin -- testimony, I should say, will begin as soon as possible after 9:15 a.m.

I will be asking the jurors as well to arrive at 9 a.m., and I will let them know that I expect that we will bring them in as promptly as we can, and, in any event, no later than 9:15.

My Trial day is I will call it a relatively short one. We take a lunch break at 11:30 a.m.  We will recommence

J8R7MCCC

1   testimony promptly at noon.

2           MR. LICHTMACHER:  At what time?  I didn't hear you.

3           THE COURT:  Noon.  So, 11:30 to 12 is the lunch break.

4   You will need to make arrangements so that you can eat during

5   that half hour window.  I usually end the trial day no later

6   than 3:30 every day.  We will take short breaks as needed.  I

7   will tell the jurors that I expect that we will try to look for

8   a stopping time sometime between 3 and 3:30.  I will commit to

9   them that we will be finished each trial day no later than

10   3:30.  That's after the first day.  On the first day we will be

11   here until five because the jurors will not have a different

12   expectation.

13           Now, during that window from 9 through 9:15 each day,

14   when testimony begins, again we will have the opportunity to

15   discuss any evidentiary or other issues that you would like to

16   raise with me or that you anticipate may arise during the

17   course of the trial day.  You must confer prior to each day

18   about the exhibits that you anticipate you will be introducing

19   into evidence on that trial day, and discuss any objections.

20   You should raise any such objections with me before the jury is

21   brought in for the day.  My hope and expectation is that I will

22   be able to give you some guidance regarding anticipated

23   objections before the day begins, outside the hearing of the

24   jury.

25           Each of you know, counsel, that you must obtain

J8R7MCCC

1    permission from the Court in order to bring electronic devices

2    into court.  The application for permission to bring those in

3    is available on the Court's website under the heading "Standing

4    Orders."  You should submit any applications to bring in

5    electronic devices promptly.

6            You can see, counsel, that the courtroom is equipped

7    with audiovisual equipment.  You should make arrangements with

8    my clerk to make any necessary arrangements to come in to see

9    how the equipment works, or to put up other technology prior to

10   the trial.  If you'd like to use a projector or something else,

11   you should make arrangements to do so.

12           I also suggest that you come in to use any equipment

13   that you plan to use before the trial begins so that the jury

14   doesn't see you struggling with the equipment.  As you know,

15   the podium has an Elmo which you can use.

16           So, counsel, is there any audiovisual equipment,

17   counsel, that you anticipate using at this time beyond what is

18   already in the facility?

19           MR. LICHTMACHER:  None from the plaintiff.

20           MS. GOYKADOSH:  Just the Elmo, your Honor.

21           THE COURT:  Good.  Thank you.  Again, please

22   familiarize yourself with its operation.

23           Counsel, as you probably know, the court reporters

24   provide several levels of service that are described on their

25   website.  Have you given any thought as to how you will be

J8R7MCCC

1    requesting the transcripts be delivered, that is, overnight or

2    some other period?  Counsel for plaintiff?

3            MR. LICHTMACHER:  I have to discuss that with my

4    client.  We may not be ordering, your Honor.  I'm not certain

5    yet.

6            THE COURT:  Thank you.  Counsel?

7            MS. GOYKADOSH:  Same, your Honor.  I don't know if

8    we're ordering a transcript at this point.

9            THE COURT:  Thank you.  Let me encourage you to make

10   that decision promptly and also to just say that there are

11   benefits to getting overnight transcripts.  It helps in some

12   cases for the parties to have the prior day's testimony at

13   hand.  The one thing that I want to highlight with respect to

14   this issue is that if you do wish to request overnight service,

15   you should request it promptly; I think it affects how the

16   court reporter office staffs the trial.

17           Counsel, I don't understand that any of the witnesses

18   need an interpreter; is that correct?

19           MR. LICHTMACHER:  That's correct, your Honor.

20           THE COURT:  Thank you.

21           MS. GOYKADOSH:  Yes, your Honor.

22           THE COURT:  Thank you.  Good.

23           So, let me talk briefly about the jury selection

24   process.  Counsel, first I understand or expect that we will be

25   using eight jurors and that I will be requiring a unanimous

J8R7MCCC

1   verdict.  Any objections to that approach?  Counsel for

2   plaintiff?

3            MR. LICHTMACHER:  I would not object to a less than

4   unanimous verdict.

5            THE COURT:  Thank you.  Counsel?

6            MS. GOYKADOSH:  We would not object to eight jurors

7   and a unanimous verdict.

8            THE COURT:  So, we will proceed with an eight juror

9   jury with a unanimous jury.

10           Let me describe to you the jury selection process that

11   we will be using.  We will be using the struck panel method.

12   Let me describe how that works.  As I do so, my clerk will

13   provide you with a short statement of the jury selection

14   process, which you can use as a reference as you are thinking

15   about this.

16           Basically, we will be selecting randomly 14 members of

17   the venire to be seated in the jury box.  I will ask all of the

18   voir dire questions of Juror 1.  They have all been formulated

19   in a way so that if a question requires a follow-up, it will

20   demand a yes answer.

21           After Juror 1, I will not be reading the questions out

22   loud to each subsequent juror, instead I will be asking her

23   whether she has a yes response.  A juror will be replaced

24   immediately if there is an excuse for cause which I grant, and

25   then we will immediately query -- I will immediately query the

J8R7MCCC

substitute replacement juror who has been seated in the box
with regard to whether she has any yes answers to any of the
questions.

So, I hope that that is relatively straightforward.
The benefit of this is that by the time that we get to the
individual questions for jurors, that is, the set of I'll call
it questions about their personalities and interests and the
like, we will know or have a strong sense as to whether or not
there is a basis for a for cause challenge of any of the jurors
against whom you would be exercising your peremptory
challenges.

Now, when the venire arrives, I will give them a short
introduction to the jury selection process.  That overview will
also include a very short description of the case, to give them
a sense of the nature of the case.  My intent, as you've heard
me say before, is to provide them with the very neutral
description that no party finds at all objectionable.

Based on the parties' presentations to me, I have
prepared a short squib to describe the case, which my clerk
will hand to you now.  You should let me know if you have any
proposed changes to this description.  Please confer and file
on the docket a letter detailing any proposed changes no later
than Thursday, August 29.

I have also reviewed --

MR. LICHTMACHER:  Your Honor, can I ask a quick

J8R7MCCC

1    question?

2              THE COURT:  Yes, you may.

3              MR. LICHTMACHER:  If we proceed to Monell liability,

4    will there be a separate summary of the case read to the jury?

5              THE COURT:  Thank you.

6              What I expect I will have to do is to present a more

7    fulsome explanation of what it is that we're doing at that

8    stage in the case.  I will confer with the parties to develop

9    the correct communication to them.  I will need to let them

10   know in essence that because they've made a determination

11   regarding the individual liability of the defendants, that now

12   they must turn to a separate inquiry regarding the City's

13   liability.  And I would look to the parties to help me develop

14   that kind of introductory language.

15             If you would like to begin working on such a statement

16   in the near future, that could be helpful so that we don't have

17   to deal with it up front.  But to answer your question, yes,

18   there will be a separate statement in the event that we get to

19   the Monell stage of the case.

20             I have also reviewed the proposed voir dire questions

21   that each of the parties submitted.  I have incorporated those

22   that I found appropriate into the form of voir dire questions

23   that my clerk is about to hand to you.  These are the questions

24   that I intend to ask at jury selection.

25             I also ask you to provide me with any comments on this

set of voir dire questions.  But understand that as you are

reviewing my proposals, that I have already made conscious

decisions about each of your proposed questions, and I have

already applied reasoning to my decision making in arriving at

the result that I've just handed to you.  So, any such comments

again should be submitted to me in a joint letter filed on ECF

no later than Thursday, August 29.

Now, while I will be asking the questions for voir

dire, each of the parties have the opportunity to suggest

additional questions of me from prospective jurors on an

individualized basis.  If I don't solicit such questions -- and

I probably won't -- you should just let me know that you have a

follow-up question.  Let me know at side bar, if you would, and

I will ask your proposed question if I believe that it's

appropriate.

Please note that the voir dire questions that I've

handed you include a blank in question 4, which relates to the

anticipated length of trial.  I will fill that in with the

results of the discussion that we've just had.

I have also reviewed the parties' proposed statement

of the law to be read to the venire, which I expect to read.  I

will read that portion which was jointly submitted by both

parties to the venire.  I am handing a copy of that to you

now -- or I'm asking my staff to do so.  Please again include

in your joint letter by August 29 any comments on this squib

J8R7MCCC

1    regarding the law.  I will introduce this short statement

2    regarding the law with a statement that in essence says that

3    this is just a summary of the law, that they will hear more

4    comprehensive instructions at the end of the case that will

5    govern their deliberations.  I have included only that portion

6    as to which the parties had no debate, and I believed it was

7    adequate to give the jurors a road map to the kind of issues

8    raised in the case, including further issues that were disputed

9    by the parties was not going to be sufficiently useful to the

10   jurors.

11          So, at this point I expect to have a charging

12   conference during the trial.  I'm going to try to give you

13   draft charges as soon as I've completed the draft.  I expect to

14   see your proposed charges shortly, and I will refer to those.

15   I won't discuss in depth the substance of the proposed charges

16   that the parties have provided to me.  The one comment that I

17   will make is that I believe that the defendants' proposed jury

18   charges do not include proposals for the Monell stage, and I

19   expect that the joint charges that you will be providing to me

20   will include comprehensive charges with respect to the Monell

21   liability stage of the case.

22          MS. GOYKADOSH:  Yes, your Honor.

23          THE COURT:  Thank you.  Good.

24          Now, with respect to the charges, my practice is to

25   read the charge to the jury.  I also hand them the entire

J8R7MCCC

1    written charge so that each of the jurors has the charge, and

2    so that they can go back to the jury room with it.

3          With respect to special interrogatories, I understand

4    that they will be forthcoming.  I will look to whatever the

5    defendants propose in this regard.  Ultimately, it may be that

6    we will need to craft something specific based on the nature of

7    the evidence presented, but I hope that your proposals will be

8    enlightened.

9          One general comment with respect to the special

10   interrogatories -- and I just raise this as a point for counsel

11   to keep in mind as you're preparing them -- I have seen

12   proposed special interrogatories which may be read or could be

13   read to include within them the issue of law that must be

14   determined by the Court, namely whether or not the officer

15   reasonably believed something.  I would just ask you to

16   consider in preparing the special interrogatories to what

17   extent the jurors can make determinations with respect to I

18   will call it the reasonableness of the conduct as opposed to

19   that being a question for the Court in light of specific facts

20   that are identified in the special interrogatories found by the

21   jury in the special interrogatories.  So, I look forward to

22   reviewing the proposals.

23         With respect to trial practice, let me just make a few

24   comments.  First, no talking objections.  State your objection

25   and the basis for it briefly.  Objection, hearsay.  Objection,

J8R7MCCC

relevance.  No arguments or coaching of witnesses through the

verbs or nouns used after the statement of an objection.  If I

need additional information, we will have a sidebar.  I will

ask for it and will ask you to come to sidebar.  If you would

like to come and give me more than a simple statement of an

objection and the basic nature of the objection, you should

feel free to ask to approach, and I will consider the issue,

but I will police talking objections.

My process is to ask counsel to make requests to

approach a witness and to hand him or her a document, so please

use that process.  If you just make it a matter of routine, it

will be relatively straightforward.

Please prepare all of your necessary foundational

questions for introduction of exhibits in advance for each of

your exhibits.  I expect that both of you know how to do that,

but I've had trials where lawyers were not ready with the

necessary foundational questions and, as a result, we struggled

and wasted time trying to put in pieces of evidence because

they didn't have the right questions ready to go.  So, I want

you to have the necessary questions to establish a foundation

for any exhibit prepared in advance so that the process is as

efficient as possible for the jury's sake, and so that this

does not become functionally a trial advocacy class.

My practice is to ask the opposing party if they have

any objections when an exhibit is offered.  So, if you do not

J8R7MCCC

```
1    have an objection when your adversary offers an exhibit into

2    evidence, you should say no objection.  If you fail to do so, I

3    will turn to counsel and ask if you have any objection or

4    something to that effect.

5           So, counsel, let's talk about opening statements.

6    Counsel for plaintiff, how long do you anticipate your opening

7    will last?

8           MR. LICHTMACHER:  Ten minutes.

9           THE COURT:  Thank you.

10          Counsel for defendants?

11          MS. GOYKADOSH:  I am not sure, your Honor, because I

12   will not be the one who is opening, however, I do not

13   anticipate that it will last more than 20 minutes, but I am not

14   sure.

15          THE COURT:  Thank you.  I expect that the openings

16   will last no more than 20 minutes each.  A short opening giving

17   them the nature of the evidence that we anticipate for the

18   individual liability stage of the case makes good sense to me.

19          Let me just say -- let me ask counsel, with respect to

20   order of closing arguments, do either of you have a particular

21   view regarding the proper ordering of those arguments that

22   you'd like to present to me?

23          Counsel for plaintiff?

24          MR. LICHTMACHER:  Well, it depends if you allow for a

25   reply.  If you allow for a reply by plaintiff, I would want
```

J8R7MCCC

plaintiff, defendant, plaintiff.  If not, the standard that
I've always -- the trials I've always done has always been
defendant and then plaintiff finishes.

          THE COURT:  Counsel?

          MS. GOYKADOSH:  I do recall that the Court's
preference was plaintiff, defendant and then a rebuttal by
plaintiff.  We certainly have no objection to that.

          THE COURT:  Thank you.  That is what I typically do.
So, understanding that it's acceptable to each of the parties,
I will do it in that way.  Just one comment, which is that
rebuttal closing is just that; it's not a second closing.  It's
a rebuttal, it should be short and targeted to the arguments
made by the defendants.

          So, for both openings and closings, please keep your
statements in line.  What do I mean by that?  I mean don't do
things that you're not supposed to do in opening statements.
So, remember, it is not an argument; it's an overview of the
anticipated evidence.

          I will not allow you to argue in your opening
statements.  You should be very hesitant to describe the law,
given that we have not had a charging conference.  I have
unfortunately had to provide corrective instructions to jurors
after lawyers have errantly argued the law in an opening
statement before we have had a charging conference.  So, I
would be very cautious in that.

J8R7MCCC

1        So, with respect to the boundaries of proper opening

2   statements, I will simply tell you to do them properly and to

3   tell you that I will police them and interrupt you if you

4   exceed the boundaries.  The best way to avoid that is for you

5   to police yourselves after reviewing the proper scope of an

6   opening statement.  Much the same will be true with respect to

7   closing arguments, and we can discuss that later in the life of

8   the case.

9        So, we have talked about each of the witnesses.

10  Counsel for defendants, you have mention the prospect of adding

11  Letonia Monroe as a rebuttal witness.  Counsel, can I hear

12  briefly from you about that.

13       MS. GOYKADOSH:  So, your Honor, I did mention it was

14  Monroe.  At this point my understanding is that it would not be

15  Monroe.  It would either be a Captain Lin or a Captain Harris.

16  These are two captains who were at AMKC on the date of

17  incident, and they did fill out witness use of force reports.

18  Their proposed testimony would only be, if necessary, to the

19  extent that plaintiff says that Captain Bell was in the cell.

20  They would testify to the fact that she was not near it.  So,

21  that's just our anticipated proposed testimony, but again it

22  really depends on how plaintiff's case in chief is presented.

23       THE COURT:  Thank you.

24       Counsel for plaintiff, first, can I get a proffer

25  regarding the scope of plaintiff's anticipated testimony so I

J8R7MCCC

1  can assess the likelihood of this becoming an issue.

2          MR. LICHTMACHER:  Well, obviously detail about the

3  February 19th incident.

4          THE COURT:  I'm sorry.  Just with respect to the

5  particular issue that might trigger the need for a rebuttal

6  witness, i.e., whether or not Captain Bell was in the cell.

7          MR. LICHTMACHER:  I've got to hear what is said before

8  I know.  I mean I want to --

9          THE COURT:  Do you know whether your client believes

10  that Captain Bell was in the cell?

11          MR. LICHTMACHER:  Absolutely.  He knows her well, very

12  well.

13          THE COURT:  Is he going to testify that she was inside

14  the cell or that the assault happened outside the cell?

15          MR. LICHTMACHER:  He is going to testify that she was

16  inside the cell and beating him, you know, that she punched him

17  approximately four times.

18          THE COURT:  Thank you.  Inside the cell?

19          MR. LICHTMACHER:  I believe it is inside the cell.

20  The cell is tiny, so as I sit here I could be wrong, it could

21  be slightly outside the cell.  I believe it's inside the cell.

22  My understanding is that he was thrown inside the cell over the

23  bed, and then the hitting started.  But I'm not a hundred

24  percent sure, and I don't want to make a misrepresentation.

25          THE COURT:  That's fine.  For purposes of this

J8R7MCCC

1   conversation, I understand that there is a good likelihood that

2   plaintiff will testify as to facts that defendants believe

3   would require this rebuttal testimony.  Counsel for plaintiff,

4   any concerns about the prospect of such rebuttal testimony?

5         MR. LICHTMACHER:  Well, the lateness does concern me.

6   I want to make sure that I have all the documents that witness

7   generated.  I would like to see those documents.  You know, and

8   if I could see them, then I have no problem.

9         THE COURT:  Good.  Thank you.

10        Counsel for defendants, will you provide counsel for

11   plaintiff with the relevant reports prepared by the prospective

12   witness by this Thursday?

13        MS. GOYKADOSH:  It's just the use of force file, so

14   Mr. Lichtmacher already has it.

15        MR. LICHTMACHER:  That I do have, your Honor, but if

16   there is anything additional, I'd like to have it.

17        THE COURT:  Thank you.  Counsel, is there anything

18   additional?

19        MS. GOYKADOSH:  No, your Honor.

20        MR. LICHTMACHER:  Well, if I may, additional could be

21   if he escorted him -- he was brought internally to the hospital

22   and then was brought externally to Elmhurst, if he is involved

23   in any of that stuff.  If there is none of that, you know --

24        THE COURT:  Thank you.  Understood.

25        Counsel, is there any paperwork that describes any

J8R7MCCC

1   action in which the proposed rebuttal witness was involved or

2   perceived or reported upon?

3           MS. GOYKADOSH:  It's not my understanding that there

4   is anything beyond what I've described, however, I will

5   certainly check again and, if there is, I will promptly provide

6   that to plaintiff's counsel.

7           THE COURT:  Thank you.  I am directing that you do so,

8   and that you provide any such records to plaintiff's counsel no

9   later than Thursday the 29th.

10          Good.  Now, given that both plaintiff and defendants

11  have Mitchell and Bell as part of their case in chief, counsel,

12  can and should we call them more than once?  My preference

13  would be for efficiency sake to have defendant question the

14  witnesses to elicit all information related to their case in

15  chief during the time in which plaintiff has called them as

16  part of his case in chief.  Any reason not to proceed in that

17  way?

18          MR. LICHTMACHER:  The easiest way I found in these

19  cases to proceed is to allow me to call the defendants, to

20  cross-examine them on what would be the direct, treat them as

21  hostile witnesses -- which is specifically allowed in federal

22  rules -- and then allow the defendants to exceed the scope of

23  what would technically be a direct examination, treat it as a

24  cross-examination and elicit all the information they need.  We

25  find it's more convenient; you don't have to call the witnesses

J8R7MCCC

back a second time; and it works for the flow of the trial and
the jury's understanding what is happening a little better.  I
hope we proceed in that way.

          THE COURT:  Counsel for defendants, any concerns with
that approach?

          MS. GOYKADOSH:  Your Honor, we wouldn't really have a
problem with that approach.  The only concern is I don't know
the order of witnesses yet, so we would reserve our right to
recall a witness for rebuttal to the extent that the defendants
testify first and then plaintiff testifies.  We would just
reserve that right.

          THE COURT:  Understood.  So, at this point we will
expect that defendants will elicit any functionally direct
testimony while the witness is on the stand as part of
plaintiff's case in chief, using the approach that counsel for
plaintiff has described.

          Counsel, I don't expect this will be an issue here,
but you must each have your next witness available immediately
following your prior witness.  If your next witness is not
ready, I will understand that you've rested your case.  I again
don't expect this to be an issue here because many of the
witnesses are parties.

          In any event, you are responsible for ensuring your
witnesses' appearances.  If you need a subpoena for any witness
to appear, you should do so in a manner that assures his or her

J8R7MCCC

1    appearance at the time when his or her testimony is required.

2         Counsel, is there a request to sequester any nonparty

3    witness?

4         MR. LICHTMACHER:  I would request that all nonparty

5    witnesses not be allowed in the courtroom while testimony is

6    being given, and not be allowed to see transcripts of the

7    testimony that's been given, you know, prior to them

8    testifying.  Afterwards I have no problem.

9         THE COURT:  Thank you.

10        Counsel for defendants?

11        MS. GOYKADOSH:  We would be fine with that approach.

12   Obviously, only the defense is calling nonparty witnesses, so

13   if there is a nonparty witness, he or she will not be in the

14   courtroom for testimony.

15        THE COURT:  Thank you.  I am directing that any

16   nonparty witness be sequestered and that they not review any

17   transcript of the testimony at trial.

18        Now, during the trial, for the sake of clarity, please

19   use colored exhibit stickers to mark each exhibit as it's

20   introduced.

21        Counsel for plaintiff, I only have one set of your

22   exhibits.  Can you please provide an additional copy to

23   chambers by Thursday the 29th?

24        MR. LICHTMACHER:  Oh, yes, OK.

25        THE COURT:  Good.  Thank you.

J8R7MCCC

1          MR. LICHTMACHER:  Your Honor, my staff, everybody is

2    out sick except for my associate.  Just in case they're not

3    in -- and I have deps all day tomorrow -- you said Thursday,

4    right?

5          THE COURT:  Yes.

6          MR. LICHTMACHER:  One way or another I will get them

7    down here.  Sorry about that.

8          THE COURT:  That's fine, thank you.

9          So, all the exhibits I expect will be sent to the jury

10    at the outset of deliberations.  You should confer with my

11    clerk regarding the exhibits that have been accepted into

12    evidence before they're sent to the jury.  Indeed, you should

13    confer with my clerk about the exhibits that have been accepted

14    into evidence ideally before you close, to confirm that

15    everything that you think is in is in fact in.

16          Counsel, are there any demonstrative exhibits?

17          MR. LICHTMACHER:  Not for the plaintiff.

18          MS. GOYKADOSH:  Yes, your Honor, we would like to

19    include demonstratives of the cell at Rikers and also

20    potentially like the hallway.  Again, there is demonstratives,

21    that's why they haven't been produced.  As soon as I have the

22    pictures, I will produce them to Mr. Lichtmacher, but they

23    would only be used for demonstrative purposes.  I think it

24    would be really helpful for the jury to understand where

25    exactly this took place.

J8R7MCCC

1          MR. LICHTMACHER:  Your Honor, I don't understand how

2     that precludes them the necessity of producing them because

3     they're only being used as demonstratives.

4          THE COURT:  It's also not clear that those are

5     demonstratives.  So, counsel, please share those proposed

6     images with counsel for plaintiff.  Please confer about it.

7          I can see real value in providing a set of images of

8     what I will describe as the mise-en-scene, the setting for the

9     incident, and I believe that photographs of the cell and hall

10    would be helpful to establish that.  That said, there is a

11    question regarding the timing of their production to plaintiff

12    and fundamentally whether calling them demonstratives changes

13    the nature of the defendants' obligation to provide them to

14    plaintiff timely.

15         In any event, please confer about this issue.  It may

16    be that both sides will find them to be useful references for

17    the jury.  To the extent there is an issue regarding their I

18    will call it use at trial, I will ask you please to flag that

19    for me as well in your now very long August 29 letter.

20         MR. LICHTMACHER:  Your Honor, I would need them before

21    I start meeting with the plaintiff to prepare him for trial, so

22    I would hope I can get them before that date.  I believe the

23    first date I can meet with him at the MCC is the 31st.

24         THE COURT:  Thank you.  I expect they will be provided

25    to you forthwith.

J8R7MCCC

<table>
<tr><td>1</td><td>MS. GOYKADOSH:  Yes, your Honor.</td></tr>
</table>

 1          MS. GOYKADOSH:  Yes, your Honor.

 2          MR. LICHTMACHER:  I have one more request, your Honor.

 3          THE COURT:  Please.

 4          MR. LICHTMACHER:  Would your Honor consider using the

 5    Colorado method in terms of charging the jury before we close?

 6          THE COURT:  Thank you.  That's an interesting

 7    question.  I will say that I have done that, so I will consider

 8    the request.  I have not done that in a civil case where the

 9    issues are I will call it relatively more discrete, as is the

10    case here.

11          The reason why I ask the parties for the short

12    introductory statement regarding the law is in part to lay a

13    framework for the jurors about what the legal issues will be in

14    advance of trial and closing arguments.  I will consider the

15    request.

16          Counsel for defendants, do you have a view?

17          MS. GOYKADOSH:  Your Honor, we would request the

18    standard summations, and then the jury is charged after that.

19          THE COURT:  Thank you.  I will certainly consider the

20    request, and I will tell you what I think about it on Tuesday

21    morning.

22          MR. LICHTMACHER:  If I may, just one little point.

23          THE COURT:  Please.

24          MR. LICHTMACHER:  What I've found when I've been at

25    trials when it was done that way is it prevents either

J8R7MCCC

1    counsel -- and I'm including myself in that -- from mistakenly

2    misrepresenting the law in some way that would displease the

3    Court.  I know what a stickler you are for rules, your Honor,

4    and I think if we hear it from it, besides having read it, and

5    then we're able to talk to the jury, there would be a much less

6    chance that any of that could happen.

7         THE COURT:  Thank you.  I appreciate that rationale.

8    Thank you.

9         So, I understand that there are no stipulations of

10   fact.  If there are stipulations of fact that the parties agree

11   to between now and trial, or during trial, you should write

12   them out, type them out and have them signed by each of the

13   lawyers.  We will present them to the jury in the form of a

14   marked exhibit.

15        Now, I'm going to reserve decision on the objections

16   to exhibits which were asserted in the joint pretrial order.

17   With respect to the exhibits, counsel for plaintiff, I note

18   that you haven't raised objection to any of defendants'

19   proposed exhibits.

20        MR. LICHTMACHER:  I have no objections to those

21   exhibits, your Honor.

22        THE COURT:  Good.  Thank you.

23        So, it may be that the parties can discuss whether or

24   not you're willing to stipulate to the admissibility of any

25   exhibit.  Frankly, I don't think it makes a big difference if

J8R7MCCC

1    you do or do not, understanding that there will be no

2    objection.  I think it's useful for the jury to hear the

3    foundational questions with respect to any exhibit in any

4    event, just so they know what it is they are looking at, and

5    why it is the witness who is talking about it knows what it is.

6            Good.  So, I'm going to look at the joint pretrial

7    order in light of our discussions today, particularly with

8    respect to the witnesses who we know will not be coming in.  I

9    made note the fact of bifurcation in it.  I expect to enter it

10   under Rule 16(e) prior to the commencement of trial.  On

11   Tuesday morning, I will review my proposed modifications to it

12   at that time with you.

13           Counsel, anything else that we should take up?  That

14   substantially concludes my agenda.  I do want to ask whether

15   there is a prospect for resolution of the case, but first let

16   me ask if there is any other business that you'd like for me to

17   take up?

18           MR. LICHTMACHER:  The custodian of the exhibits, how

19   do you work it, your Honor?

20           THE COURT:  You're asking who holds onto the exhibits?

21           MR. LICHTMACHER:  Yes.

22           THE COURT:  Thank you.  So after each exhibit has come

23   in, you can provide them to my clerk, who will have all of the

24   ones that have come in in a stack.

25           MR. LICHTMACHER:  In fairness to my adversary -- it

J8R7MCCC

may seem strange for me to say this -- because the exhibit list

has changed, you know, and I don't know what she is objecting

to or not objecting to, and that was my fault; you knew my

situation, your Honor, and thank you for allowing me to do

that -- I know you read from the new exhibit list -- she should

be given an opportunity to object to them, which also works in

the plaintiff's favor, because I will know which ones are not

objected to and can be stipulated into evidence with the new

list that was provided to you up through 21.

             THE COURT:  Thank you.

             Counsel for defendants, anything else you would like

to take up?

             MS. GOYKADOSH:  Yes, your Honor, one concern.  I'm

almost hesitant to raise it, but I feel like I have to.  I

notice that Mr. Lichtmacher does have a cane and the cane is on

the table.  I believe that Mr. McCurdy will be sitting at the

table, and he will be behind me, so I'm just a little bit

concerned about Mr. McCurdy's access to the cane.  I will be in

close proximity to him and the cane, so I just wanted to flag

that for the Court's attention.

             MR. LICHTMACHER:  I am not laughing at her at all.  I

understand her concern, and I have given it great thought, and

I'm going to address it in some way.  Maybe I will have

Mr. McCurdy one seat down from me, and I will have my cane on

the right side of the table.  But I don't want to be falling in

J8R7MCCC

1   front of the jury, your Honor.  Sometimes I can walk, sometimes

2   I can't.

3          THE COURT:  Thank you very much for the consideration,

4   counsel.  Let me just suggest this, two things:  First, as I

5   mentioned, I expect that the defendant will be in the back row,

6   and I expect that there will be marshals present throughout the

7   trial.  Still, it's a reasonable concern, and what I propose as

8   a result -- if I can ask this without it imposing or in any way

9   making it difficult for you to use your cane,

10  Mr. Lichtmacher -- is that you place it on the opposite side

11  from the defendant, so if he is seated to your left, that you

12  place the cane to your right, or vice versa.  That may provide

13  some reassurance.

14         Counsel, is that something you can do without

15  adversely impacting at all your mobility and use of the cane?

16         MR. LICHTMACHER:  Thank you for asking.  I had

17  actually considered it, and that had been my plan.  If the

18  Court can assist me in one small regard to that.  I'd like to

19  inform my client that he has to sit one seat down from me, not

20  right next to me.  I'm not afraid of him personally.  But that

21  way it would make it a little bit easier; it wouldn't make me

22  look stand-offish to my client in front of the jury.

23         THE COURT:  I don't take a position on that.  I would

24  be happy for him to sit right next to you.  I can see benefits

25  to that.

J8R7MCCC

1        MR. LICHTMACHER:  He is six foot four and he could

2    reach the cane.

3        THE COURT:  Thank you.

4        MR. LICHTMACHER:  And also is he going to be shackled

5    and handcuffed?

6        THE COURT:  No, he will not be shackled and handcuffed

7    in the courtroom.  I don't do that for criminal defendants; I

8    would not permit it for a civil litigant.

9        MR. LICHTMACHER:  I appreciate that.

10        MS. GOYKADOSH:  Your Honor, I don't know if this would

11    be something that would work for Mr. Lichtmacher, but would the

12    marshals be able to hold onto Mr. Lichtmacher's cane?  Again,

13    as Mr. Lichtmacher mentioned, he is six foot, he is quite big

14    is my understanding, so he can jump over and grab it, and I

15    will be right there.  So, if this is where the cane is, and

16    this is where plaintiff is, and this is where I am, I don't

17    necessarily think it's far enough to have it at the other side.

18        THE COURT:  Thank you.  I'm sorry, let me just make

19    one comment.  When counsel said "this is where he is, this is

20    where I am," she was referring to the fact that she is seated

21    at the far end of the defense counsel's table, the one nearest

22    to the podium.  What I would propose as a result -- and this is

23    what we would typically do when there is a criminal defendant

24    involved -- the criminal defendants usually sit in the inner

25    chairs along defense counsel's table, and their counsel sits at

J8R7MCCC

1    the outer chairs so that counsel is closer to the podium and

2    the defendant is further from the podium.  So, in that case the

3    defendant in those cases -- or in this case the plaintiff --

4    would have to go through both his counsel as well as the space.

5    So, I might propose that the plaintiff's lawyer sit at chair

6    two at the back table and that the plaintiff sit at chair

7    three.  That way they can sit next to each other, but they have

8    some distance between them and counsel for defendants, to the

9    extent that there is a reasonable perceived concern.

10          MR. LICHTMACHER:  You know, actually I can give my

11    cane to the marshals.  I mean I can waddle over and get it.

12          THE COURT:  Thank you.  I don't make that request.  I

13    hope I am not exaggerating or underestimating the risk here,

14    but plaintiff here is seeking monetary relief as a result of

15    excessive force allegation.  Unless he is really not a rational

16    actor, I would be surprised if he would choose in front of the

17    jury to conduct himself in a way that would illustrate perhaps

18    conclusively the propriety of the use of force against him by

19    law enforcement.

20          So, I don't underestimate the risk, but I believe that

21    by placing him at the inner part of the table, placing

22    Mr. Lichtmacher between him and the podium, and placing

23    Mr. Lichtmacher's cane further removed from him, and together

24    with the presence of the marshals, that it will be adequate to

25    address the concerns.

J8R7MCCC

```
 1              I am very hesitant about separating him from his
 2       counsel so that he can provide you with ready feedback about
 3       the strategy of his case, which is why I'm not going to ask you
 4       to sit a chair or more away from him during the course of the
 5       trial.
 6              MR. LICHTMACHER:  Thank you, your Honor.
 7              If I'm feeling up to it those days, I will leave the
 8       cane with the marshals throughout the trial.  If I am not, I
 9       will not though.
10              THE COURT:  Thank you.  That's up to you.
11              So, that completes my agenda.  I would be remiss if I
12       didn't ask whether there is any prospect for a resolution of
13       the case between now and commencement of trial.  I have looked
14       at the records and photographs at this point.  Anything for the
15       parties to talk about that might yield a resolution that would
16       obviate the need for a prospective trial?  Counsel for
17       defendants?
18              MS. GOYKADOSH:  No, your Honor.
19              THE COURT:  Thank you.
20              Fine.  So, I will see you all here on the 3rd.  I look
21       forward to seeing your various submissions on the 29th.
22       Anything else that we should take up before we adjourn?
23       Counsel for plaintiff?
24              MR. LICHTMACHER:  Nothing for the plaintiff.
25              THE COURT:  Thank you.  Counsel for defendants?
```

J8R7MCCC

1          MS. GOYKADOSH:  No, your Honor.  But just to check

2     with regards to the deadlines, the proposed requests to charge

3     is now due on Thursday?

4          THE COURT:  Correct.

5          MS. GOYKADOSH:  The defendants will be submitting a

6     letter with regards to any medical related issue by Thursday.

7          THE COURT:  Correct.

8          MS. GOYKADOSH:  And the parties will be submitting a

9     joint letter responding to the various squibs and the voir dire

10     by Thursday as well.

11          THE COURT:  Correct.  Thank you very much.  This

12     proceeding is adjourned.

13          (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25