J931mcc1

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   CHANCE McCURDY,

4                   Plaintiff,

5           v.                              17 Civ. 5168 (GHW)

6   CORRECTION OFFICER J. MITCHELL
    and CAPTAIN OF CORRECTIONS
7   BELL,

8                   Defendants.            Jury Trial

9   ------------------------------x

                                           New York, N.Y.
10                                          September 3, 2019
                                           9:10 a.m.
11
    Before:
12
                    HON. GREGORY H. WOODS,
13
                                           District Judge
14
                         APPEARANCES
15
    THE LAW OFFICE OF FRED LICHTMACHER, P.C.
16       Attorneys for Plaintiff
    BY:  FRED LICHTMACHER, ESQ.
17
    NEW YORK CITY LAW DEPARTMENT
18  OFFICE OF THE CORPORATION COUNSEL
         For Defendants
19  BY:  BRACHAH GOYKADOSH, ACC
         OMAR J. SIDDIQI, ACC
20

21

22

23

24

25

J931mcc1

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your name for

3     the record.

4          MR. LICHTMACHER:  For the plaintiff, I'm Fred

5     Lichtmacher.  Good morning, your Honor.

6          THE COURT:  Thank you.  Good morning.

7          MS. GOYKADOSH:  Brachah Goykadosh on behalf of

8     defendants Captain Bell and Correction Officer Mitchell.  Good

9     morning, your Honor.

10          THE COURT:  Good morning.

11          MR. SIDDIQI:  Omar Siddiqi for the defendants also.

12    Good morning, your Honor.

13          THE COURT:  Good morning.

14          And you're joined at counsel's table by?

15          MS. GOYKADOSH:  This is Captain Bell, your Honor.

16          THE COURT:  Thank you.  You can be seated.

17          Good.  So thank you all for being here.  Let's

18    proceed.  There are a number of issues that I have on my agenda

19    for discussion at the outset of the trial day, so let's

20    proceed.

21          So there are a number of issues I have on my agenda

22    for this morning.  Those include scheduling issues; I hope to

23    discuss Mr. McCurdy's production issues; I hope to discuss the

24    joint pretrial order, which I circulated or had circulated over

25    the course of the weekend with the modifications reflecting our

J931mcc1

1    discussions at the final pretrial conference; I will rule on

2    the pending motions *in limine*, both those that were raised at

3    the final pretrial conference as to which I reserved -- namely,

4    the proposed exclusion of certain pieces of evidence under Rule

5    26(a); and then I will also hope to discuss the positions of

6    the parties with respect to what I will describe as the lack of

7    medical experts issue.

8                So counsel, is there anything that you would like to

9    raise beyond that agenda or to ensure that we include in the

10   agenda during the window before the jury arrives?  Counsel?

11               MR. LICHTMACHER:  There's one issue I would like to

12   raise; small one.  And we would like the Court to take -- well,

13   obviously, the most important issue is Mr. McCurdy's

14   production, and I'll explain what I know about that in a

15   second.  But I'd like the Court to take judicial notice that

16   assault on a peace officer, pursuant to 120.08 under the New

17   York Penal Law, is a felony.

18               THE COURT:  Thank you.  Let's take that up.  I'm not

19   sure what the context is of that request.  Can you provide me

20   more information.

21               MR. LICHTMACHER:  Certainly.  Mr. McCurdy is alleged

22   to have slugged Officer Mitchell in the face.  That's a felony,

23   a D felony, I believe, 120.08 under New York Penal Law.  He was

24   not re-arrested and charged with that felony.  So before I

25   preach, talk about what the law is to the jury, I'd like to get

J931mcc1

1  the Court's acquiescence as to that.

2          THE COURT:  Thank you.  We'll discuss that separately.

3  I want to give defendants the opportunity to consider their

4  position.  I will also benefit from their argument with respect

5  to this issue, particularly to the extent that the idea is that

6  nonprosecution means nonoccurrence of a fact.  There may be

7  questions about that understanding; in the same way that there

8  may be questions about whether an arrest means the occurrence

9  of a fact, the question of whether or not a nonprosecution

10  means the nonoccurrence of a fact; something that we may wish

11  to discuss in the context of the request, as I understand it to

12  be posited.  But we can take that up separately.  I will

13  include that on a list of issues for follow-up.

14          Good.  Anything else?

15          MR. LICHTMACHER:  Nothing further.  Of course

16  Mr. McCurdy's production.  If the Court would like an update on

17  what I've done.

18          THE COURT:  Please.

19          MR. LICHTMACHER:  All right.  First of all, for what

20  it's worth, my sincere apology.  I did make a mistake.  I

21  thought she had written the writ the way I had sent it to you

22  after the corrections were noted.  And clearly it's my error,

23  and I know I'm wasting a lot of people's time since he's not

24  produced today, so I'm falling on my sword.  This is clearly my

25  problem -- my fault; everybody's problem.

J931mcc1

1          We spoke to GRVC; I went to GRVC; I sent someone to

2     MCC.  Everybody received a fax of the writ.  The Marshal had

3     originally taken three copies, and although it's not a defense,

4     just usually when we do writs, or when I've done writs, I've

5     done them for state inmates, you deliver a fax to the state,

6     it's over, everything's taken care of.  Obviously it's

7     different, and obviously I knew that because the trial was

8     adjourned the first time, I served it on everybody, all three

9     entities that had been required by Judge Cote at that time.

10    Nevertheless, MCC actually informed my process server -- and he

11    went back again yesterday -- that they were closed for the

12    weekend, any executive type offices.  GRVC has told me the same

13    thing.

14          I spoke with MCC about 20 minutes ago.  They have not

15    received any inmates today from Rikers, and usually they do get

16    people, so they said they didn't receive anybody as of yet

17    today.  So I've been in constant contact with them.  As I said,

18    I ran over; I had sent someone to MCC, as I told you; I went to

19    GRVC myself -- and by the way, I was able to see my client

20    there.

21          THE COURT:  You were able to see him?

22          MR. LICHTMACHER:  Yeah.  I knew I could get into GRVC.

23    Took me a couple of hours, but I was able to get in.  So that

24    part is not problematic.  Obviously the production is the

25    problematic part.  And I'm hoping this doesn't majorly delay

J931mcc1

1    this from going forward, and I'm still optimistic that they

2    will bring him today, because everybody does have the paperwork

3    they need at this point, and they've had it for a while.  I

4    understand they didn't work on the weekends, but if he's

5    produced now, I think the only one that was prejudiced is that

6    I had to take a slightly longer ride to go see him in GRVC, if

7    he's produced now.  If not, I understand, of course, the

8    problems for the Court and my adversaries and everybody

9    involved.

10             THE COURT:  Good.  Thank you.

11             So the question presented is:  What happens if he's

12   not produced, in counsel's words, now?  That is a question, a

13   substantial one.

14             Counsel for defendants, you submitted a letter

15   yesterday with respect to this topic, so I believe I understand

16   your position.  Nonetheless, let me invite any comments with

17   respect to your views regarding how we should proceed in the

18   event that Mr. McCurdy is not produced prior to the time

19   established for jury selection.

20             MS. GOYKADOSH:  Yes, your Honor.  We did submit that

21   letter yesterday, and our position is in that letter.  I would

22   reiterate that we've been waiting for this trial for quite some

23   time, and, you know, the two defendants in this case are

24   prejudiced by further delay.  So we think we should start

25   today.  Mr. Lichtmacher is certainly competent counsel for

J931mcc1

1    plaintiff, and he can pick a jury, and he can question any

2    witnesses before Mr. McCurdy arrives.  So we're ready to start.

3              MR. LICHTMACHER:  Your Honor, I specifically asked

4    Mr. McCurdy that without waiving attorney-client privilege, as

5    to that one question, if he would acquiesce to me picking a

6    jury without him, in case there was a problem with production,

7    and he said absolutely not.  So he said it politely, but he was

8    clear that he wants to be here for jury selection.  And I think

9    he's prejudiced by not being here when the jury comes in.  You

10   know, sometimes you can tell things by the way the jury looks

11   at you, you know, whether or not -- there's various things you

12   can do by observing the jury that you can't do without your

13   client here.

14             So I would beg to differ with my adversaries.  And

15   Mr. McCurdy has waited just as long for this trial as they

16   have.

17             THE COURT:  Thank you.

18             So this is a difficult question.  I appreciate,

19   counsel, your acceptance of the responsibility for the

20   nonproduction.  Ultimately, I agree that there is some

21   prejudice to Mr. McCurdy in the event that we proceed without

22   him present.  It's a challenging issue, in part because of the

23   schedule.

24             Let me just highlight some of the issues presented.

25             Counsel, as you know, this trial has been adjourned

J931mcc1

several times, but let me focus at the outset on the immediate

scheduling issues.  That is the following:  Today is a Tuesday

because it's a holiday week.  As a result, if we wait to select

a jury until tomorrow, when Mr. McCurdy hopefully will be

produced -- and I should say, I will ask someone from my staff

to also reach out to the Marshals to see if they can find out

any information.  But if we wait until tomorrow to select a

jury, we will be beginning the trial on the Wednesday of this

week.  During our conference shortly after this case was

re-assigned to me, I inquired if the parties could move the

trial to next week because it would have been more convenient

for me, and there were scheduling issues from defendants' side

that prohibited that.  I believe that those involved a conflict

for Mr. Siddiqi and also for one or more of the individual

defendants.  So my concern is, given the prospect that this

trial could last in excess of a week -- I'm going to tell the

jurors approximately a week and a half -- that if we defer

commencement of the trial until tomorrow, that functionally we

will run up against the same scheduling issues from defendants'

side that prohibited them from consenting to proceed to trial

next week.  I recognize that this could potentially be a

two-stage trial involving both the individual claims of

liability as well as the *Monell* claims, and so that I fear may

very well run into next week.

So counsel, I appreciate that Mr. McCurdy wants to be

J931mcc1

1    here, and I appreciate that there is prejudice associated with

2    it.  What I'm going to do is to, barring further argument --

3    and I will open the floor to further argument -- I'm inclined

4    to proceed.  If I were to proceed, I would instruct the jurors

5    that Mr. McCurdy was not here through no fault of his own, and

6    that they were not to speculate as to the reasons for his

7    nonappearance, and that they should not hold that against him

8    in any way.  I recognize that there's benefit to having the

9    input of a client during jury selection, but I'm concerned, for

10   further reasons that I'll articulate later, that that may not

11   be possible, given the scheduling issues.  My hope is that an

12   instruction of the sort that I just described would help to

13   address the kind of prejudice that you've just suggested.  It

14   does not address the fact that the jurors will not be looking

15   at the plaintiff during the course of jury selection and

16   whatever incremental information that you might get from their

17   visual responses to him -- which I accept may be present, to

18   some degree -- wouldn't be available as a cue.

19           So any further argument on this?  And then I expect to

20   rule.  Counsel for plaintiff?

21           MR. LICHTMACHER:  My concern, your Honor, is, GRVC has

22   been having problems producing people anyway.  This one is my

23   fault; that's not what I'm saying here.  But they've been

24   having problems.  I know from another client of mine, who was

25   supposed to be produced to a housing court, who I saw also when

J931mcc1

1    I went to GRVC this weekend, was supposed to be produced to

2    housing court, and I was just giving papers; met him there.  I

3    didn't write the writ, the judge had ordered it, and they

4    didn't produce him to housing court last week.  So apparently

5    it's the procedure, or for whatever reason, it's been difficult

6    at GRVC recently.  And I know this for a fact.  I mean, I know

7    this.  I sent a process server down to meet him with papers, we

8    had people go down there to meet him at the court, and this was

9    not through my office or my failure to produce the writ.  So

10   this seems to be not unusual right now.  If the Court can do

11   anything to move this process along.  I'm afraid we'll start

12   and then Mr. McCurdy isn't produced even tomorrow, and I don't

13   think -- I may be wrong, but I don't think we get to his

14   testimony until tomorrow anyway.  I intend to call Mitchell,

15   who I don't see here yet, Officer Mitchell, Captain Bell, and

16   then McCurdy.

17            And another issue is, I'm concerned -- I wonder if

18   Officer Mitchell, Correction Officer Mitchell, is going to be

19   here today.  I did inform my adversaries he was who I was going

20   to call first.

21            THE COURT:  Good.  Good.  Thank you very much.

22            So as I say, I will ask a member of my staff to reach

23   out to the Marshals to inquire as to the status.  If there's

24   anything that I can do to facilitate his timely production, I

25   will do so, with the assistance of my staff, momentarily.  Let

J931mcc1

1    me just get through a number of issues.

2              So with respect to this, I appreciate again the

3    concern related to the fact that Mr. McCurdy is not here.  It's

4    a difficult issue.  I'm sorry that we're in this situation.  As

5    noted, I recognize that it has some adverse impacts on

6    Mr. McCurdy.  Unfortunately, ultimately, however, balancing all

7    of the concerns presented here, I believe that we should

8    proceed.

9              First, let me say that if I could reschedule the trial

10   for next week, I would, but I cannot.  For the reasons that

11   defendants put on the record during our prior conference, they

12   cannot proceed that week.  After next week, I don't have

13   availability to schedule a trial until next year in the late

14   spring or summer, so if we hit against a hard stop for this

15   trial of next week, unfortunately, we'd be looking at deferring

16   this trial not just for a matter of weeks but for a matter of

17   another seven or eight months.  Given that the parties have

18   been working so hard to get this case to trial and the prior

19   adjournments, I don't believe that that would be appropriate.

20   As counsel know, this trial has been adjourned twice before,

21   and it was in large part because Judge Cote believes that it

22   was important to hold to this third trial date that it was

23   transferred back to me when a conflict arose on her schedule.

24             Now because the trial has been twice previously

25   adjourned and because this trial date has been long scheduled,

J931mcc1

I understand the prejudice to Mr. McCurdy as a result of his

absence during witness testimony, but I'm pleased to hear that

counsel had the opportunity to confer with his client over the

weekend at the GVRC so that at least that was able to go

forward.

Counsel and the parties have had ample time to prepare

for the trial.  In order to address the prejudice from his

absence here in front of the jury, I'm going to instruct the

jury that he is here through no fault of his own and that

they're not to speculate as to the reasons for his absence or

to hold that fact against him.  If the parties have proposals

regarding specific language for such an instruction, I invite

them.

Counsel for defendants have articulated the prejudice

resulting to them from further delay.  Those are put on the

record in their letter that was submitted to the Court

yesterday.  I accept those protestations and prejudice to them

as a result of further delay, particularly given that I believe

that as much as a day delay could functionally turn into a

multi-month delay because of their scheduling issues next week

and I'll call it the Court's calendar, in connection with this

civil, noncriminal matter.

I also am concerned about the interests of the jurors.

Fundamentally having the jurors sit around for a whole day in

order to permit Mr. McCurdy to be here for purposes of jury

J931mcc1

selection means that we are misusing the time of a number of
our fellow citizens who are here to do their civic duty.

        It also has an adverse impact on the Court's schedule.
As you know, I cleared my schedule for the purpose of going
forward with this trial this week, and deferring further has an
adverse impact on my schedule.

        So ultimately I feel badly for Mr. McCurdy.  I would
very much like for him to be here, as everybody would.
Ultimately, I believe, balancing all the factors, this is an
equitable result.  This is not Mr. McCurdy's fault, but the
responsibility falls with Team McCurdy, I'll call it.  And so I
believe that we should proceed.

        Now with respect to the joint pretrial order, I asked
my clerk to email all of you a revised copy of the order last
night.  Counsel, any comments on the revised order, which I
modified in order to show those modifications that I believe
grew from our discussion?

        MR. LICHTMACHER:  Your Honor, I would have thought
that you would have just incorporated the exhibit list that I
delivered to the Court with the numbers in there, and I'm a
little -- yeah.  That's what I would have thought the Court
would have done.  Because I did deliver such a document to you.
I have another copy if you need it.

        THE COURT:  Thank you.  To be clear, counsel, you were
supposed to do that work before you sent me the joint pretrial

J931mcc1

1    order.  Again, I am temporizing because of the failure by you

2    to do the clearly required work.  So the document that I sent

3    to you I believe accurately reflects the exhibit references

4    from your list, but fundamentally, I request that the parties

5    put together an evidence list in advance of trial to include

6    that in the joint pretrial order.  I and my staff are not here

7    to do the work that you should have done.  I did a substantial

8    amount of that work by trying to identify, from those things

9    that you put into the joint pretrial order, those things that

10   are your proposed exhibits.  So I apologize if this was not

11   done in the way that you would have preferred.  I'll simply

12   note that you had the opportunity to present to the Court a

13   list in the way that you would have preferred by following my

14   orders regarding the contents of the joint pretrial order.  So

15   counsel, we are dealing with the circumstances as they have

16   developed based on the information presented to the Court and

17   the timing upon which it was so presented.  Given that, is the

18   information that's included in the joint pretrial order

19   accurate?

20          As counsel for plaintiff is looking at that, counsel

21   for defendants, any comments on the Court's modifications to

22   the joint pretrial order, which I hope to enter promptly?

23          MS. GOYKADOSH:  No, your Honor.  No comments on the

24   Court's modifications to the JPTO.  However, I will

25   respectfully note that Correction Officer Mitchell is not here

J931mcc1

1   yet.  I have been informed a few minutes ago that he is almost

2   here, and I apologize to the Court for his lateness.

3             THE COURT:  That's fine.  Good.

4             Counsel for plaintiff.

5             MR. LICHTMACHER:  Well, I am a little confused by it,

6   the way you drafted it.  It does -- yeah, I am a little

7   confused by it.  I mean, things are knocked out that I think we

8   agreed -- 11, 12, all the incident photos, I thought we

9   agreed -- I believed we had agreed would come in, were not

10  objectionable.  And I just got those, the color photos from

11  them recently.  So that's my main problem is 10, 11, 12, 13,

12  and 14, as well as 15, Exhibit 15, my Exhibit 15, those I'm a

13  little surprised don't seem to be in, your Honor.

14            THE COURT:  Thank you.  So let's go through each of

15  these.

16            Counsel, which exhibits in particular do you believe

17  have been excluded that should be included?

18            MR. LICHTMACHER:  Well, okay.  As I said, all the

19  incident photos, 10 through 14, which are simply photos that

20  they provided that show what he looks like, you know, and

21  depicted by them, which I don't think they were objecting to.

22            I'll pull out the exact photos.

23            THE COURT:  Thank you.

24            So counsel, if you look to the bottom of the page,

25  you'll see the asterisks.  So the issue here is that in the

J931mcc1

1    joint pretrial order presented, rather than providing an

2    exhibit number or reference that correlates to an exhibit or

3    exhibit reference that one might introduce, you did not do

4    that.  Instead, you gave us Bates stamp ranges.

5              MR. LICHTMACHER:  That's true, your Honor.

6              THE COURT:  Among the Bates stamp ranges you provided

7    were D860 through 969.  As evidenced by the ultimate set of

8    exhibits presented to the Court, you do not intend to put in

9    all of those pages; instead, you intend to put in certain of

10   them.  And so if you look to where it's crossed out during that

11   Bates stamp range, you'll see a double asterisk.  A double

12   asterisk notes Exhibit 9, with the specific D range, 860;

13   Exhibit 10, which is D875; Exhibit 11, which is D895; and so

14   on.  So if you can look to the entirety of the documents when

15   making your comments to the Court, I would benefit from it.  It

16   would expedite our discussion.

17             MR. LICHTMACHER:  I'm still a little confused.  I'm

18   sorry.  I am a little confused as to what this indicates.  The

19   double asterisk means that they're not being objected to?

20   They're in?  I just want to make sure I'm clear before I try to

21   present it.

22             THE COURT:  Thank you.  Nothing is in.  There are

23   objections --

24             MR. LICHTMACHER:  I didn't mean that.  I meant, you

25   know --

J931mcc1

```
1            THE COURT:  Thank you.  What is not in is the entirety
2    of the Bates stamp range 860 to 969.  You have not proposed
3    that it come in.  So the reference to D860 to 969 has been
4    excluded.  However, the double asterisk is intended to reflect
5    that the actual exhibits presented to the Court that fall
6    within that Bates stamp range are proposed to be introduced.
7            MR. LICHTMACHER:  Thank you.
8            THE COURT:  Those are D9 through 15.
9            MR. LICHTMACHER:  Thank you, your Honor.  I did not
10   understand that.
11           Now most of the other documents that are precluded are
12   impeachment -- or have not specifically appeared on the JPTO
13   are actually impeachment documents, your Honor, so I don't
14   believe they have to be part of the JPTO.  I see nothing in the
15   rules that says that impeachment documents must be included in
16   the JPTO, unless I missed something.  I missed enough here that
17   I don't want to miss something else.
18           THE COURT:  Thank you.  I'm not going to take a
19   position on that at this point.
20           The other things that have been stricken from this
21   list are either things that were not produced as part of the
22   actual exhibit list, which is most of them, frankly, and I
23   actually think that that's almost everything.
24           Good.  So anything else before I execute the joint
25   pretrial order?  Counsel?
```

J931mcc1

1          MR. LICHTMACHER:  I just want to be clear, before I

2     make any error, that I see nothing in your rules -- not to be

3     redundant -- about impeachment material having to be listed in

4     the joint pretrial order.

5          THE COURT:  Thank you.

6          Impeachment meaning a document that you would present

7     in the event that there's contrary testimony?

8          MR. LICHTMACHER:  Contrary testimony; correct, your

9     Honor.

10         THE COURT:  Thank you.

11         I'll take that up separately if and when any such

12    exhibit is offered for potential use.  It would not be

13    introduced, as I understand it, as proposed, as direct

14    evidence.

15         MR. LICHTMACHER:  And that is what I did write in my

16    motion *in limine*, I believe, and we agreed at the conference

17    that I'd approach first before using those emails.  Thank you,

18    your Honor.

19         THE COURT:  Thank you.

20         I'm executing the joint pretrial order with the

21    modifications that I've submitted to the parties.

22         I have just done so.

23         Good.  So let me take up the motions *in limine*.

24         First, there's a motion *in limine* to preclude

25    plaintiff from introducing undisclosed exhibits.  During the

J931mcc1

final pretrial conference held on August 27, the Court reserved

judgment on defendant's motion to preclude plaintiff from

introducing three exhibits which were not produced in

discovery, not disclosed by plaintiff within the time frame set

forth in Federal Rule of Civil Procedure 26.  Those documents

are:  Plaintiff's Exhibit 16, the Nuñez consent judgment; and

Plaintiff's Exhibits 20 and 21, two photographs published in

the Daily News in May 2014.  The Court is now prepared to rule

on defendants' motion.  I'm sorry for reserving on that.  I did

not want to take up further time.  I wanted to consider the

arguments presented by the parties during that conference

before ruling.

          "Rule 37(c)(1) provides that any 'party that without

substantial justification fails to disclose information

required by Rule 26(a)... is not, unless such failure is

harmless, permitted to use as evidence at a trial... any

witness... not so disclosed.'"  *Patterson v. Balsamico*, 440

F.3d 104, 117 (2d Cir. 2006).

          In determining whether exclusion is warranted under

Rule 37(c)(1), the Court should consider:  "(1) the party's

explanation for the failure to comply with the [disclosure

requirement]; (2) the importance of the [precluded evidence];

(3) the prejudice suffered by the opposing party as a result of

having to prepare to meet the new [evidence]; and (4) the

possibility of a continuance."  *Id.* (Quoting *Softel, Inc. v.*

J931mcc1

*Dragon Medical and Scientific Communications, Inc.*, 118 F.3d
955, 961 (2d Cir. 1997).

Here, plaintiff does not dispute that he failed to
disclose these documents within the time frame set forth by
Rule 26.  Furthermore, the mere fact that the Nuñez consent
judgment was referenced in the plaintiff's second amended
complaint does not excuse his failure to disclose that
document; nor does the fact that the document was in the
possession of the defendants excuse that failure.  Accordingly,
I evaluate the issue weighing the factors articulated by the
Second Circuit in *Balsamico* to determine whether they favor
preclusion of these categories of evidence.

Factors 1 and 4 favor preclusion of both documents.
Plaintiff has offered no justification for his failure to
disclose these documents.  Indeed, although plaintiff failed to
submit any opposition to defendants' motion within the time
period required by the Court's local rules, the Court gave
counsel the opportunity to present argument regarding the
application of the *Balsamico* factors during the final pretrial
conference held on August 27, 2019, even being presented with
an additional opportunity to respond.  Plaintiff still did not
offer any substantive explanation for his failure to produce
these documents in discovery.

The fourth factor -- the possibility of a
continuance -- also weighs in favor of preclusion.  A trial in

J931mcc1

this matter has already been adjourned twice in the past five

months.  The Court will not entertain yet another adjournment

of trial in order to account for the consequences of

plaintiff's late disclosures.

Factors 2 and 3 favor preclusion of the Daily News

photographs but not, in my view, the Nuñez consent judgment.

Plaintiff did not simply reference the Nuñez consent judgment

in his complaint but rather explicitly stated that the Nuñez

consent judgment provided the basis for one of his theories of

*Monell* liability.  Although such a reference did not obviate

plaintiff's obligation to disclose his intent to introduce the

judgment as an exhibit at trial, plaintiff's reliance on the

document in his complaint both underscores the importance of

the judgment to his case and defendants' awareness of

plaintiff's intent to rely upon it.  Furthermore, the Nuñez

consent judgment was executed by the City of New York.  It is

essentially defendants' own document.  While the Court

recognizes that there is some risk of prejudice to defendants

if plaintiff is allowed to introduce this document despite its

late disclosure, defendants were effectively on notice of

plaintiff's intent to rely on the judgment at trial and had

more than adequate time to develop rebuttal evidence, much of

which I assume might come from the defendants' own witnesses.

Accordingly, the Court will not preclude plaintiff from

introducing the Nuñez consent judgment at trial based on his

J931mcc1

failure to disclose the document timely pursuant to Rules 26

and 37.   However, the Court notes that the admissibility of

this document may be subject to other evidentiary

considerations on which the Court expresses no opinion at this

time.

         Based on its analysis of factors 2 and 3, the Court

does conclude that the Daily News photograph should be

precluded.   Unlike the Nuñez consent judgment, these

photographs specifically were not specifically mentioned in

plaintiff's complaint, although the complaint did generally

reference newspaper coverage of the events depicted in the

photographs.   And also, unlike the Nuñez consent judgment, the

Daily News photographs are not the defendants' own documents.

Plaintiff's failure to produce the photographs in discovery

deprived defendants of the opportunity to conduct their own

discovery regarding the photographs, specifically to

investigate the source of the photographs, whether they're

accurate depictions of the events at issue, and in particular,

whether or not the images had been edited, either with respect

to cropping or coloring, the Daily News may have edited them or

selected them in a way to present the most prurient version of

the incident.   It's also not clear to the Court that these

photographs are central to plaintiff's case.   Subject to any

objections from defendants, plaintiff can easily testify about

the events underlying the photographs without introducing the

J931mcc1

photographs themselves. I recognize that they dramatize the

incident, but they were also clearly available and could have

been produced earlier, in which case I would not have been

presented with this question.

Accordingly, the Court grants defendants' motion to

preclude plaintiff from introducing the Daily News

photographs -- that is, Plaintiff's Exhibits 20 and 21 -- but

denies defendants' motion to preclude plaintiff from

introducing the Nuñez consent judgment on this basis.

Now I'd like to turn to the defendants' motions *in

limine* regarding the plaintiff's medical records.

On August 29, defendants filed a letter with the Court

requesting that the Court: (1) preclude plaintiff from

testifying that he suffered a wrist injury as a result of the

incident in this case; (2) preclude plaintiff from testifying

that the number of radiological examinations that he received

is indicative of any injuries; and (3) require plaintiff to

redact any terms from his medical records that are beyond the

province of a lay jury.

With regard to plaintiff's second request, plaintiff

has represented to the Court that plaintiff will only testify

that such examinations were performed at the request of the

healthcare professionals who examined him after the incident.

The Court takes from plaintiff's representations that he does

not intend to testify that the number of examinations that he

J931mcc1

1    received is indicative of any injuries.  Therefore, defendants'

2    motion is denied as moot.

3         Now counsel for defendants, what's the legal basis for

4    your first request -- namely, that I review the medical

5    records, make a factual determination that his wrist was not

6    broken, and then deprive him of the opportunity to testify

7    about his injuries on that basis?  What's the legal basis for

8    that position, counsel?

9         MS. GOYKADOSH:  Maybe my letter was unclear again, or

10   maybe I'm just misunderstanding.  What we would like to be

11   precluded is plaintiff should not be allowed to testify about

12   the cortical step-off, as an expert is required to define that

13   term for the jury.  It's beyond the province of the jury.  So

14   while I understand that Mr. McCurdy might testify that his

15   wrist is broken, or was broken, using the term "cortical

16   step-off" is what we're asking to be precluded.

17        THE COURT:  I'm sorry.  Let me just take a brief

18   moment.

19        So to be clear, counsel, where in your letter you say,

20   "Defendants respectfully request that the Court: (1) preclude

21   plaintiff from testifying that he suffered a wrist injury as a

22   result of this incident," I should not read that to mean those

23   words?

24        MS. GOYKADOSH:  I'm sorry, your Honor.  On page 2 of

25   3, I wrote, "This evidence should be precluded for two

J931mcc1

1  reasons."  First, as the Court stated, the term "cortical

2  step-off" is beyond the province of the jury; and second, an

3  expert is required to explain what this injury is.  So I

4  believe that those words could have and should have been

5  clearer when I put them on the last page, but what I'm

6  referring to is what's on page 2.  So I apologize to the Court

7  for that lack of clarity.

8             THE COURT:  Thank you.

9             So you're not asking for me to preclude the plaintiff

10  from testifying that he suffered a wrist injury; instead, you

11  are asking that I redact or not permit the use of terms from

12  the records that are beyond the province of the jury, which is

13  the third request in your letter.  I understand that you're

14  saying that the first request in your letter means the same

15  thing as the third.

16             Good.  So let me hear from plaintiff on this.

17  Counsel, what is it that you are seeking to introduce?  The

18  focus here is, as I understand it, on Exhibit 14.

19             MR. LICHTMACHER:  Well, 15 and 8, your Honor, I think

20  we're talking about.  Really --

21             THE COURT:  I'm sorry.  I'm sorry.  Pardon me.  Pardon

22  me.  That's not the first time I've done that.  I'm referring

23  to Exhibit 19.  Pardon me.

24             MR. LICHTMACHER:  I think you were referring to

25  Exhibit 8, your Honor, from the 2/9/15 medical records.  2/9/15

J931mcc1

1    medical records.  I believe that's what you're referring to.

2              THE COURT:  No.  Exhibit 19, which are the medical

3    records related to --

4              MR. LICHTMACHER:  That's the 2014 incident, your

5    Honor.

6              THE COURT:  Thank you.  I'm sorry.

7              MR. LICHTMACHER:  That's okay.

8              No. 8 is the Elmhurst medical from 2/19/15.

9              THE COURT:  Thank you.

10             Good.  So what precisely is it from these records that

11   you seek to introduce?  I fear, reading the parties' exchange

12   of letters, that there are ships passing in the night with

13   respect to this issue.  What is it that you are seeking to

14   introduce from this set of records?

15             MR. LICHTMACHER:  Well, first of all, plaintiff, as I

16   indicated earlier, has no intention of testifying to any

17   medical terms.  I doubt he's read that or knows what it means.

18   So he intends to testify, if I understand correctly, that his

19   wrist was injured, period.  I mean, he doesn't intend to say

20   cortical step-off.

21             And secondly, he would like to testify -- and I raised

22   this in my last submission to the Court, which, again, was

23   late -- that he would like to testify -- I think that letter

24   was dated yesterday or the 1st.  I've been running around the

25   jail.  But anyway, I believe I indicated he'd like to say that

J931mcc1

```
1    it's his emotional state, when it's indicated to him that he
2    may have a fractured wrist, and that doesn't go to --
3                THE COURT:  Thank you.
4                For the record, we've just been joined by Officer
5    Mitchell.
6                Officer Mitchell, do not be late for an appearance in
7    my courtroom again.
8                MR. MITCHELL:  I apologize, your Honor.
9                THE COURT:  Thank you.
10               Please proceed.
11               MR. LICHTMACHER:  Number one, it goes to his medical
12   state.  Well, to be clear, he's not going to say "cortical
13   step-off," period.  He's not going to say that.  Neither am I,
14   okay?  So I will not say it either.
15               Number two, he wants to testify to the fact that the
16   doctors told him, "We think your wrist is broken."  He doesn't
17   receive enough future treatment and diagnosis at Rikers to
18   actually make a determination of that until it would be far too
19   late to see if it was chronic or acute.  Now that's not his
20   fault.
21               THE COURT:  Thank you.  Can I just pause you.  And I
22   appreciate this line of argument.  It's very helpful.
23               I understand what it is that the plaintiff expects to
24   say based on our conversation from the prior conference, and I
25   will say that I believe that the general guidance of the Court
```

1   was that the line of testimony that you've described and the

2   decision by Judge Matsumoto that you quoted in your most recent

3   letter is consistent with my comments -- namely, that the type

4   of testimony that you've described is within bounds.  I'm not

5   addressing what may be a hearsay statement on behalf of the

6   doctor or the issue that you raised in your letter yesterday.

7   This is why I was concerned about the ships passing in the

8   night.  That's because Exhibit 8 is one of the exhibits that

9   you have proposed to introduce.  It contains a lot of medical

10  terminology, and the defendants are concerned about the

11  prospect that this entire record would go before the jury

12  without any explanation or context.  So are you planning to put

13  in Exhibit 8?

14          MR. LICHTMACHER:  I am, your Honor.

15          THE COURT:  And if so, to what end?

16          MR. LICHTMACHER:  I would like to just submit it to

17  the jury.  It confirms that he was in fact brought to the

18  hospital, that they did look at him, they diagnosed certain

19  things, they tested different areas of his body.  An inmate

20  cannot say, Hey, I want to go to the hospital and I want you to

21  take x-rays of these parts of my body.  Can't do that.  He's

22  not allowed that freedom to do that.

23          So if you want me to redact the more technical terms

24  in it, that would be fine.  I have no objection to that.  But

25  they should see the record, they should see the substantial

J931mcc1

1   medical record that he had generated on the 19th, and the fact

2   that, you know, they are looking at different parts of his

3   body, and it's consistent with what he testified to at his

4   deposition, that he was injured in X, Y, and Z, and they're

5   looking at X, Y, and Z.  So that's all I really want to enter

6   it for.  If there are any necessary medical redactions for very

7   technical terms, I have no issue with that.

8           THE COURT:  Thank you.  Good.  That's very helpful.

9           So counsel for defendants, I understand that there is

10  functionally no debate regarding whether or not certain -- I'll

11  call it highly complex medical opinions or diagnoses that may

12  be confusing to the jury without the benefit of an expert to

13  testify as to their meaning is warranted; namely, defendants

14  have requested it and plaintiff has stated that plaintiff is

15  willing to make appropriate redactions.  Counsel, given that,

16  what's your response, counsel for defendants?

17          MS. GOYKADOSH:  Your Honor, to the extent that the

18  appropriate redactions are made, I believe that does solve the

19  issue of the medical terminology in submitting a document with

20  a lot of medical terms on it to the jury, so I think redacting

21  it would solve that issue.

22          THE COURT:  Good.  Thank you.

23          So counsel, I'm going to direct you to spend some time

24  proposing appropriate redactions and working through them with

25  respect to this document.

J931mcc1

1          Let me just say a couple of words generally.  The

2     parties have agreed on redactions to this document.  I will let

3     you work together to find them.  The underlying concern that

4     motivates defendants' comment, I will note, goes in both

5     directions.  There is a legitimate concern that the use of --

6     I'll call it complex medical diagnoses without the benefit of a

7     medical expert will confuse the jury.  That's the motivating

8     impulse that underlies defendants' request and as to which

9     plaintiff has just consented.  Again, I just note that this is

10    a concern that goes in both directions.  In other words,

11    defendants should not expect to point to a complicated medical

12    term and say:  "This means that you do not have a fracture,

13    does it?" if the terminology or statement is similarly complex.

14    So the redactions that we will be implementing here with

15    respect to these issues will work in both directions, to be

16    very clear.  Fundamentally, the issue that we're presented with

17    is the consequences of both parties', frankly, unexplained and

18    to me somewhat inexplicable decision not to call a medical

19    expert in connection with a case that involves complicated

20    medical issues and proof.  The work-around here behind that

21    failure is the issue that generates this concern.

22          So counsel, please do work to identify the redactions

23    that you believe are appropriate here.  You should present them

24    to the Court promptly.  I expect that they'll be presented to

25    the Court no later than -- let's call it 7 p.m. today.  I hope

J931mcc1

1   and expect that the records will not be at issue during the

2   course of today's trial day.

3           MR. LICHTMACHER:  Your Honor, when you say presented

4   to the Court, would you like us to email it?  Because I don't

5   think these medical records should go on the ECF, correct?

6           THE COURT:  Yes, that would be fine.  You can email it

7   to me.  I would appreciate that.  I note that every document

8   that's presented to the jury in the trial is presumptively a

9   matter of public record.  That said, it does not go up on the

10  docket, but a document that goes into evidence at a public

11  trial becomes a matter of public record, and presumptively the

12  public is entitled to access it.

13          Good.  So counsel, I will defer adjudication of that

14  issue, understanding that the parties have substantively agreed

15  to appropriate redactions consistent with the defendants'

16  suggestion.

17          I'm not yet taking up the additional suggestion by

18  counsel for plaintiff that plaintiff be permitted to comment

19  regarding statements made to him by medical professionals

20  during his stay.  After I've gone through the rest of the

21  issues in my agenda, I will invite comment from defendants on

22  that issue.

23          MS. GOYKADOSH:  Your Honor?

24          THE COURT:  Yes, counsel.

25          MS. GOYKADOSH:  Will you be ruling on the issue of

J931mcc1

whether or not plaintiff can suggest or argue to the jury that

the number of radiological exams is somehow indicative of any

injury?

          THE COURT:  Thank you.  I've already commented on

that.  What I said was the following:  "With regard to

defendants' second request, plaintiff has represented to the

Court that plaintiff will only testify that such examinations

were performed at the request of the healthcare professionals

who examined him after the incident.  The Court takes from

plaintiff's representations that he does not intend to testify

that the number of examinations he receives is indicative of

any injuries.  Therefore, defendants' motion is denied as

moot."

          MS. GOYKADOSH:  Thank you, your Honor.

          THE COURT:  Thank you.

          Good.  So let's talk about the plaintiff's motion *in*

*limine* to preclude the defendants from referencing plaintiff's

current pending charges.  First, is there any additional

argument on this?  Mr. Lichtmacher submitted supplemental

briefing on this point.  Counsel for defendants?

          MS. GOYKADOSH:  If your Honor is referring to

Mr. Lichtmacher's briefing at docket entry 125, we submitted a

letter at docket entry 131, and that states our position.  If

there's any specific issue that the Court would like me to

argue on, I'm happy to do so.

J931mcc1

1          THE COURT:  Thank you.  Counsel, you can do that, or

2     you can just tell me what your position is.  Would you like for

3     me to peck through the docket, find the documents, reread them,

4     or --

5          MS. GOYKADOSH:  I apologize, your Honor.

6          So our position is as follows:  What plaintiff argued

7     in his supplemental motion is Rule 608.  There were references

8     to Rule 403 and Rule 404; however, that was not argued.

9          Under Rule 608, the Court can allow cross-examination

10    and allow extrinsic evidence to be inquired into if it is

11    probative of the character for truthfulness or untruthfulness

12    of a witness.  In this case, the charges that we're talking

13    about, they include attempting to escape and also -- I

14    apologize.  One moment, please.  -- and also assault in the

15    second degree of a peace officer.  So of the many charges,

16    those are charges that are included.

17         Both of these crimes, even though they are pending

18    charges, they can be allowed for impeachment on two occasions.

19    First, if plaintiff testifies that he has not been arrested for

20    these charges, that would be proper impeachment materials to

21    ask about it.

22         The second one is whether those go to his credibility,

23    these two charges.  They are not convictions.  However, one

24    court in the Eastern District has ruled that convictions for

25    these two charges do go to credibility, escape and -- I'm

J931mcc1

1  sorry.  The Court ruled that a conviction for escape does go to

2  credibility.

3          THE COURT:  Thank you.

4          So why should a charge come in, without a conviction?

5          MS. GOYKADOSH:  It doesn't reach the same level as a

6  conviction, and I don't believe that under the federal rules it

7  has the same 609 analysis.  However, I think that it might go

8  to his credibility.  To the extent that testimony comes up

9  about him never resisting, never trying to escape from prison,

10 the fact of these charges might be something that implicates

11 plaintiff's credibility.

12         THE COURT:  Thank you.

13         MR. LICHTMACHER:  Your Honor --

14         THE COURT:  I don't need your argument on this.  Thank

15 you.

16         So in a motion that was filed on August 29, 2019,

17 plaintiff asked the Court to preclude defendants from

18 referencing plaintiff's current pending charges at trial.  In

19 response to plaintiff's motion, in the document that I've read,

20 together with all other documents that have been filed on the

21 docket today, defendants argue that such questioning may be

22 probative for impeachment purposes, depending on plaintiff's

23 testimony, and would be permissible under Federal Rule of

24 Evidence 608(b).

25         The Court's reasoning with regard to plaintiff's third

J931mcc1

1   motion *in limine* regarding evidence of prior arrests applies

2   with equal force to this motion.  If plaintiff testifies in a

3   way that makes this evidence valuable for impeachment

4   purposes -- namely, if he says that he was never arrested for

5   such an offense or something similar -- defendants should

6   request leave from the Court to inquire regarding plaintiff's

7   current pending charges.  Otherwise, the Court grants

8   plaintiff's motion because it sees no justification for the

9   defendants to affirmatively put forth evidence of pending

10  charges against the plaintiff.  The mere fact that charges are

11  pending against plaintiff is not proof that plaintiff committed

12  such conduct, and the fact of a charge without a conviction has

13  very little probative value, whereas the prejudicial effect of

14  an unsupported charge without a conviction is very substantial.

15  As a result, it may not be put before the jury.

16          With respect to the plaintiff's request that I order

17  summations and jury charges in the way that he described as the

18  "Colorado method," I've considered plaintiff's counsel's

19  request that I charge the jury before counsel's summations.

20  I'm going to deny that request.  As the parties know, I have

21  already sent you a draft of the charges.  You can rest assured

22  that I will hold a charging conference early enough during the

23  trial so that both parties will be fully apprised of the law on

24  which I will instruct the jury in advance of summations, so the

25  expressed reason for charging the jury prior to summations is I

J931mcc1

1    believe adequately addressed by that fact.

2              I also believe that there's benefit to having the

3    Court have the opportunity to address the jury following the

4    arguments, and in the hopefully unlikely event that counsel

5    oversteps the bounds of proper closing arguments or improperly

6    misstate the law, I would have the opportunity to take that up

7    as part of the charges.

8              Now, counsel, with respect to demonstrative exhibits,

9    the Court directed the parties to raise any issues regarding

10   the defendants' proposed demonstrative exhibits in your letter,

11   which was submitted on August 29th.  The parties did not raise

12   any such issues with the Court.  As a result, I understand that

13   you've resolved the issue amongst yourselves and that

14   defendants are still proposing to introduce or to show the jury

15   the proposed demonstrative exhibits without objection.  Is that

16   correct?

17             MR. LICHTMACHER:  My understanding is that the

18   defendants want to enter them as exhibits, you know, which is

19   somewhat distinguishable from what I've called a demonstrative

20   exhibit, but if there's a foundation laid and they seek to

21   enter them, I can't imagine, with the proper foundation, I'd

22   object to them.  I want to hear what their foundation is when

23   they seek to do so.

24             THE COURT:  Thank you.

25             Counsel for defendants?

J931mcc1

1            MR. SIDDIQI:  Your Honor, our position is that these

2    are not exhibits, they're demonstratives.  They'll be used to

3    illustrate testimony that will be given by Officer Mitchell and

4    Captain Bell during the course of their testimony and shown to

5    the jury, with the Court's permission.

6            (Continued on next page)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

J93QMCC2

1        THE COURT:  Thank you.  They will still lay an

2   appropriate foundation for the images, I expect, in the course

3   of that testimony.  Is that fair?

4        MR. SIDDIQI:  Yes, of course, your Honor.

5        THE COURT:  Good.  I expect that I will permit the use

6   of the demonstratives as described.  I would ask that you

7   present copies of them to the Court.  I understand that counsel

8   for plaintiff already has them.

9        Just a few comments.  As I noted earlier, I've already

10  sent the proposed charges for the individual liability phase of

11  the case to you.  They were emailed to the parties on Saturday.

12  Counsel for plaintiff, I don't understand that you confirmed

13  that you received the charges.  Can I ask that you confirm that

14  you received the draft?

15       MR. LICHTMACHER:  I received it, your Honor.

16       THE COURT:  Good.  Thank you.

17       So, Counsel, Please be prepared for a charging

18  conference to be held at the earliest convenient time.  I

19  understand that evidence may be relatively short in the

20  earliest stage of this case, and it, therefore, I think would

21  be beneficial for us to be in a position to charge the jury

22  promptly following submission of the evidence.  So, Counsel, we

23  may want to take up the charges as early as today, maybe at the

24  close of business tomorrow.

25       MR. LICHTMACHER:  Your Honor, if I may.

J93QMCC2

```
1              THE COURT:  Yes.
2              MR. LICHTMACHER:  I do not have a copy with me, so if
3    we're going to do that today, could I be provided with another
4    copy?
5              THE COURT:  Absolutely.
6              MR. LICHTMACHER:  Sorry about that, your Honor.
7              THE COURT:  It's no problem.  Good.  Just a note on
8    punitive damages.  You will see, I do include punitive damages
9    in the proposed charge as part of the jury's instructions for
10   the individual liability phase of the trial.  Subject to my
11   decision on defendant's objections to the charge, I expect that
12   any such charge would be presented to the jury at the end of
13   the individual liability phase of the trial.  I've already made
14   a variety of rulings regarding the evidence admissible during
15   the individual liability phase of the trial, and counsel should
16   govern themselves according to those rulings.
17             Give me one moment, please, if you would, Counsel.
18             (Pause)
19             THE COURT:  Good.  So that completes my agenda.
20             Counsel, anything else that you'd like to raise apart
21   from the described issue raised by counsel yesterday and then
22   this morning, both with respect to comments made by medical
23   practitioners to Mr. McCurdy while he was at the facility and
24   then also the request for the Court to take judicial notice of
25   the nature of certain charges.
```

J93QMCC2

1          Yes, Counsel?

2          MR. LICHTMACHER:  The charges were 120.08.

3          THE COURT:  Thank you.

4          MR. LICHTMACHER:  This is somewhat embarrassing, but

5    I'm on a lot of blood pressure medicine.  I do need occasional

6    nature breaks, if it please the Court.  I don't know, some

7    judges like to go straight through in the morning without

8    breaks.  It would be difficult for me.

9          THE COURT:  Thank you.  Let me just say a few words.

10   Please don't hesitate to let me know.  I'd be happy to take a

11   break at any time to accommodate you.  So please don't worry

12   about that at all.  It would certainly be my preference to go

13   through, but I also have absolutely no problem stopping, and

14   you should not hesitate to let me know if you need a break.

15   Just let me know either through my clerk or my intern or my

16   deputy for the trial.  If I don't see you, please feel free to

17   make a signal that one of them will perceive.

18         MR. LICHTMACHER:  I do appreciate that, your Honor.

19         THE COURT:  It's not a problem at all.  Please do not

20   hesitate.  Health comes first.  It prompts me to say one brief

21   word about something that I do that is a little bit unusual.  I

22   sometimes stand up during the trial.  I do not stay seated

23   throughout the entire course of the trial.  I will sometimes

24   stand over here.  I don't move around a lot.  I try to be as

25   discrete as possible, but I just don't like to sit all day if I

 1    have the choice.  I can't give you that option, but you will

 2    see that I do give the jurors that option and invite them to

 3    stand if they like during the course of the trial so long as

 4    they are not being disruptive and so long as their fellow

 5    jurors can see the witness.

 6            So I just wanted to make that note of something that I

 7    do so that you're not surprised, and you should not be

 8    surprised that I'll give that instruction to the jurors as

 9    well.  I think it's helpful for them both to stay awake and

10    also good for their health.

11            Good.  Anything else that we should take up before I

12    turn to those other issues?

13            Yes, Mr. Siddiqi.

14            MR. SIDDIQI:  Your Honor, I have a very quick

15    procedural question.

16            THE COURT:  Please.

17            MR. SIDDIQI:  Because plaintiff is calling the

18    defendants as part of his case in chief, I'm just wondering

19    what is your preference or your rule in terms of the room that

20    we have to ask leading questions of those witnesses when it's

21    our turn to do the questioning.

22            THE COURT:  Thank you.  You may not lead.  They are

23    still your witnesses.

24            MR. SIDDIQI:  OK.  Thank you, your Honor.

25            THE COURT:  Good.  Counsel, anything else?

J93QMCC2

1              MR. LICHTMACHER:  Nothing further from the plaintiff.

2              THE COURT:  Good.  Thank you.

3              I should say -- I should moderate my comment.  As you

4     know, there are always circumstances in which it's appropriate

5     to lead a witness, but you should expect that I will treat your

6     examination of your witness in the same way as if you had

7     called them for direct examination.  So I will permit some

8     leading under the circumstances where I believe it's

9     appropriate where it will help us solicit information in an

10    efficient way or to set the scene, but you should not treat

11    them as if they were a hostile or adverse witness, just to

12    clarify my rulings.

13             MR. SIDDIQI:  Just a very quick question, your Honor.

14             Would it be fair to assume that if I am asking

15    questions in an area that has already explored by

16    Mr. Lichtmacher, that I could lead within that area?

17             THE COURT:  No.

18             MR. SIDDIQI:  Thank you, your Honor.

19             THE COURT:  Thank you.  Good.

20             So let's take up each of the issues that have been

21    raised by counsel for plaintiff more recently.

22             First is the request from his letter from yesterday

23    that the plaintiff be permitted to testify regarding statements

24    made to him by medical practitioners at the facility following

25    the incident.

1            Counsel for defendants, what's your position on that

2     request?

3            MS. GOYKADOSH:  That should be precluded, your Honor.

4     It's hearsay.  I don't believe that plaintiff's counsel

5     provided any legal basis for why he should be allowed to do so.

6     I know that there is a cite to the *Bermudez* case in

7     Mr. Lichtmacher's letter.  However, I'm very familiar with that

8     case, and there is nothing in that case that says that a

9     plaintiff can testify as to a doctor's diagnosis, so I do not

10    believe that plaintiff should be permitted to do so.

11           MR. LICHTMACHER:  *Bermudez* -- if I may, your Honor,

12    *Bermudez* was not cited in that letter for that purpose.  It was

13    cited about the admissibility of certain records.  The reason

14    for plaintiff to testify about what doctors told him is his

15    emotional harms directly after the incident from being led to

16    believe that -- and he still doesn't know -- he might have had

17    two fractured areas:  The one in his skull and the other one in

18    his wrist.

19           So that is -- now, of course, I could not object to a

20    curative instruction that he's not a medical expert, and it was

21    not, you know, followed up or confirmed.  You know, that I

22    can't object to.  But, on the other hand, his mental state as

23    to what he thought after he got beat up is very much at play

24    and very much part of his damages.

25           THE COURT:  Thank you.  So counsel for defendants, can

J93QMCC2

1    you respond to that, and let me just frame this somewhat

2    differently in order to elicit a specific response from you.

3    As I understand it, plaintiff is proposing to testify, in

4    essence, that Dr. Doe told him that his arm was broken,

5    speaking broadly.  I understand the hearsay concern regarding

6    that statement, the substance of it; namely, that it could be

7    read to be a statement by a person who is not here regarding

8    the truth of the matter; namely, that his arm was broken.

9            Counsel for plaintiff is asserting that he wants to

10   put in evidence that the plaintiff's understanding that his arm

11   was broken is something that goes to his so-called emotional

12   damages or his emotional distress associated with the incident.

13           What's your view given that understanding of the

14   purpose for which the statement is presented?

15           MS. GOYKADOSH:  I mean, your Honor, I think it's still

16   a way to circumvent this hearsay rule.  What I understand is

17   similar to what your Honor said, he's saying "Dr. Doe told me

18   my arm was broken, therefore, this somehow intensified or

19   amplified my emotional injuries."

20           I am not really sure I'm seeing the correlation

21   between those two things there.  He can testify that he went to

22   the hospital.  He will testify that he received x-rays.  But

23   then the statements from the doctors and how those play with

24   his emotional injuries is not clear to me.

25           And I also just note that if he is going to say the

J93QMCC2

1    doctors told him X or the doctors told him Y, then we will

2    necessarily be impeaching him with his own medical records

3    which do say for the most part no fracture, no fracture, no

4    fracture.

5              So, again, I don't think that a statement by the

6    doctor necessarily plays with plaintiff's emotional injuries.

7    I think it's just a way to circumvent the hearsay rule.

8              THE COURT:  Thank you.

9              So, Counsel, let me ask counsel for defendants to

10   respond to this.  I understand that plaintiff wants to put in

11   this statement to go to the plaintiff's emotional state, and I

12   accept that his understanding of his physical state could

13   affect his psychological response to the situation.  If he

14   understood that his arm was broken, he might have been more

15   anxious or scared, for example.  So I understand at the same

16   time the concern that it will be very difficult for me to

17   unravel the improper use of the statement as improper hearsay

18   testimony regarding the substance of the statement from the

19   proposed testimony.

20             So, Counsel, I'm considering a ruling in which I would

21   exclude the testimony.  I understand that the proposed

22   statement by the plaintiff that a doctor told him X about his

23   physical condition is a hearsay statement to the extent that it

24   is offered in evidence to prove the truth of the matter

25   asserted in the statement.  And in this case that is a very

J93QMCC2

1     important fact for the case.

2            I also understand that there could be a non-hearsay

3     purpose for this statement, which is what plaintiff is arguing;

4     namely, that it goes to explain the mental state of the hearer,

5     his emotional distress.  So I evaluate this under the rubric of

6     Rule 403.

7            Unfortunately, I do not believe that I can adequately

8     disentangle the two in this case bringing in a statement that

9     the doctor said that he had, for example, a fractured arm.  I

10    believe it would be very difficult for me to instruct the jury

11    not to hear that for the truth of the matter.  But I'd invite,

12    Counsel, comments from you regarding whether an instruction

13    will be effective to do so, or if instead I could instruct the

14    plaintiff not to provide that testimony but instead to testify

15    to the effect that he understood following his visit at the

16    hospital that his arm was broken without attributing a

17    particular statement to a particular doctor to avoid the, I'll

18    call it, juror confusion that the statement should be taken for

19    the truth of the matter asserted by the doctor.

20           So, Counsel, let me hear from each of you about your

21    views on each of those proposed alternatives.

22           Counsel for defendants?

23           MS. GOYKADOSH:  I believe your Honor's second

24    alternative would be fine, just allowing plaintiff to testify,

25    as your Honor said, that he understood his arm to be broken

J93QMCC2

1    without attributing that to any of the doctors.

2              THE COURT:  Thank you.

3              What's your view regarding the effectiveness of a,

4    I'll call it, limiting instruction; namely, that to the effect

5    that the testimony by plaintiff regarding statements made to

6    him by the doctor not to be taken for the truth of the matter

7    asserted, merely to help you understand his state of mind at

8    the time?

9              MS. GOYKADOSH:  I think I agree with your Honor that

10   that would be very confusing for the jury.  I don't think a lay

11   jury is going to understand what hearsay is or what it means to

12   take something for the truth of the matter, so I think it might

13   be more effective if the jury was just not offered that

14   testimony, and then we would side-step the need for a limiting

15   instruction.

16             THE COURT:  Thank you.

17             Counsel for plaintiff, what's your view?

18             MR. LICHTMACHER:  I think it's the wrist, not the arm,

19   but I've got to look at it again to make sure I'm correct about

20   that.  Nevertheless, if he is able to say that he understood

21   after his visit to the hospital that his wrist may be broken, I

22   think that would be adequate.

23             THE COURT:  Thank you.

24             MR. LICHTMACHER:  Because the truth of the matter

25   is -- and, if I may, the truth of the matter is, you know, if

1    he had had extensive follow-up as he should have had, we

2    probably would have had an ultimate determination whether it

3    happened or not.  And you can't bring a denial of medical care

4    claim for a problem that may have been there or may not have

5    been there unless they caused an exacerbation of it.  So you're

6    effectively -- if we rule too stringently that he can't talk

7    about this, you're leaving the department of corrections in a

8    position where they could deny a lot of people medical

9    treatment, and then they would necessarily have to minimize

10   their own injuries if they should go to trial over what

11   happened to them.  So that's kind of a dangerous door to open

12   up.  So he should be able to at least say he left the hospital,

13   and after leaving the hospital he was under the impression that

14   there's a substantial chance that his wrist was broken.

15           THE COURT:  Thank you.

16           MS. GOYKADOSH:  Your Honor, just may I briefly

17   respond?  Very briefly.

18           THE COURT:  Thank you.  Yes, you may.

19           MS. GOYKADOSH:  Two things:  The first is to the

20   extent that plaintiff does testify that he understood his wrist

21   to be broken, we just want to clarify that we will be allowed

22   to impeach Mr. McCurdy with any medical records that might

23   indicate that there were no fractures.  Is that correct, your

24   Honor?

25           THE COURT:  No.  For the reason that you articulated

J93QMCC2

1    in your motion in limine; namely, that the medical records at

2    issue contain complicated medical terminology that are beyond

3    the ken of a lay juror.  Again, why the parties, particularly

4    defendants, chose not to identify experts to testify as to

5    these matters is something that is a strategic decision that I

6    do not know the basis of, but that's what I was referring to

7    when I said that unfortunately your concern goes both ways.

8    There is no one here who can testify about what any of these

9    medical records means.

10         MS. GOYKADOSH:  I understand, but just to ask for

11   clarification, your Honor, I'm sorry.  For the cortical

12   step-off, I do understand that that term is not a term that the

13   jury can hear.  However, there are other records, for instance,

14   for the hand, for the shoulder, that do say simply "no

15   fracture," and I think the jury can understand that.  So if he

16   says, "My arm is broken," I just want to be sure I can show him

17   the record that says no fracture.

18         THE COURT:  Thank you.  I would hear any objection

19   with respect to that, but I think that falls on the other side

20   of the line; namely, a relative simple diagnosis that a lay

21   person can understand.

22         MS. GOYKADOSH:  Thank you, your Honor.

23         THE COURT:  Good.  Thank you very much.

24         Counsel for plaintiff, we will proceed with that

25   approach.  Please instruct your client that the testimony

J93QMCC2

should be consistent with the approach that you just

articulated; namely, in essence, that following his visit to

the hospital that he understood that ... whatever it is that he

understood about his physical condition without asserting the

nature of the statement made by the medical practitioner.

I believe that that is a useful proposed solution that

addresses the concerns articulated by both sides, and I adopt

it and I appreciate the parties' willingness to stipulate to

proceed in that way.

So, counsel for defendants, are you prepared to

comment on the request that I take judicial notice of the

nature of the offense for assaulting a corrections officer?  I

believe there are two aspects of this:  First, the baseline

request, a name that I take judicial notice of a particular

state statute.  And, second, what I understand to be the

proposed use of that judicially acknowledged fact, which I

understood from plaintiff's comments to have been to permitted

argument that the absence of a charge should be viewed by the

jury as proof that the incident did not occur.

Counsel?

MS. GOYKADOSH:  Yes, your Honor.  Plaintiff should not

be permitted to either talk about the fact that assault on a

peace officer is a felony or introduce that to the jury.  The

Court should not take judicial notice of that.

I think the exact words your Honor used at the

J93QMCC2

1   beginning of this conference were what plaintiff is trying to

2   imply that non-prosecution means non-occurrence of the fact, I

3   don't think that's the case.  I think this links out to the

4   fact that the charges against plaintiff himself are not being

5   admitted in this case.

6          If an arrest charge is not admitted, quite certainly

7   the fact that someone could have been arrested for something

8   should not be admitted.  I think there's two concerns.  I think

9   there's a Rule 402 concern and a Rule 403 concern.  Under Rule

10  402, it's not relevant whether or not plaintiff was arrested

11  for the conduct at issue.  It simply has no bearing on whether

12  or not any force used was excessive.  That's the issue in this

13  case.  That's what the jury has to decide.  So, number one is

14  that it's not relevant.

15         Number two is Rule 403, and I think that it will be

16  extremely misleading and confusing to the jury to insinuate to

17  them that because someone was not arrested for a particular

18  offense, that somehow means that the offense did not occur.

19  That's my understanding of what plaintiff's counsel would like

20  to do, and I think that it misleads the jury, it confuses the

21  jury, and it should not be permitted

22         THE COURT:  Thank you.

23         Counsel for plaintiff?

24         MR. LICHTMACHER:  It's not even close to what I want

25  to do, your Honor.

1          THE COURT:  Thank you.  Please.

2          MR. LICHTMACHER:  I had hoped that this would just

3     come in without me giving up part of my strategy, but obviously

4     if the Court is inclined to preclude this, I will explain my

5     reasoning.  If the Court is not inclined to preclude it, I

6     would not, and would save it for trial.

7          THE COURT:  I would benefit from a proffer in order to

8     evaluate the application.

9          MR. LICHTMACHER:  I will not benefit by it, but I will

10     give it.

11          There's been testimony that there was no investigation

12     into this incident.  Now, if the DA is contacted, there would

13     be an investigation into this incident.  And if there's an

14     investigation into this incident, certain things might come to

15     light.  For instance, extensive disciplinary history of one of

16     the defendants, overwhelming disciplinary history for the use

17     of excessive force and ignoring it by people around her.  That

18     kind of information would have come out.  Additional people

19     would have been interviewed if there was a DA's investigation.

20          Now, Officer Mitchell had been involved with the

21     prosecution of an inmate from trial, and I'm sure -- from jail,

22     excuse me.  I'm sure they'll be able to tell you that there was

23     cooperation necessary with the DA, and it's one thing to maybe

24     be less than totally forthright internally with the department

25     of corrections, but it's quite another thing to not be

J93QMCC2

forthright with a district attorney coming in to do an

investigation.  That was the purpose for which I wish to admit

this, your Honor.

    The jury can be told that they are not to infer

anything by the fact that Mr. McCurdy was not prosecuted for

allegedly punching a corrections officer, a peace officer,

would be deemed under the law.  However, where there is another

motivation, I think the probative value far outweighs the

prejudice to the defendants by this coming in, particularly in

light of the fact that we will never say, hey, this shows that

it never happened.  I will not say that.  I'm not intending to.

You know, if Mr. McCurdy does, I would be shocked, but I will

try to inform him not to do that.  However, for the reason I

just stated, there is substantial reason behind letting this in

and allowing me to explore it.

    THE COURT:  Thank you.

    Can I ask counsel about what I will describe as the

inference that you just suggested might be drawn from this

evidence?  You've just described a number of possible

consequences of a referral to the DA's office which correlates,

as I understand it, in your view, to lack of evidence, I'll

call it, recordkeeping in connection with the incident.

    How would all of those facts come before the jury in

order to draw the picture that you're describing?  Those are

things that may be known to you from your lengthy practice, but

J93QMCC2

1    there is no witness on our list that, as I understand it, is

2    prepared to speak to what happens in a district attorney's

3    office examination, @investigation or what I'll call it as an

4    expert matter what would have or would have happened in their

5    opinion in the event that such a reference had been made here.

6             So, I understand the inference that you suggest, but

7    it's not apparent to me what the factual basis would be for the

8    jury to draw it based on the evidence that is outlined in the

9    joint pretrial order.

10            MR. LICHTMACHER:  Well, the witnesses who we have can

11   be questioned about whether they've ever been involved with

12   district attorney investigations into events that transpired in

13   the prison.  @It can be inquired into them.  They have to cite

14   supporting depositions for criminal documents under penalty of

15   perjury.  I believe it's a misdemeanor to lie in a supporting

16   deposition.  So that I think is enough, you know, and Officer

17   Mitchell at least has been involved in such prosecution, I

18   believe, for a drug arrest in a prison.  So I should be able to

19   ask:  Did you have to sign a supporting deposition?  Did you

20   understand it was under penalty of perjury?  There is no

21   analogous document within a DOC investigation which he actually

22   testified didn't take place other than generating a use of

23   force report after the incident.

24            So those are the reasons I'd like to do it and that's

25   the evidence I'd like to present.  It would have been easier if

J93QMCC2

1    I didn't have to explain to the defendants, your Honor, but

2    nevertheless, I don't think the prejudice outweighs the

3    probative value of that, and the jury should be able to look at

4    this and say, hey, maybe this guy was unable -- both of these

5    people were unable unwilling to lie to a DA and invite

6    investigation into what was happening at the prison when no one

7    was looking into it barely at all internally.

8           So it seems to me to be a very legitimate course of

9    inquiry, and that's the entire purpose of it.  Not to say the

10   fact that he wasn't prosecuted means it didn't happen.  Just to

11   say that they didn't want to be looked at and have to generate

12   documents under penalty of perjury and that's all.  And I will

13   completely avoid saying, hey, this proves it didn't happen,

14   they didn't prosecute it.

15          THE COURT:  Thank you.  Counsel, let me do this:  I

16   understand a panel is ready to come up.  I'm asking that they

17   be directed to come up.

18          Counsel, I will hear further argument on this and will

19   rule on it.  I'd like to use the jury's time and want to allow

20   the parties and their counsel to stretch their legs before the

21   venire arrives.  They will be hear in about five minutes, I

22   expect.

23          So, Counsel, at this point I will tell you that I will

24   take up this issue with later argument, but I'd like to bring

25   up the jury now.  I'd ask that you not reference this theory or

J93QMCC2

1  argument during opening arguments as a provisional approach to

2  this issue at this time.

3         Good.  So I'll see you back here very shortly,

4  Counsel.  I don't want to leave the jury waiting.  So, please,

5  if you need to stretch your legs, do so quickly and then come

6  back to counsel's table.

7         I'm going to step down briefly as we await their

8  arrival.  Good.

9         MR. LICHTMACHER:  One more thing, your Honor.  Would

10 you like me to try calling the jail again?

11        THE COURT:  Thank you.  I will ask someone from my

12 staff to reach out to the jail during this break.  If you have

13 the opportunity to do so as well, that can only, I expect, be

14 beneficial to hear from multiple people.  But I will ask

15 somebody from my staff to reach out to them.

16        MR. LICHTMACHER:  I'm now on a first-name basis with

17 them, your Honor, I've called so many times, but I will try

18 again.

19        THE COURT:  Good.  So I will see you back here very

20 shortly.  Don't forget, Counsel, with respect to the practice,

21 we will be using the struck panel method.  Each side gets three

22 peremptory challenges which you will exercise simultaneously.

23 We will be putting 14 in the box.

24        MR. LICHTMACHER:  Simultaneously, your Honor?

25        THE COURT:  Yes, that's what I described earlier and

J93QMCC2

1    it's what's included in the written paper that I gave you at

2    the final pretrial conference.  I will aim for a jury of eight,

3    although as that paper suggests, I reserve my discretion

4    whether to impanel a larger jury if any peremptories overlap or

5    are waived.

6            Good.  Let's take a short break.  Please come back

7    after you are finished with the process of stretching your

8    legs.  Thank you.  I'll be back shortly.

9            (Recess)

10           MS. GOYKADOSH:  Your Honor, I have the demonstratives

11   and I have them marked.

12           THE COURT:  Wait for Mr. Lichtmacher to return.

13           MS. GOYKADOSH:  OK.

14           (Jury venire present)

15          (Continued on next page)

16

17

18

19

20

21

22

23

24

25

J93Qmcc2

```
1              (A jury of 8 was impaneled and sworn)

2              THE COURT:  Mr. Lee, bring in the jury.

3              (Jury present)

4              THE COURT:  Thank you, Counsel.  You can be seated.

5         Thank you very much, members of the jury.  This case

6    is now officially on trial.  I would like to say a few words to

7    you all about the process that we will be using as we go

8    through the trial and to describe some rules that will govern

9    your conduct -- yours and mine and the parties throughout the

10   course of the case.

11             So, first, to begin with, you are all here to

12   administer justice in this case according to the law and to the

13   evidence.  You are to perform that task with complete fairness

14   and impartiality and without bias, prejudice or sympathy for or

15   against the plaintiff or the defendants.

16             Now, I'd like to explain the jobs that we're going to

17   be doing throughout the course of the trial -- your job and my

18   job.

19             I'm going to describe and decide which rules of law

20   apply to the case.  I'm going to decide that by making legal

21   rulings during the presentation of the evidence, and also, as

22   I've told you, in giving the final instructions to you after

23   all of the evidence has been presented.

24             So, in order for me to do my job, I may have to

25   interrupt the proceedings from time to time to confer with the
```

J93Qmcc2

attorneys about the rules of law that should apply here.  And
as I mentioned earlier, sometimes we will do that up here out
of your hearing.  Some of these conferences may take more time
than others.  So as a convenience to you where I believe that
may be the case, I expect that I will excuse you from the
courtroom so that you can spend that time in the jury room.
I'm going to try to avoid that kind of interruption as much as
possible, but if they do occur, please be as patient as you
can.  They're important in order to ensure the fairness of the
trial, and they often have the effect of having the trial
proceed faster.

          Now, while I will decide the law that applies to the
case, it is you, ladies and gentlemen of the jury, who are
going to be the deciders of, the triers of, the facts in this
case.  It is you who will weigh the evidence that's presented
by the parties in the case and decide whether the plaintiff has
proven by a preponderance of the evidence that the defendants
are liable to the plaintiff.  You must pay close attention to
all of the evidence that comes into the trial, and you must
base your decision solely upon the basis of the evidence that
is introduced during the course of the trial and my
instructions regarding the law.  So I say that you have to make
your decisions based on the evidence.  What then is evidence?

          Evidence consists only of the testimony of witnesses,
documents and other things that are admitted into evidence or

J93Qmcc2

any facts that the parties agree to or stipulate to or that I

may instruct you to find.  Now some of you may have heard the

terms circumstantial evidence or direct evidence, so let me

just say a few words about each of those types of evidence.

        Direct evidence is direct proof of a fact such as the

testimony of an eye witness.  Circumstantial evidence, on the

other hand, is proof of facts from which you may infer or

conclude that some other facts exist.  Now, the words "to

infer" or the term "to draw an inference" means to find that

one fact exists from proof of another fact.  An inference is

only to be drawn if it is logical and reasonable to do so and

not by speculation or guesswork.

        Now, in deciding whether to draw an inference, you

must look at and consider all of the facts in light of reason,

common sense, and your experience.  Whether a given inference

is or is not to be drawn is entirely a matter for you, the

jury, to decide.  Circumstantial evidence does not necessarily

prove less than direct evidence, nor does it necessarily prove

more.

        So, let me give you an example to help you think about

the difference between direct and circumstantial evidence.

Assume that when you came into the courthouse this morning, the

sun was shining, and it was a nice day outdoors.  Also assume

that the courtroom blinds, as they are now, were drawn, and you

could not look outside.  Assume further that as you're sitting

J93Qmcc2

here, somebody walks in the courtroom with an umbrella that was

dripping wet, and then a few moments later someone else walks

in with a raincoat that was also dripping wet.

Now, because you could not look outside of the

courtroom and could not see whether it was raining, you would

have no direct evidence of the fact that it was raining.  But,

on the combination of the facts that I've asked you to assume;

that is, the wet umbrella and the wet raincoat, it would be

logical and reasonable for you to conclude that it was raining.

That's all there is to circumstantial evidence.  You infer on

the basis of your reason, experience and common sense from one

established fact the existence or non-existence of some other

fact.

Now I will give you more instructions on this as well

as other matters at the end of trial, but keep in mind that you

are to consider all of the evidence that's introduced at trial.

Now, certain things, however, are not evidence and must not be

considered by you.

The following is a list of things that are not

evidence:  First, statements and questions by the lawyers are

not evidence, neither are any statements that I may make or any

questions that I may ask of a witness, and arguments by the

parties are not evidence.

Second, objections to evidence or objections to

questions are not evidence.  You should know the lawyers have

1   an obligation to make an objection when they believe that

2   evidence is being introduced that is improper under the rules

3   of evidence.  You should not be influenced by an objection or

4   by my rulings on them.  If an objection is sustained, then you

5   should ignore the question and any answer that may be given.  I

6   will either say "objection sustained" or oftentimes you will

7   hear me say to the counsel that I will ask them to rephrase the

8   question.  If I do one of those things, then you should ignore

9   the question and any answer that may have been given.

10          If the objection is overruled, then you should treat

11  the answer like any other answer that may be given during the

12  course of trial.  If I instruct you that some item of evidence

13  is received for some limited purpose, you must follow that

14  instruction.

15          Third, testimony that I have excluded or that I tell

16  you to disregard is not evidence and must not be considered.

17          Fourth, anything that you may have seen or heard

18  outside of the courtroom is not evidence and must be

19  disregarded.  You are to decide the case based solely on the

20  evidence that is presented here in this courtroom before you.

21          Now, in deciding the facts of the case, you're going

22  to have to decide about the credibility of the witnesses; that

23  is, how truthful and believable they are.  There is no magic

24  formula to evaluate evidence.  For now just suffice it to say

25  that each of you bring into this courtroom all of the

experience and the background of each of your lives.  Do not
leave your common sense outside of the courtroom.  The same
types of tests that each of you use in your everyday dealings
are the tests that you should use and apply them in deciding
how much weight, if any, that you wish to give to the evidence
that's introduced in the case.

       The law does not require you to accept all of the
evidence that's introduced at trial, and in determining what
evidence to accept, you must make your own evaluation of the
testimony from each of the witnesses and from the exhibits that
are accepted into evidence.

       It's very important, essential, however, that you keep
an open mind until you have heard all of the evidence in the
case.  That's because a case can be presented only step by
step, witness by witness.  And as all of you know from your own
personal lives and experience, you can hear one person give her
account of an experience and think that it sounds very
impressive, perhaps even compelling; and then upon hearing
another person's version of the same event or even in this
context the same person being cross-examined about the same
event, things may seem very different.  In other words, there
may be another side to any witness's story.  So you should use
your common sense and your good judgment, and you must evaluate
each witness's testimony based on all of the circumstances.

       Again, I can't emphasize too much how important it is

J93Qmcc2

1   that you keep an open mind until the trial is over.  You should

2   not reach any conclusions about the case until all of the

3   evidence has been presented to you.

4           It's very important for all of you to remember that

5   this is, as I've told you already, a civil case.  You may have

6   heard of the beyond-a-reasonable-doubt standard that applies in

7   criminal cases.  That requirement does not apply in a civil

8   case, and you should put it entirely out of your mind.  In

9   civil cases, the burden is different, and it's called proof by

10  a preponderance of the evidence.  The plaintiff has the burden

11  of proving the elements of his claim by a preponderance of the

12  evidence.  This means that the plaintiff has to prove that the

13  facts are more likely true than not true.  A preponderance of

14  the evidence means a greater weight of the evidence.  It refers

15  to the quality and persuasiveness of the evidence, not to the

16  number of witnesses or documents.  This means that the

17  plaintiff has to present evidence that considered in light of

18  all of the facts leads you to believe that what the plaintiff

19  claims is more likely true than not.

20          To put it differently:  Imagining you are reviewing

21  one of the plaintiff's claims against a defendant.  If you are

22  to put the evidence that supported the plaintiff's claims on

23  one side of a scale and the evidence that supports the

24  defendant's on the other side of the scale, the plaintiff would

25  have to make the scales tip somewhat in favor of his claims in

order to prove his claims by a preponderance of the evidence.

If the plaintiff fails to do that, he has not met his burden,

and your verdict on the plaintiff's claims must be for the

relevant defendant.  I will instruct you further on the burden

of proof after all of the evidence has been received.

Now, I'm going to give you detailed instructions about

the law that applies here after the close of evidence.  Those

instructions will be the controlling statement of the law in

this case, and they will guide your deliberations.  Still, I'm

going to tell you now the basic elements of the principal legal

claims in this case.  I hope that this brief overview of the

law will help you to frame the evidence that you will see and

hear over the next few days.

This is a case about whether defendants Captain Cheryl

Bell and Corrections Officer Gerald Mitchell used excessive

force against the plaintiff on February 19, 2015 during a

search at Rikers Island.  To prevail on his excessive force

claim, the plaintiff must prove by a preponderance of the

evidence that the defendants' use of force was excessive "in

light of the facts and circumstances confronting them."  The

amount of force used, if any, must be judged from the

perspective of a reasonable officer on the scene rather than

with the 20/20 vision of hindsight in the calm of the

courtroom.  In addition, you're not to determine the least

amount of force that could have been used, but, rather, if the

J93Qmcc2

1    force that was actually used was excessive.

2           Finally, you must account for legitimate interests

3    that stem from defendants' "need to manage the facility in

4    which the plaintiff is detained," appropriately deferring to

5    "policies and practices that in the judgment" of jail officials

6    "are needed to preserve internal order and discipline and to

7    maintain institutional security."

8           Finally, let me remind you about certain rules and

9    principles governing your conduct as jurors in this case.

10   First, you must not talk to each other about the case or about

11   anyone who has anything to do with it until the end of the case

12   when you go to the jury room to decide on your verdict.  The

13   reason for this requirement is very simple.  It's the one I've

14   already described to you; namely, that you must not reach any

15   conclusions on the claims or defenses until all of the evidence

16   is in.  As I've said, I want you to keep an open mind until you

17   start your deliberations at the end of the case.

18          Second, do not communicate with anyone else about the

19   case or with anyone who has anything to do with it until the

20   trial is over and you have been discharged by me as jurors.

21   Now, when I say don't communicate with anyone else, anyone else

22   includes your family members and your friends.  When I say

23   don't communicate, I also mean don't communicate via Facebook,

24   Twitter, blogs, etc.  You can tell your family members and

25   friends that you are a juror in a civil case, but please don't

tell them anything else about the case until you've been

discharged by me.  If you'd like, you can tell them that you've

been ordered by the judge not to discuss the case.  So I'm

ordering you not to discuss the case.

Third, don't let anyone talk to you about the case or

anyone involved in the case or anyone who has anything to do

with the case.  If any person should attempt to communicate

with you about the case at any time during the trial, either

inside or outside of the courthouse, please report that

immediately either to Mr. Lee or to my clerk, Ms. Nelson, and

to no one else.  And when I say to no one else, I mean that you

should not tell anyone, including your fellow jurors.

Now, to minimize the probability of any such improper

communication, it's important that you go straight to the jury

room in the morning and that you remain in the jury room for

the duration of the trial day if you can.  You should use the

bathrooms that are there in the jury room as you've already

seen rather than the bathrooms on this or any other floor.  And

as I think you've already been told, you may not use the

cafeteria.

Given our morning and afternoon breaks are going to be

short, it's probably best that you remain in the jury room if

you can.  And I ask that you bring brown-bag lunches to eat in

the jury room during our lunch break.  As I said earlier today,

I'll get coffee for you, I'll get cookies and light

J93Qmcc2

refreshments, but if you want something more substantial, you
should bring it with you.  That's important to keep our lunch
breaks short as they need to be in order for us to stay on
schedule.

        Fourth, do not do any research or any investigation
about the case or about anyone who has anything to do with it
on your own.  Don't go visit any of the places that may be
described during the course of the trial.  Don't read or listen
to or watch any news reports about the case if there are any.
Don't go on the internet or use whatever digital or
communication devices it may be that you use to see if you can
inform yourselves further about the matter.

        That, again, is because your decision in this case
must be based solely on the evidence that is presented during
the trial.  All that you need to know will be presented here in
court by the very capable lawyers who are representing each of
the parties.  Please inform me promptly through either my clerk
or Mr. Lee if you become aware of another juror's violation of
these instructions.

        Also, please let me know if any person that you know
happens to come into the courtroom.  This is a public trial.
This is a public courtroom, so theoretically that could happen.
It's important that if somebody you know does come into the
courtroom, that you let me know that again through Mr. Lee or
my clerk.  It's important that if such a person does come into

J93Qmcc2

the courtroom that you not hear from them what may have

happened in the courtroom while you were out of the courtroom

for the same reason that I've already told you several times;

namely, that you all should be making your decisions based on

the evidence that's presented here.  If you should see a friend

or relative come into court, please send me a note through my

clerk or Mr. Lee promptly.

            Now, last procedural note is this:  If you would like

to take notes, please let me know.  Just raise your hand and

Mr. Lee will give you each a notepad on which you can take

notes.  I'd be happy to let you all take notes.  If so, just

let Mr. Lee know, and he'll give you a notepad.  I'm happy for

you to do that.  If you do choose to take notes -- you don't

need to, but if you do choose to take notes, you should begin

writing on the second page of the notepad and write your juror

number on the first page of the note pad so we can be sure that

only you are looking at your own notes.

            If you do take notes, only do so in the notepads that

Mr. Lee will give you.  Do not take your notes home with you.

You should leave them in the jury room during each of our

breaks and overnight.  You don't have to take notes.  If you do

take notes, remember that they're just an aid to your

recollection.  Any notes that you take are for your use only

and only are supposed to be used by you to aid your memory.

It's your memory that controls.  If you do take notes, please

J93Qmcc2

be careful not to get so engrossed in taking the notes that
you're not paying attention to the witness and what he or she
is saying or to the evidence that's being introduced.

Remember that once you're in your deliberations, if
there's a disagreement between one juror's notes and another
juror's notes or between one juror's notes and another juror's
memory, you can always ask to have the court reporter read back
the testimony or to have that portion of testimony sent back to
you, because it's the official court transcript that controls,
not any particular juror's notes.

During the course of the trial, I expect that exhibits
will be introduced into evidence.  They will be marked by an
exhibit number.  If there's an exhibit that you're particularly
interested in seeing, you can write down the exhibit number.
That said, I expect at this point that I will be sending back
to the jury room when you retire to deliberate all of the
exhibits that are received into evidence so that you should
have them at hand.

So, it's 3:18 now.  Let me talk about the order of
trial.  This trial, as I told you all at the beginning, we're
going to begin each day at 9:15 a.m., and we're going to
continue until approximately 3:30, including breaks.  I expect
that the trial will proceed tomorrow.  I expect I'm going to
end shortly.  I expect it may go until the middle of next week.

It's important that you all be on time.  If any of you

J93Qmcc2

are late, we will all have to wait because we can't start until

all of you are present.  And if any one of you is late, then

everyone -- the parties, defense counsel, your fellow jurors

and I -- all have to wait.  And if we do lose even ten or 20

minutes every day, we may not be able to get the trial

completed on time.  So I ask you to please be here on time

tomorrow and subsequent days at 9:00 a.m.  I will try to begin

us as early as possible after 9:00 when you are all here.  But,

in any event, I expect that we will begin with testimony no

later than 9:15 a.m.

          Now, I'd like to just say a few words about how the

trial will be conducted and explain what we're going to be

doing.  At the end of the trial, I'm going to give you more

detailed instructions which will control your deliberations,

but let me just take a few words to tell you how the trial is

going to proceed now.

          The first step in the trial will be opening

statements.  First, the plaintiff's attorney will make an

opening statement.  The opening statement is simply an outline

to help you understand the evidence that the plaintiff expects

to be presented.  The opening statement is not evidence.  Its

purpose is only to help you understand what the evidence will

be and what the plaintiff will try to prove.

          Then the defendant's attorney will make an opening

statement.  And remember what I've already told you about what

J93Qmcc2

1    evidence is and what it is not.  At that point no evidence will

2    have been presented to you.  You will only have heard

3    commentary by the lawyers, which is not evidence.

4         After opening statements, the plaintiff's attorney

5    will present the plaintiff's evidence.  The plaintiff's

6    evidence will consist of the testimony of witnesses as well as

7    documents and exhibits.  The plaintiffs will examine those

8    witnesses, and then counsel for defendants will have the

9    opportunity to cross-examine them.  In this case the defendants

10   will have some of the same witnesses as the plaintiff.  So

11   rather than asking each of those witnesses to come to the stand

12   and to testify twice, what I expect will happen is that the

13   defendants may present their case while the witness has been

14   presented by the plaintiff.  And plaintiff would then have the

15   opportunity to cross examine those witnesses on their testimony

16   for the defendants.  We are proceeding in that way simply

17   because it's more efficient as a way to present the evidence to

18   all of you.

19        After the presentation of the evidence is completed,

20   the plaintiff, and then I should say the defendants may then

21   also call witnesses with respect to their case.  Where

22   defendants call witnesses in the same way, the plaintiff's

23   counsel will have the opportunity to cross-examine those

24   witnesses and defendant's counsel will have the opportunity to

25   ask any rebuttal or redirect questions of that witness.

1              Now, after the presentation of evidence by both sides

2     is completed, plaintiff, plaintiff's lawyer, and the

3     defendant's lawyer will deliver their closing arguments to

4     summarize and determine the evidence.  Now in the same way that

5     the opening statements are not evidence, closing arguments are

6     not evidence.  Following their closing arguments, I will

7     instruct you on the law.  Then will retire to determine on your

8     verdict, which must be unanimous and must be based on the

9     evidence presented at trial.  Your deliberations will be

10    secret.  None of you will be required to explain your verdict

11    to anyone.

12             So, ladies and gentlemen of the jury, given that it is

13    3:22 p.m., what I'm going to propose to do now is to adjourn

14    for the day.  I'm going to try to have you out of here every

15    day at 3:30.  It's almost 3:30.  So what I'm going to ask you

16    to do is first to be here tomorrow morning at 9:00 a.m.  I am

17    going to remind you of some instructions that I just gave you

18    moments ago.  Don't talk about the case to anyone.  Do not do

19    any research about the case or anyone that has anything to do

20    with it.  And don't communicate with anybody who has anything

21    to do with the case in any way, whether verbally or over the

22    internet or by any other means.

23             So, please be here tomorrow morning at 9:00 a.m.  At

24    that point I expect we will begin with the parties' opening

25    statements.  So thank you very much.  I'll see you in the

J93Qmcc2

1    morning.

2                    (Jury not present)

3                    THE COURT:  Thank you.  You can be seated.

4             Thank you very much, Counsel.  Let's begin, first any

5    issues that either party would like to raise before we begin a

6    discussion of the proposed charges?

7                    Counsel for plaintiff.

8                    MR. LICHTMACHER:  There will be one issue, but it's

9    related to the charge and what you just instructed the jury on.

10   And if you agree with me, I will be asking you to do a very

11   tiny curative instruction about that part of the charge.  So we

12   could maybe more appropriately discuss it during the charging

13   conference than now, but that is my major issue, your Honor.

14                   THE COURT:  Thank you.

15            So, first, I'd be happy to talk about it in the

16   context of the charge itself.  What are you referring to?

17                   MR. LICHTMACHER:  Page 18.  On page 18 --

18                   THE COURT:  Thank you.  Good.  This is a specific

19   issue in the charge?

20                   MR. LICHTMACHER:  It is.

21                   THE COURT:  Good.

22                   MR. LICHTMACHER:  But it's a very important issue,

23   particularly in light of the fact that you already instructed

24   the jury as to it.  And if you do agree with me -- you may not,

25   but I'm hoping that you do.  If you do agree with me, I think

J93Qmcc2

1   you will find it fit to do something curative, your Honor.

2   It's on a small level, but it's relatively important, and I'll

3   be able to show you why in a minute.

4         THE COURT:  Fine.  So, Counsel, let's proceed.  I have

5   a copy of the September 1 version of the charges.  Counsel, who

6   has the first comment?  Counsel for plaintiff, what page is

7   your first on what page does your first comment appear?

8         MR. LICHTMACHER:  On page 18.  May I remain seated,

9   your Honor?  Is that OK?

10        THE COURT:  Yes.  So before we proceed, counsel for

11  defendants, what page is your first comment on?

12        MS. GOYKADOSH:  14, your Honor.

13        THE COURT:  Thank you.  Good.

14        So, counsel for defendants, what is the nature of your

15  comment?

16        MS. GOYKADOSH:  Beginning on page 14 and continuing on

17  page 15 is the first element under color of law.  We don't

18  think it's necessary to charge the jury on that.  We are not

19  going to be disputing that defendants were acting under color

20  of law.

21        MR. LICHTMACHER:  And plaintiff agrees, your Honor,

22  and regularly it's not done, at least recent trials I've done.

23  Although, your Honor, you do kind of say at the bottom of the

24  page, it does -- I'll withdraw my objection to it.  Forgive me.

25        THE COURT:  Thank you.  There is no question that the

J93Qmcc2

1    charges as stated do not require a finding of this.  The

2    instruction at the top of page 15 states that this first

3    element of 1983 is satisfied as to both defendants.  The

4    request is that I change page 14 of the charge to refer to the

5    following two elements?  Is that correct, counsel for

6    defendants?

7              MS. GOYKADOSH:  Yes, your Honor.

8              THE COURT:  Thank you.

9              You're asking that I say two elements rather than

10   three elements.  Then that I delete the section that says

11   "first," and insert "first" in the place where it currently

12   says "second" and "third" -- sorry -- "second" in the place

13   where it currently says "third" on page 14.  Is that correct?

14             MS. GOYKADOSH:  Yes, your Honor.

15             THE COURT:  Thank you.

16             So then you're asking me to remove all of subsection

17   one, and you are asking me to re-number section two as section

18   one, and to rename second element, first element.  You are

19   asking that I change the word "second" in the first sentence of

20   that paragraph to "first."

21             MR. LICHTMACHER:  May I be heard on this, your Honor?

22             THE COURT:  Thank you.  Give me one moment.  I am

23   trying to work through all the changes that are required as a

24   result of this proposed modification.  Thank you.

25             You're also asking that on page 19 of the charge, I

J93Qmcc2

 1    change the reference to third element in the heading to "second

 2    element."

 3            You're also asking that I change the second sentence

 4    of that paragraph to replace the word "three" with the word

 5    "two."  And to replace the entire first clause -- or to delete

 6    the entire first clause so that the first element as described

 7    there would be what is currently the second element, and that I

 8    replace the reference to "three" and the following clause with

 9    a number "two."

10            MS. GOYKADOSH:  Yes, your Honor.

11          (Continued on next page)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

J931mcc3

1                THE COURT:  Thank you.

2                MS. GOYKADOSH:  I think there's one more thing, your

3     Honor.  On page 20, it says, "If you find that the plaintiff

4     has proven all three elements."  That should probably be

5     changed to two as well.

6                THE COURT:  Thank you.

7                With respect to that reference, I believe that

8     reference may be to the three elements of causation, which are

9     referenced immediately before that -- namely, the 1, 2, 3

10    immediately before that text.  I could delete that sentence in

11    its entirety to the extent that it's unclear whether that's a

12    reference to the now two elements of the 1983 claim as

13    requested by defendants or to the three things that must be

14    proven in order to demonstrate proximate causation.  What's

15    your preference?

16               MS. GOYKADOSH:  I apologize, your Honor.  That was my

17    mistake.  I think it's fine the way it is.

18               THE COURT:  Thank you.

19               MR. LICHTMACHER:  May I be heard on this, your Honor?

20               THE COURT:  Yes.

21               MR. LICHTMACHER:  The proposal won't work lest you

22    also change page 14, at the top, "Plaintiff claims that on

23    February 19," etc.  Plaintiff brings the claim pursuant to

24    Section 1983 of Title 42 of the United States Code.  Section

25    1983, and it says it "provides a remedy for individuals who

J931mcc3

1    have been deprived of their federal constitutional rights under

2    color of state law."  It goes on to mention "color of state

3    law" again, farther down on the page.  I think it should be

4    left as is.  I don't think there's any problem with it.  And

5    you did -- and it was my error -- you did say that element has

6    been proved, and in virtually all the many dozens of these

7    cases that I've tried, it's been done exactly this way, where

8    it is explained as part of it and it says it's not contested.

9    And I think it's better to leave it alone.

10            THE COURT:  Thank you.

11            Counsel for defendants?

12            MS. GOYKADOSH:  Your Honor, it's just extra words

13    about an issue that the jury does not need to decide, so I

14    don't really think there's any additional benefit of having

15    that here.  The jury is not deciding color of law.  Your Honor

16    is instructing them that they're not deciding color of law.  So

17    it's unclear why they need to even be instructed on that.

18            THE COURT:  Thank you.

19            Counsel for plaintiff, I'm, frankly, largely

20    indifferent.  Would it be legally inaccurate to make the

21    changes that I've just described?  I do not propose, I would

22    not propose, and I don't believe defendants have proposed, that

23    we delete the second sentence of the first paragraph under the

24    1983 overview.  That's just a description of the relevant law.

25    The elements are described in the subsequent sections.  So I

J931mcc3

1      don't think that defendants' change is necessary.  I understand

2      their view that it would be less verbiage regarding an

3      unnecessary issue, and so I'm willing to accommodate it.

4      Counsel for plaintiff, any concern that the charge as proposed

5      to be reframed would be legally inaccurate after deleting those

6      references to the under color of state law requirement?

7                MR. LICHTMACHER:  Are you asking me?

8                THE COURT:  Yes.

9                MR. LICHTMACHER:  Yeah, I think it would be

10     inaccurate, and if somebody was to hear this, even

11     unintentionally, you know -- I understand it doesn't have to be

12     a research project -- they'd think something was missing.  It

13     does concern me, considering what little burden it is for it to

14     be read there.  And you have a very concise charge here.  This

15     is not a 65-page charge.  It's fairly tiny.  No reason not to

16     leave it in.  It's the way it's always done, and it should be

17     understood the way it is.

18               THE COURT:  Thank you.

19               Counsel for defendants, do you have a concern that the

20     charge as written is legally inaccurate?

21               MS. GOYKADOSH:  Inaccurate, your Honor?

22               THE COURT:  Yes.

23               MS. GOYKADOSH:  No.

24               THE COURT:  Fine.  So I'll leave it as is.  Counsel

25     for plaintiff objects to the deletion.  I understand that the

J931mcc3

1    purpose of the change is to reduce the verbiage in front of the

2    jury, but I believe that the charge is accurate and it clearly

3    states that this is an element that is not disputed.

4              Good.  So who has the next change?

5              Counsel for plaintiff, I understand your next change

6    is on page 18.

7              Counsel for the defendants, do you have a change

8    before page 18?

9              MS. GOYKADOSH:  Yes, your Honor.  Beginning on

10   page 15, and continuing on page 16, the first sentence of Part

11   II, Second Element, reads:  "To establish the second element of

12   the Section 1983 claim, plaintiff must show that he was

13   intentionally," and then in bold brackets, it says, "or

14   recklessly."  We would argue that the "or recklessly" language

15   should be removed globally from the charge.  There's no

16   allegation here that the defendants acted recklessly; the

17   allegation is that they acted intentionally.  So I believe that

18   it is confusing to include the "or recklessly" language here.

19             THE COURT:  Thank you.  I bracketed it in that way

20   because I understood that the allegation was not that the

21   conduct was reckless but rather that it was intentional.  I

22   bracketed and bolded it to flag precisely that issue.

23             Counsel for plaintiff?

24             MR. LICHTMACHER:  If something is done severely

25   recklessly, it violates 1983.  You know, also, you can be

J931mcc3

1   reckless in terms of, you know, inflicting degree of harms you

2   didn't mean to inflict, but you can also have intentionally

3   thrown a punch.  If you throw a punch, you don't hurt somebody

4   very badly but you recklessly do, then the person has acted

5   intentionally and recklessly.  So I think both words belong in

6   there.

7              THE COURT:  Thank you.

8        To be clear, the conversation that we're engaged in

9   now relates to the commission of the alleged acts, in

10  particular here with respect to whether or not the acts taken

11  by the officers -- that is, the corrections officer and Captain

12  Bell -- as alleged, were undertaken intentionally or

13  recklessly.  I understood that the allegation was that they

14  physically assaulted him, not that they accidentally let the

15  jail door slam on his hand.  So I understand the question

16  presented here to relate to that, not the consequences, I'll

17  call it, of their actions or their, I'll call it -- should not

18  call it *mens rea*, but I'll say the objective/subjective element

19  of a 1983 case in this context.

20             So is there a basis to conclude that either of the

21  officers' conduct as alleged here was reckless -- in other

22  words, their acts were reckless?

23             MR. LICHTMACHER:  The acts of throwing punches and

24  kicks were not reckless; they were intentional.  So we do

25  concede that the degree of injury they might have inflicted

J931mcc3

1     might have been reckless.

2              THE COURT:  Understood.  Thank you.

3              So I agree with the comment by defendants that here,

4     based on the facts presented, that the references to

5     recklessness are not warranted based on the proffers that I've

6     heard regarding the nature of the conduct of the defendants, so

7     I will accept those changes on pages 15 and 16 and delete the

8     bracketed language regarding reckless conduct.

9              Where is your next change, counsel for defendants?

10             MS. GOYKADOSH:  It's not a change per se.  It's a

11    language that I would like added to the excessive force charge.

12    So I guess it would fall within page 16 to the very, very top

13    of 19.  So I don't know if plaintiff's counsel's comments fall

14    before that.  It's just language that I want.

15             THE COURT:  Thank you.

16             I'm happy to take up plaintiff's comment now then, and

17    then please raise the proposed addition, counsel for

18    defendants.

19             Counsel for plaintiff?  We're on page 18.

20             MR. LICHTMACHER:  Certainly.  On 18, nine lines down.

21    Here's the problem.  The sentence that begins with, "You must

22    also account for the legitimate interests that stemmed from

23    defendants' need to manage the facility in which the plaintiff

24    was detained," and here it goes, "appropriately, deferring to

25    policies and practices that, in the judgment of jail officials,

J931mcc3

1    are needed to preserve internal order and discipline and to

2    maintain institutional security."  From "appropriately" to

3    "institutional security" should be struck, and here's why.

4    Because at that point in time, it was proven in the Nuñez

5    doctrine that policies that were being used and employed, the

6    de facto policies at Rikers Island, were in fact illegal, and

7    the city had to acquiesce to that.  So under these rules, they

8    could present evidence of the policies that allowed things to

9    happen that were clearly deemed illegal under Nuñez.  I know

10   you've looked at Nuñez recently, your Honor.  It's clear.

11          So this is just an inaccurate statement as to 1983.

12   And thinking about it a little further, if in fact a government

13   agency uses an illegal policy and violates people's rights

14   pursuant to that policy, the officer should not be able to get

15   off just because they act in conformity with the illegal

16   policy.  That's why those sentences have to be changed.  Or

17   those lines.  Excuse me.

18          MS. GOYKADOSH:  May I respond, your Honor.

19          THE COURT:  Yes.

20          MS. GOYKADOSH:  That sentence is a direct quotation

21   from *Kingsley*, which is from the Supreme Court, and the

22   citation is 135 S. Ct. 2473, and it's quoting *Bell v. Wolfish*,

23   which is another Supreme Court case, 441 U.S. 520, 540.  It's a

24   1979 case.

25          And that language was also included in the proposed

J931mcc3

1     charge on page 17, which plaintiff did not object to at that

2     time.  That language is not an inaccurate statement of 1983

3     law.  It is 1983 law.

4            And I'm also not certain what policies Mr. Lichtmacher

5     is currently referring to.

6            So we believe that that language, which is Supreme

7     Court law, should stay in the charge.

8            THE COURT:  Thank you.

9            Counsel for plaintiff?

10           MR. LICHTMACHER:  *Bell v. Wolfish* has nothing to do

11    with this and wasn't judging the policies of Rikers Island --

12    or, excuse me, DOC in general, which were found to be illegal,

13    period.  That's not contested.  It can't be, because they were.

14    And the city signed off on that.  So therefore, pursuant to

15    this, because this is talking specifically about a Rikers

16    incident, and we're talking about policies and practices that

17    were illegal, if these people didn't violate, you know, illegal

18    policies, then the standard for my client's rights have been

19    lowered, and there's nowhere that allows that to happen.

20    You're allowed to increase someone's rights, in the state or

21    the city, but they're not allowed to lower the degree of rights

22    pursuant to the Constitution.

23           Now the Supreme Court was not ruling on what

24    specifically was going on in Rikers Island.  They're completely

25    disparate cases, the cases that were cited.  And *Bell* is

J931mcc3

1    ancient.  I know it's still good law, I know it's important

2    precedent, but it's ancient.

3            More importantly, we should be looking at *Graham v.*

4    *Connor* or looking at *Monell* and its progeny, you know, but when

5    you have a policy that's been declared and signed off and

6    admitted to be illegal and you say they were acting according

7    to the policy, you know, and it's allowable to do that, then

8    you're saying they're allowed to violate the law, violate the

9    Fourth Amendment, Fourteenth Amendment.

10           THE COURT:  Thank you.

11           Let me ask for further argument on this point.  I'd

12   like to ask that we address it in a number of steps.

13           First, counsel for plaintiff, I appreciate that the

14   argument here is that this language should not be held to apply

15   here because the policies and practices at issue were

16   determined to have been violations of the Constitution and that

17   you assert that that is the conclusion of the Nuñez consent

18   decree.  I'll invite comment on that issue momentarily --

19   namely, whether the city agreed, in the consent decree in

20   Nuñez, that the policies that they were agreeing to improve

21   through the processes described in Nuñez should be read to

22   imply that their prior practices were constitutionally infirm.

23   So I will take up that issue separately.

24           With respect to the arguments by counsel for

25   defendants, however, that the language here is from *Kingsley*,

J931mcc3

1    is there any other argument why this language is

2    inappropriately included in the charge?  Counsel for plaintiff?

3              MR. LICHTMACHER:  No, your Honor.

4              THE COURT:  Thank you.

5              Good.  So let's take up the specific issue -- namely,

6    the argument that because of Nuñez, the policies and practices

7    at issue here are proven to have been constitutionally infirm

8    and therefore that deference to them is inappropriate.

9              I have looked at the Nuñez consent decree.  I invite

10   comment by the defendants regarding whether defendants accept

11   that that consent decree should be read or construed as a

12   concession by the city that their pre-existing policies were

13   uniformly constitutionally infirm.

14             Counsel for defendants?

15             MS. GOYKADOSH:  Your Honor, I apologize.  I have not

16   reviewed Nuñez in advance of this charging conference.  But I

17   do not see how that consent decree should be a reason to

18   extract this language from the charge.  What we're talking

19   about here is whether this single incident of excessive force

20   on February 19, 2015 violated Mr. McCurdy's rights.  So I don't

21   see how language from the Supreme Court would somehow fall into

22   second place based on a consent decree in the Nuñez case.

23   Again, I would need an opportunity to review that.  I did not

24   review it in advance of today, so I apologize for that, but I

25   do not believe that Nuñez would be a reason not to include this

J931mcc3

1    language.  And again, this language was in the statement of law

2    that the Court gave the parties.  Mr. Lichtmacher did not

3    object to it at that time.

4            THE COURT:  Sorry.  That the parties gave the Court.

5            MS. GOYKADOSH:  I apologize.  That the parties gave

6    the Court.  And it was also in the proposed requests to charge

7    that the parties gave the Court, and Mr. Lichtmacher did not

8    object, again, at that time.  So this is news to me that this

9    is being objected to today.  I don't understand why it's being

10   objected to, and I think it should remain because it's a direct

11   quote from *Kingsley*.

12           MR. LICHTMACHER:  The reason that I -- if I may quote

13   from Nuñez, your Honor.  I can draw your attention right to one

14   of the relevant sections.  And, you know, I studied Nuñez in

15   preparation for this.  I understand your ruling about Nuñez so

16   far, but I think there may be a time it comes in.  And if I

17   may, turning to page 5 of Nuñez, which is my document 16, I

18   believe.

19           Yes.  This is signed off on by the City of New York.

20   This is part of it.  No. 1.  It's under the IV, No. 1:

21           "Within 30 days of the effective date, in consultation

22   with the monitor, the Department," and they're referring to the

23   Department of Corrections, "shall develop, adopt, and implement

24   a new comprehensive use of force policy with particular

25   emphasis on permissible and impermissible uses of force.

J931mcc3

1          "New Uses of Force Directive.  The new use of force

2     directive shall be subject to the approval of the monitor.

3          "No. 2.  The new use of force directive shall be

4     written and organized in a manner that is clear and capable of

5     being readily understood by staff."

6          And moving down to A of 3, a statement at the

7     beginning of the new use of force directive sets forth the

8     following general principles:  "The force shall always be the

9     minimum amount necessary and must be proportional to the

10    resistance or threat encountered.  The use of excessive and

11    unnecessary force is expressly prohibited."  And it goes on.

12         And the problem is, in the entire Nuñez finding,

13    agreed upon by the city and signed off on by the city, they

14    were having a horrible problem with excessive force being used.

15    And Nuñez, which started as a document just about force used

16    against younger inmates, was expanded in page 2 to include

17    using force against all inmates.  They expanded the group

18    covered by it.  I believe it's page 2.  I studied it pretty

19    hard at one point.  And it's clear that if your Honor allows

20    them to act within the -- yeah, it's page 2, No. 3.

21         It's clear that if they're allowed to say, hey, we

22    acted within the policy of the Department of Corrections, they

23    could have done a lot of illegal things, then suddenly that

24    becomes justifiable under the Fourth and Fourteenth Amendment,

25    and that's not the case.  The Fourth and Fourteenth Amendment,

J931mcc3

1      they're rules here, your Honor.

2              So with all due respect to my adversary, their

3      argument is just legally wrong in this circumstance, because of

4      Nuñez and because of what was going on in the Department of

5      Corrections, which is also why we're here.

6              THE COURT:  Thank you.

7              Counsel for defendants, do you want to present any

8      additional argument with respect to the Nuñez document?  This

9      is clearly germane to questions related to the ultimate

10     admissibility or use of this decree in the *Monell* stage of the

11     case, and a principal question, to the extent that I can focus

12     you on it, is your view regarding whether the fact that the

13     city agreed to improve its standards can be read to mean that

14     their prior standards were agreed by the city to have been

15     constitutionally infirm.  Counsel, did the city agree that the

16     standards applied by the city prior to the implementation of

17     the Nuñez decree were constitutionally infirm?  Is that what

18     the Nuñez consent decree stands for?

19             MS. GOYKADOSH:  Your Honor, may I have a moment to

20     confer with my supervisor, please.

21             THE COURT:  Thank you.  Please take your time.

22             (Pause)

23             (Discussion off the record)

24             THE COURT:  Let me just point out a couple of things

25     that may be relevant to this conversation.

J931mcc3

1          First, the consent decree contains only two recitals

2     regarding why it is that the consent decree was entered into.

3     Those are the recitals that begin on the bottom of page 1 and

4     that carry over to the top of page 2.  I have not seen, in

5     reviewing the entirety of the consent decree, a statement by

6     the city acknowledging that they agree that their use of force

7     policy was unconstitutional previously, and I note that the

8     only recitals that explain the instigation for this consent

9     decree appeared to relate to the findings by the U.S.

10    Attorney's Office with respect to unnecessary use of force

11    against minors, understanding that the consent decree itself

12    then applies to a broader group.

13         What I'm looking for is whether and to what extent the

14    agreement by the city to improve their practices should be read

15    perforce as an acceptance that their prior conduct was

16    universally inconsistent with constitutional standards.  The

17    context in which such issues come up before the Court

18    frequently come up in the context of Rule 407.  This is not a

19    Rule 407 issue.  But Rule 407 talks about the question as to

20    whether or not subsequent remedial efforts can be introduced

21    for the purpose of proving that prior conduct was improper.

22    I'm not making a conclusion that that rule applies here, but it

23    is certainly an analytical framework that I consider in

24    evaluating whether or not an agreement to make future changes

25    to improve things means necessarily that there is an agreement

J931mcc3

1    that conditions pre-existing the agreement were improper.

2              MR. LICHTMACHER:  Your Honor, if I may respond to

3    that.

4              THE COURT:  Yes.

5              MR. LICHTMACHER:  Certainly subsequent remedial

6    measures under certain circumstances aren't allowed.  I'm not

7    seeking to use one.  But the problem is, if this policy is then

8    allowed to be found as the basis for Fourteenth Amendment

9    liability, then I'd almost have to.

10             And in terms of Nuñez acknowledging that there's a

11   problem, the entirety of the document is about that there's a

12   problem, that the policies have led to these.  It's taken as a

13   whole; it's the only way to look at it -- the US government,

14   you know, telling, and New York City agreeing, yes, we have a

15   problem, we have to change our policies.  All these changes are

16   about policy changes, and they're listed ad nauseam in Nuñez,

17   and they're all relevant to the things we're here about, and I

18   am concerned, concerned, that somebody gets on the stand and

19   says, well, the policy, we're allowed to do this, we're allowed

20   to do that.  You know, I mean, not picking on anybody, but if

21   in Alabama, somebody says, you know, you can punch an inmate

22   until he stops moving, or stops breathing, and somebody acts in

23   accordance with that, doesn't mean they didn't violate the

24   Eighth Amendment, your Honor.  And that's the problem here.  I

25   mean, this entire document is about your policy is bad, you

J931mcc3

1    have to change it, you've got a de facto policy, and it's an

2    enormous document and agreement and hopefully effected a lot of

3    good change.  And that's why that sentence is so disturbing to

4    me.

5               THE COURT:  Thank you.  Understood.

6               It may be that separate and apart from the question of

7    whether or not Nuñez stands for the broad principle that you've

8    described, it may be that the Supreme Court freights the word

9    appropriately with much meaning; in other words, that one must

10   not give full deference to the policies and practices but that

11   one must give appropriate deference to those policies and

12   practices.

13              In any event, I look forward to hearing more from the

14   parties following our short break.  I'll be back in about five

15   minutes.  Thank you, all.

16              THE DEPUTY CLERK:  All rise.

17              (Recess)

18              (In open court)

19              THE COURT:  Thank you.  Please be seated.

20              So we're back on the record after a short recess.

21              Counsel, any further argument with respect to the

22   proposed deletion of the language in the charge from *Kingsley*?

23   Counsel for defendants?

24              MR. SIDDIQI:  Yes, your Honor.

25              So thank you for allowing defendants a short break.

J931mcc3

During that break I was able to speak to one of the attorneys

who was assigned to help draft the Nuñez consent decree.  It's

our position that in the Nuñez consent decree, if you go to

XXII, which appears on page 58 of the document -- if you're

looking at the enumeration of the docket sheet, it's page 60.

THE COURT:  Thank you.

MR. SIDDIQI:  Your Honor, it would be our position

that that section, stipulation pursuant to the PLRA, 18 U.S.C.

Section 3626, that it expressly states that the prospective

relief arising from Nuñez is "narrowly drawn," "extends no

further than is necessary to correct the violations of federal

rights as alleged by the United States and the plaintiff

class."  That section also expressly notes that, "This section

shall not be admissible against defendants in any court for any

purpose."  It's our position that the Nuñez decree does not

contain any admission that the policies or practices previous

to that decree were de facto illegal or unconstitutional.

So I hope that answers the question that the Court had

before we took the break.

THE COURT:  Good.  Thank you very much.  That's

helpful.

Counsel for defendants, can I ask, just as a matter of

fact, what the testimony, if any, would be by defendants that

might relate to this section of the charge.  Counsel for

plaintiff has used one hypothetical in order to illustrate the

J931mcc3

1  nature of the concern.  What can you proffer regarding any

2  expected testimony regarding the policies or practices that the

3  officers here were following, if any, that would come in as

4  part of the testimony?  Counsel hypothesized a policy that was

5  used which permitted the excessive use of force and posited

6  that if such a policy were in place, then this language would

7  undermine the constitutional protections afforded to pretrial

8  detainees.  Counsel, in order to help me understand how this

9  might apply in this case, can you tell me or make a proffer

10  regarding the testimony that you anticipate that might relate

11  to this element of the charge.

12          MR. SIDDIQI:  Certainly, your Honor.

13          The testimony that's going to come out with regards to

14  any policy or practice is that before the incident involving

15  the plaintiff, there was a slashing in the commissary of AMKC

16  near the housing area and that as a matter of policy, after a

17  slashing, the inmates are sent back to their cells for an

18  institutional search so that the corrections staff can look for

19  the weapon in question and can also look for any other related

20  contraband.  As a part of that institutional search, plaintiff

21  was sent back to his cell.  Plaintiff was instructed to comply

22  with a strip search to advance that institutional search.

23  Rather than complying with the strip search, plaintiff threw

24  his T-shirt at Officer Mitchell's face, then punched Officer

25  Mitchell in the face.  Officer Mitchell at that time, to regain

J931mcc3

control of the situation, punched plaintiff back.  Officer

Mitchell was unable at that time to use his OC chemical spray

because he was too close to the plaintiff and it would not be

effective.  After the punch, after the more than one punch --

THE COURT:  Just to focus you, do you expect that

there will be testimony regarding a policy that the officer was

using or applying in restraining Mr. McCurdy?  Do you

anticipate that there will be testimony regarding a policy

regarding the use of force that was applied in restraining

Mr. McCurdy in the incident?

MR. SIDDIQI:  Your Honor, any testimony that would

come out would be that the force used by the officers was

consistent with their training given by Department of

Correction.

THE COURT:  Thank you.

And what would you anticipate the testimony regarding

that to be?

MR. SIDDIQI:  At that time that an officer is struck

by an inmate, he is allowed to use responsive and proportional

force in response to regain control of the situation.

MR. LICHTMACHER:  Your Honor, I have no objection to

that sentence, "proportional."  I have no objection to that.  I

have objection to this --

THE COURT:  I'm sorry.  Just to be clear, as I

understand the proffer, the testimony would be that the

J931mcc3

1    training that the officer received was that they were permitted

2    to use proportional force, is that correct, counsel?

3             MR. SIDDIQI:  Yes, your Honor.  I believe that the

4    officers will testify that the force they used was reasonable

5    to maintain order and that they used the minimal force

6    necessary to regain control of the situation.

7             THE COURT:  Thank you.

8             So to be clear, regarding the training that they

9    received or the policy or practice that informed their conduct,

10   do you anticipate that the testimony will be as you described

11   just now, that the policy that they followed was to use minimal

12   force that was reasonable under the circumstances, or was it

13   that they may use proportional force, i.e., if punched, they

14   can punch, if kicked, they can kick?  What do you proffer the

15   testimony is likely to be here, counsel?

16            MR. SIDDIQI:  If I can have just a moment, your Honor.

17            THE COURT:  Thank you.

18            MR. SIDDIQI:  Your Honor, my co-counsel has reminded

19   me at this point that we moved *in limine* to not enter into a

20   discussion with regards to DOC policies precisely because the

21   question in this case is whether or not the conduct was

22   appropriate under the relevant constitutional law.

23            THE COURT:  Thank you.

24            So counsel, in response to my question, do you

25   anticipate that there will be no testimony regarding the

J931mcc3

1     policies or practices so that the defense will not be putting

2     in evidence regarding policies or practices that informed their

3     conduct?

4              MR. SIDDIQI:  I don't anticipate eliciting any

5     testimony to that effect.

6              THE COURT:  Thank you.  Good.

7              So with that proffer, counsel for plaintiff, what's

8     your position?

9              MR. LICHTMACHER:  Well, according to the sentence

10    that's in there, "appropriately deferred to policies and

11    practices," etc., and there being offered no policies and

12    practices, so that should come out.  I mean, it's clear.  What

13    policies and practices?  It's up in the air.  What are we

14    talking about?  You know, the jury is going to be left with a

15    blank.  Simplest way is to strike the extra section that I

16    suggested, your Honor.

17             THE COURT:  Thank you.

18             And to be clear, the language here refers to both

19    policies and practices.  Counsel for defendants, in light of

20    that, what is your view?

21             MR. SIDDIQI:  Your Honor, at this point I think that

22    we have no problem taking that sentence out of the charge --

23    I'm sorry -- that clause out of the charge, starting from

24    "appropriately," ending at "institutional security."

25             THE COURT:  Thank you.

J931mcc3

1              Counsel for plaintiff, counsel for defendants have

2      proposed that based on the evidence that they anticipate will

3      be proffered at trial that this language need not be presented

4      to the jury because no facts will be presented to the jury that

5      will trigger its application.

6              Let me say at the outset that this language is legally

7      correct.  It is based on the language of the Supreme Court in

8      the *Kingsley* decision.  I believe that a charge including this

9      language is legally accurate.  However, at this stage I

10     understand from the parties that there will be no evidence that

11     will go to this point during the individual liability stage of

12     the case, and as a result, I would be prepared to remove it

13     based on that proffer.

14             I'm not making a determination that Nuñez stands for

15     the proposition that counsel for plaintiff has stated.  But

16     based on the proffer by counsel regarding the evidence that

17     would be presented, I'm prepared to delete that text, which I

18     expect I will be doing without objection by plaintiff, since it

19     is the substance of his request.  I just want to be very clear

20     that the basis for the Court's acceptance of this is the

21     defendants' acceptance of this and that I am not making a

22     conclusion that Nuñez stands for the proposition described by

23     counsel for plaintiff previously.

24             With respect to the related issue -- namely, whether I

25     should change the preliminary legal instructions that I

J931mcc3

1   provided to the jury -- I will ask the parties what your views

2   are.  To be very clear, the instructions that I read the jury

3   regarding the law here was the language that was specifically

4   agreed to by the parties, meaning plaintiff and defendants,

5   prior to trial.  This was not objected to, and despite the fact

6   that I provided the specific language to the parties to review

7   and despite the fact that that language was derived from

8   language that was commonly provided to the Court.  So the

9   reason why I read approximately this language to the jury at

10  the outset was because it was agreed upon by all parties.

11          A question here is whether there is any value to going

12  back and saying to ignore what I told them earlier or whether

13  we should rely on the fact that I told them previously that the

14  preliminary instructions were not the guiding instructions but

15  that rather the final instructions would apply.  Counsel, what

16  are your respective views?

17          MR. LICHTMACHER:  With that addendum, which actually

18  was included originally, I understand that my application was

19  unnecessary.  My application was to strike the section of the

20  charge but the application was made in terms of the curative

21  instruction, so I abandoned that.  So thank you, your Honor.  I

22  appreciate you instructing me on that.

23          THE COURT:  Thank you.  That's not a problem.

24          Good.  So thank you very much, counsel.  I will make

25  that change.  Thank you for raising the issue, counsel.  I

J931mcc3

1   would be happy to engage in a further academic discussion of

2   the issue because it is an interesting one, but we need not

3   because we have a practical solution.

4           Counsel, who has the next subsequent change?

5           Counsel for plaintiff, where's your next change?

6           MR. SIDDIQI:  Your Honor, while we're still kind of on

7   this topic, I just wanted to raise one issue for the sake of

8   completeness.

9           With regards to testimony that will be elicited, this

10  has nothing to do with the policy on force, but Captain Bell

11  will testify that it is the policy of DOC that female staff is

12  not to be present for the strip search of a male inmate.  So

13  while we're discussing policies, just for the sake of

14  completeness, I wanted to put that on the record.

15          THE COURT:  Thank you.  I don't understand there to be

16  any concern regarding that.  Counsel, please let me know if

17  that's incorrect.

18          Counsel for plaintiff, can you tell me where your next

19  change is.  I understand that counsel for defendants wish to

20  introduce additional language to this section of the charge.

21          MR. LICHTMACHER:  This section?  Well, when we get to

22  page 23, E, Mitigation of Damages.

23          THE COURT:  Fine.  Thank you.  We'll be there

24  momentarily, counsel for plaintiff.

25          MR. LICHTMACHER:  Other than that, I'm okay.

J931mcc3

```
 1            THE COURT:  Good.  So counsel for defendants, what
 2   language do you wish to include in the excessive force
 3   component of the charge?
 4            MS. GOYKADOSH:  On page 17 of our proposed charge, on
 5   the bottom of the page, we included the language that starts --
 6   this is the last full sentence -- "Officers can use objectively
 7   reasonable force --"
 8            THE COURT:  I'm sorry.  Give me a moment.
 9            MS. GOYKADOSH:  Sure.
10            THE COURT:  Thank you.
11            I apologize.  I'm looking at the joint proposed
12   charge.  I don't see page numbers.
13            MS. GOYKADOSH:  I apologize, your Honor.  There are no
14   page numbers.  I'm referring to the ECF pagination.
15            THE COURT:  Thank you.  Sorry.  Give me one moment,
16   please.
17            Thank you.  Please go on.
18            MS. GOYKADOSH:  Starts, "Officers can use objectively
19   reasonable force to protect themselves from a plaintiff's
20   threat."  And then the next sentence reads, "Minor scrapes,
21   bumps, or bruises potentially could occur, often unintended,
22   and an officer cannot be held liable for every such incident."
23   We would just ask that that language be included in the jury
24   charge as well.
25            THE COURT:  Thank you.
```

J931mcc3

1              Counsel for plaintiff.

2              MR. LICHTMACHER:  There's no reason to include the de

3    minimis injuries in the charge.  It's really not important, so

4    I don't think it changes anything at all.

5              THE COURT:  Thank you.

6              MR. LICHTMACHER:  And I don't think a jury is going to

7    award anything if he's only got minor bumps and bruises.

8              THE COURT:  Thank you.

9              MS. GOYKADOSH:  Respectfully, your Honor, I think it

10   is important, and plaintiff did not object to it, and we would

11   like this language included, and if the only reason is that

12   it's not important, we think it is important, and it's only two

13   sentences.

14             THE COURT:  Thank you.

15             Referring to the two sentences that carry over from

16   the bottom of page 17 to the top of 18, I understand that

17   they're not objected to or were not objected to by plaintiff in

18   the joint charges.

19             MR. LICHTMACHER:  They were not, Judge.

20             THE COURT:  Thank you.

21             Are they legally inaccurate?  I did not include them

22   largely because I did not think they were necessary, but I also

23   don't believe them to be legally inaccurate and I don't

24   understand there to be an argument that they are not.  So

25   barring objection by counsel, I would accept the change.

J931mcc3

1          MR. LICHTMACHER:  I do object, your Honor.  You do

2     have the "push and shove" language in here that we always use

3     in these cases.  I'm pretty sure that's in here.  I think I

4     just read it.  You know, "not every push and shove..."

5          THE COURT:  Thank you.  Yes, that appears in the

6     following language after the language that we just discussed

7     deleting.  So the question is really the two carryover

8     sentences.  Let's talk about each of them in turn.

9          First is, "Officers can use objectively reasonable

10     force to protect themselves from a plaintiff's threat."  That I

11     think is implicit from the remaining charges.  Counsel for

12     plaintiff, any concern regarding the addition of that language

13     to precede the existing sentence that relates to "push or

14     shove"?

15          (Continued on next page)

16

17

18

19

20

21

22

23

24

25

J93Qmcc4

1          MR. LICHTMACHER:  I think it's really in there already

2     implicitly if not explicitly.  You talk about:  The question is

3     only whether the action defendant you are considering

4     objectively unreasonable in light of all the facts and

5     circumstances confronting him or her."

6          I mean, I believe that covers it, that and the push

7     and shove I don't see why we need more language there.

8          THE COURT:  Thank you.  Good.

9          So, counsel for defendants, I understand the principal

10    discussion here regarding the minor scrapes, bumps and bruises

11    language.

12         What's the purpose of this?  I understand it may be

13    considered, I'll call it, a push instruction, which I

14    understand to be the basis for plaintiff's objection because it

15    states that an officer cannot be held liable for every such

16    incident.  What's the basis for the inclusion of that sentence?

17    I should say that I'm willing to include the prior sentence.  I

18    don't understand there to be a substantive objection to it.  I

19    believe it may arguably be redundant, but it's not legally

20    incorrect and does not appear to problematic.

21         The following sentence, however, has been objected to

22    on the basis that I just described and as you've heard from

23    counsel for plaintiff.

24         Any further argument regarding why that carryover

25    sentence from pages 17 to 18 should be included?

1          MS. GOYKADOSH:  Yes, your Honor.  I believe it is an

2     actually very important sentence, and I believe that it needs

3     to be explicitly instructed to the jury, and the reason for

4     that is that:  Number one, it goes to plaintiff's alleged

5     injuries.  And in this case there will be testimony that there

6     was a struggle with plaintiff in his cell because he was

7     resisting after punching Corrections Officer Mitchell.  And

8     even in line with plaintiff's own testimony, he says that he

9     was on the floor of the cell.  So there will certainly be

10    testimony by both parties that plaintiff was not handcuffed --

11    or, I'm sorry -- plaintiff was not immediately removed from the

12    cell after punching Corrections Officer Mitchell because of

13    this resistance, or, if we go according to plaintiff's own

14    allegations, because he was on the floor of the cell.

15         So I think --

16         THE COURT:  Sorry.  To be clear, we are focused on the

17    sentence that talks about "minor scrapes, bumps or bruises

18    potentially could occur, often unintended.  An officer cannot

19    be held liable for every such incident."

20         I understand from prior proffer that we are not

21    talking about unintended minor scrapes or bumps or bruises, but

22    rather as just proffered by counsel, the officer intentionally

23    punched Mr. McCurdy in order to respond to being struck

24    himself.

25         So what is the relevance or significance of the

J93Qmcc4

1    instruction regarding unintended scrapes or bruises in the

2    context of a case in which the proffer is that the officer

3    intentionally punched the plaintiff?

4           MS. GOYKADOSH:  So the relevance is that after the

5    officer intentionally punched the plaintiff after the plaintiff

6    punched him, at that point plaintiff resisted being handcuffed,

7    and he was brought down to the floor of the cell, and there was

8    a struggle as they attempted to gain control.  And that

9    struggle might have caused minor bumps or bruises or scrapes.

10          So that's the relevance of that language.  It goes to

11   plaintiff's actions.  There is going to be testimony about the

12   struggle after the punch.

13          MR. LICHTMACHER:  Your Honor, if I may, I don't think

14   any part of the instructions will be instructing the jury that

15   if he got minor bumps and bruises while rolling around on a

16   floor resisting and putting the handcuffs on or whatever that,

17   you know, that that's compensable.  No part of the instruction

18   says that, and that's what the defendant is trying to back

19   door; that if they hit him and the harm was only relatively

20   minor or saying de minimus, this is what they're back-dooring,

21   then, oh, you know, you can't find them liable for that.

22          It's different.  If they want to say he got minor cuts

23   and bruises rolling around on the floor while he was resisting

24   being handcuffed, that's something else.  No jury is going to

25   find them liable for that.  But if they did in fact punch him

J93Qmcc4

numerous times and kick him numerous times and he got bruises

and he got relatively minor, in the big picture, you know,

bruises and scrapes all over his body and pains, you know, then

a jury could think, oh, well, you know, they're minor, so we

can't compensate him for that, when in fact that's not the law.

So it's not about a de minimus injury.  This is about

how it was incurred.  This really goes to causation.  If you

want a sentence about them rolling around on the floor, and he

gets minor scrapes and bruises and he hurts himself and those

aren't compensable, that's something else.  That's not what

they're talking about here.

MS. GOYKADOSH:  Your Honor, respectfully, number one

is that there's been no proffer with regard to kicks, as I

believe plaintiff's counsel just mentioned.  There was a

proffer earlier with regards to a punch.  However, there hasn't

been any proffer with regard to a kick.

But getting back to this language on pages 17 and 18,

again there was no previous objection.  There is an objection

being raised now.  There is no objection from plaintiff's

counsel based on the fact that this might be legally

inaccurate.  From what I'm understanding, the objection just

appears to be based on the fact that the jury is just going to

understand that if it's de minimus, they shouldn't compensate

him for that, but I would like that language to be explicitly

said to the jury.  I can't depend on the jury maybe

J93Qmcc4

1    understanding something.  I think it's very helpful to have

2    that language explicitly to the jury.

3                THE COURT:  Thank you.

4                Anything further, counsel for plaintiff?

5                MR. LICHTMACHER:  I don't want to be negative, but I

6    think the entire argument was off point that I just heard.

7    Proffer about kicks.  Yeah, he testified he'd been kicked.

8    That's my proffer about kicks.  He testified about it, and,

9    again, it would be illegal to tell a jury, it would be

10   improper, it would not be correct law to tell the jury that as

11   a result of being intentionally kicked and punched, as opposed

12   to rolling around on the floor possibly while, you know,

13   allegedly resisting whatever they're doing, that, you know, he

14   can't be compensated for that, and that's my problem with it.

15               THE COURT:  Thank you.

16               MR. LICHTMACHER:  And it's in the context of the

17   entire charge that I raise it now.

18               THE COURT:  Good.  Thank you.

19               I agree with counsel for plaintiff on this point.  I

20   think that the requested sentence is what I will call a push

21   instruction.  The request would have me tell the jury that an

22   officer cannot be held liable for minor scrapes, bumps or

23   bruises.  That's not accurate.  I understand this may be

24   intended to describe circumstances in which unintended

25   consequences of the use of force -- I should say, that certain

J93Qmcc4

1   uses of force may lead to minor bruises which are not

2   themselves compensable, but to the extent that this is intended

3   to be a summary of the broader legal principles related to this

4   concept, I fear that, as counsel for plaintiff has described,

5   that it is a compression of those principles in a way that

6   could be confusing because it says that, as I stated earlier,

7   "minor scrapes, bumps or bruises could occur ... an officer

8   cannot be held liable for every such incident."  The law is not

9   that.  If he received minor scrapes, bumps or bruises as a

10  result of the use of excessive force, the officer could be held

11  liable for it.  So I'm concerned about this compression of the

12  law which I believe may lead to, I'll call it, confusion in the

13  eyes of the jurors and the underlying legal principles that

14  we've appropriately accounted for in the other sections of the

15  charge.

16          So I will include the language at the bottom of page

17  17 of ECF No. 128 immediately following the deleted text that

18  we just discussed, but I will not include the language

19  regarding minor scrapes.  We do have language already that says

20  that not every push or shove that may lead or seem unnecessary

21  violates the Constitution, which I think begins to address

22  the -- or addresses adequately the issue that's been raised.

23          Counsel for plaintiff's next comment is on page 23.

24          Counsel for defendants, do you have any changes prior

25  to that?

J93Qmcc4

1          MS. GOYKADOSH:  My next changes are on page 23 as

2     well, your Honor.

3          THE COURT:  Good.  Thank you.

4          So, counsel for plaintiff, where is your change on

5     page 23?

6          MR. LICHTMACHER:  Section E should be omitted in its

7     entirety.  You can't mitigate your damages when you're in jail.

8     You can't go to Mount Sinai Hospital.  You can't call for a

9     doctor.  You can't take an Uber somewhere to go get medicine.

10    So I can't see how this could possibly be relevant to this

11    case.

12         THE COURT:  Thank you.

13         Counsel for defendant.

14         MR. LICHTMACHER:  And if I may, I was not aware of

15    exactly when he was released after this, you know, initially.

16    Now I have a much better idea, and I realize this would have

17    been completely impossible, so factually it's off.

18         THE COURT:  Counsel for defendants, is this something

19    that you expect to try to prove?

20         MS. GOYKADOSH:  No, your Honor.  That was why we were

21    going to say as well that we did not think that a charge on

22    mitigation of damages was necessary.

23         THE COURT:  Thank you.  I will strike it.  Good.

24         Counsel for plaintiff, where's your next change?

25         MR. LICHTMACHER:  Nothing further.

J93Qmcc4

1              THE COURT:  Good.

2              Counsel for defendants, where, if anything, is your

3    next change?

4              MS. GOYKADOSH:  Also on page 23 with regards to

5    punitive damages, we don't think that punitive damages are

6    appropriate in this case.  I mean, obviously the evidence

7    hasn't yet been presented, but I don't believe that there will

8    be a factual predicate in the trial record that either of the

9    defendants' conduct was motivated by evil motive or intent or

10   that either of the defendants acted with callous indifference

11   to the federally protected rights of plaintiff.

12             A party is not entitled to have the court give an

13   instruction for which there is no factual predicate in the

14   record.  Again, I don't believe there will be a factual

15   predicate in the record, and in order to justify an award of

16   punitive damages, the defendants' unlawful conduct must surpass

17   a certain threshold.  So here there needs to be something in

18   the record that would support the charge of punitive damages

19   and also the question of punitive damages on the verdict form,

20             I know we're not there yet, but for both of these

21   things, there simply isn't anything at this point that I

22   believe would support that charge.  There is nothing in the

23   record that supports any evil intent, any wrongdoing, and I

24   don't anticipate that there will be anything in the trial

25   record as well.  So we would ask that the jury not be charged

J93Qmcc4

1    on punitive damages in this case.

2              THE COURT:  Thank you.

3              Yes, Counsel?

4              MR. LICHTMACHER:  Your Honor, it's too early for that

5    application, your Honor, and I'm pretty positive the plaintiff

6    is going to say he was on the floor in handcuffs getting

7    punched and kicked all over his body, and that would support

8    punitive damages.

9              THE COURT:  Good.  Thank you very much.

10             So I agree with counsel for defendants that there is

11   nothing in the record at this point that supports putting this

12   charge to the jury, but that's largely because there's nothing

13   on the record.  I will entertain a request to exclude this

14   proposed charge after the evidence is in.

15             Let's engage in a brief conversation now, however,

16   based on the proffer by counsel for plaintiff.

17             Counsel, assuming that the evidence is as counsel has

18   described that plaintiff was on the floor and handcuffed and

19   was being kicked by the defendants, do you anticipate making an

20   application to the Court to remove the punitive damages

21   instruction if the facts develop as I just described?

22             MS. GOYKADOSH:  Your Honor, if the facts do develop

23   that way, I think there would also need to be something in

24   addition to plaintiff being on the floor handcuffed and kicked

25   that would support a motive or an intent.  So the facts in and

J93Qmcc4

1    of themselves, I do not believe are sufficient.  I turn to a

2    case by Judge Matsumoto.  This was *Bermudez v. The City of New*

3    *York*, and the facts in that case were that the plaintiff was on

4    the ground, and he said that he was hit on the head with an

5    asp.

6             THE COURT:  I'm sorry, with a what?

7             MS. GOYKADOSH:  That the police officers hit him on

8    the head with an asp, with a baton.  It's a type of baton.

9             THE COURT:  Thank you.

10            MS. GOYKADOSH:  In that case, Judge Matsumoto declined

11   to charge the jury on punitive damages because there wasn't

12   anything in the record about the officers' evil intent or

13   motive.

14            THE COURT:  I'm sorry, can I ask, was the plaintiff

15   restrained in the *Bermudez* case?

16            MS. GOYKADOSH:  He was not.

17            THE COURT:  Thank you.

18            Do you see a factual distinction between hitting

19   someone while they're in handcuffs and when they're not?

20            MS. GOYKADOSH:  I do, your Honor, but at the same time

21   I still think that there would need to be testimony about evil

22   intents and motives.  I think what I'm trying to say is that

23   the fact of the actions in and of themselves without anything

24   about motives or evil intents is not enough.

25            THE COURT:  Thank you.  Just to help me understand the

J93Qmcc4

```
1    argument, what type of evidence of evil intent would you

2    believe would be necessary?

3              MS. GOYKADOSH:  Testimony from the individuals who are

4    alleged to have used the force as to why they did what they

5    did.

6              THE COURT:  Thank you.  Fine.

7              I will take up this issue if and when the question is

8    put to the Court following the submission of evidence.  I will

9    just briefly observe that frequently intent is something that

10   one must infer from a person's conduct rather than expecting

11   that you can necessarily get precise words that were coursing

12   through their minds at the time.

13             So I do not accept as matter of principle at this

14   point that the only way to prove intent is by having the

15   witness accused of acting evilly presenting express testimony

16   conceding that they acted in a evil manner.  I do not endorse

17   that as a legal matter.  I will entertain any arguments

18   regarding whether or not the evidence presented supports the

19   punitive damages instruction after the evidence is in.

20             I do note the distinction between kicking someone who

21   is restrained on the ground and potentially hitting somebody

22   with an asp who is still resisting arrest and who is not

23   restrained.

24             Good.  So I will defer ruling on this issue.  Please

25   raise it with the Court if you wish to raise this issue
```

J93Qmcc4

1    following the admission of evidence regarding this matter.  I

2    will include it in the proposed charge, and I will leave it to

3    counsel to raise the issue again in the event that the evidence

4    as presented does not in their view support the charge.

5              Where is the parties' next potential change?

6              Counsel for plaintiff?

7              MR. LICHTMACHER:  I have nothing further.

8              THE COURT:  Thank you.

9              Counsel for defendants?

10             MS. GOYKADOSH:  Nothing further for the charge, your

11   Honor.

12             THE COURT:  Good.

13             Thank you.  So let's turn to the verdict sheet.

14             MR. LICHTMACHER:  I don't have one here, your Honor.

15             THE COURT:  Thank you.  We will have one handed to

16   you.

17             MR. SIDDIQI:  Your Honor, I have an extra copy I can

18   give it to Mr. Lichtmacher.

19             MR. LICHTMACHER:  Thank you, Omar.  Appreciate it.

20             THE COURT:  Good.  Please do.

21             I am looking at the proposed verdict form.  Counsel,

22   where is the first change, or proposed change?

23             First, counsel for plaintiff.

24             MR. LICHTMACHER:  A half a moment, your Honor.

25             THE COURT:  Thank you.

J93Qmcc4

1          Counsel for defendants?

2          MS. GOYKADOSH:  Page 2, your Honor.

3          THE COURT:  Good.  Thank you.  Please proceed.

4          MS. GOYKADOSH:  On page 2, question 2B, that's the

5    question with regards to nominal damages.  It's not necessarily

6    an objection per se, but I was just wondering whether the Court

7    would like to do a stand-alone question for nominal damages.  I

8    think it just might be clearer.  But that's all I have to say

9    about that.

10         MR. LICHTMACHER:  Your Honor, I think it's clear the

11   way it is.  It's fine.

12         THE COURT:  Thank you.

13         MR. LICHTMACHER:  It's a very direct verdict sheet.

14         THE COURT:  Thank you.  Give me one moment.

15         Thank you.

16         I believe that the way it's presented is accurate.

17   Counsel for defendants, can you articulate what the concern is?

18         MS. GOYKADOSH:  My concern, your Honor, is just that

19   it gets a little bit buried in there, and I think that if it

20   were a stand-alone, it might be easier to follow along, but

21   again, this is not something that we're necessarily objecting

22   to.  It's just a matter of formatting.

23         THE COURT:  Thank you.  My preference would be to keep

24   it as it is.  The reason why I say that is because both A and B

25   within subsection 2 flow from the baseline answer to question

J93Qmcc4

1   2.  So 2A tells them what to do if they answer yes.  2B tells

2   them what to do if they answer no.  Of course, they only get to

3   2 at all if they've found liability under question 1.

4          So I believe that this is accurate, and I believe that

5   the logic of including both potential consequences of each of

6   the potential responses to question 2 is appropriate underneath

7   question 2 as subsections A and B is described here.

8          Counsel for defendants, anything else?

9          MS. GOYKADOSH:  Yes, your Honor.  On page 3.

10          THE COURT:  Please.

11          MS. GOYKADOSH:  So the punitive damages question on

12   page 3 reads:  "Did plaintiff prove by a preponderance of the

13   evidence that he is entitled to punitive damages against either

14   defendant?"

15          And we would propose that it read:  "Did plaintiff

16   prove by a preponderance of the evidence that he is entitled to

17   be awarded punitive damages?"  So we would add those three

18   words.

19          THE COURT:  Thank you.

20          Counsel for plaintiff, any concern about that proposed

21   modification?

22          MR. LICHTMACHER:  "Awarded" is always a little bit of

23   a loaded word, your Honor, for a plaintiff.  It makes it seem

24   like there's an extra barrier to meet.  You know, that it's

25   like, oh, you're giving him an award, especially with somebody

J93Qmcc4

```
 1    in jail.  I think the simpler language is more direct, and it
 2    is in no way injurious to the plaintiff or prejudicial to the
 3    plaintiff.  The language is perfect.
 4                THE COURT:  Thank you.
 5                Counsel for defendants, any further argument?
 6                MS. GOYKADOSH:  No, your Honor.
 7                THE COURT:  Is the language as provided believed to be
 8    inaccurate?
 9                MS. GOYKADOSH:  I don't believe so, your Honor.
10                THE COURT:  Thank you.
11                I will leave it as is.  I believe that it is legally
12    accurate, and it is simple.  My preference is for the, I'll
13    call it, substance of the instructions with respect to each of
14    these things to be in the charges and to have the verdict sheet
15    itself do little work.  I appreciate the argument by plaintiff
16    that the word "award" has some normative associations but that
17    its inclusion here is potentially prejudicial to him.  Since
18    it's unnecessary, I will decline to make that change.
19                Good.
20                MS. GOYKADOSH:  Your Honor, I have one more thing, I'm
21    sorry.
22                THE COURT:  Please, go ahead.
23                MS. GOYKADOSH:  In the language that's all in caps
24    locks.
25                THE COURT:  Yes, give me one moment, please.  Yes.
```

J93Qmcc4

1   Please proceed.

2           MS. GOYKADOSH:  So it currently reads, "Please

3   indicate in the space provided the amount of punitive damages

4   as to each of the defendants below."

5           So, we would just propose that it read:  "Please

6   indicate the amount of punitive damages that plaintiff has

7   proven he is entitled to recover against each defendant in the

8   space below."

9           THE COURT:  So can I restate that as a request that I

10  include the words "plaintiff has proven" after the word

11  "damages."  So that the all caps language would read in full:

12  "If you answered yes to question 3, please indicate in the

13  space provided the amount of punitive damages plaintiff has

14  proven as to each of the defendants below."

15          Is that accurate, counsel for defendants?

16          MS. GOYKADOSH:  Your Honor, we believe that the word

17  "entitled" should be included.  However, we do appreciate the

18  Court's inclusion of those two additional words "has proven."

19  So if that is what is the Court's decision is, then that is

20  fine, your Honor.

21          THE COURT:  Thank you.

22          Counsel for plaintiff, any concerns about the words

23  "plaintiff has proven" with respect to an award of punitive

24  damages?

25          MR. LICHTMACHER:  Yes, you don't really -- it's my

J93Qmcc4

understanding, and I'm sure the Court will correct me if I'm

wrong, you don't really prove punitive damages.  It's something

that the jury assesses to punish somebody if they found they

acted particularly egregiously.  So usually the language I've

seen is like, you know, an amount that is appropriate for, you

know, the actions incurred or whatever, anything like that.  I

think I gave you language to that last night, but I may not

have.  I did it late.  And late in two ways.

          But, nevertheless, usually the language is not what

he's proving, because you don't prove them.  What you do -- I'm

being redundant.  What you do is show it was a heinous act, and

because it was a heinous act, how much does the jury decide to

award the plaintiff, you know, as punishment?  And that's not

the word they usually use, but, you know, it would be

appropriate pursuant to the actions that defendant took.  But

proof?  I can't prove punitive damages.  There's no way.  You

can prove compensatory damages.  Punitive damages are something

that the jury decides by themselves, and that language is

wrong, in my opinion.

          THE COURT:  Thank you.  That's fine.  Good.

          So I would decline to make the change for

substantially those reasons.  The verdict sheet as written is

accurate.  The substance of the effort that the jury must

undertake in order to assess punitive damages described in the

proposed charge, assuming that I administer it, and @fraying

J93Qmcc4

 1     their determination in the verdict sheet itself is unnecessary,

 2     so I decline to make that change.

 3              MR. LICHTMACHER:  Your Honor, if you could just leave

 4     the word "proven" out.  If you could just leave that word out,

 5     I have no objection to it.

 6              THE COURT:  I'll just leave it as it is.  Good.

 7              So thank you very much.  Counsel, I will circulate a

 8     revised version of the charges.  I don't believe that I've

 9     implemented changes to the verdict sheet as a result of today's

10     conference.

11              As I said earlier, I expect that counsel will raise

12     any issues with respect to the appropriateness of the punitive

13     damages instruction following the introduction of evidence and

14     prior to my review of the charge with the jury.  Please do so

15     promptly following the introduction of this evidence so that I

16     can consider it.

17              MS. GOYKADOSH:  Your Honor?

18              THE COURT:  Yes.

19              MS. GOYKADOSH:  I'm so sorry to interrupt.  Just one

20     thing just, going back to the punitive damages question.

21              THE COURT:  Please.

22              MS. GOYKADOSH:  The punitive damages charge currently

23     reads:  "You may award punitive damages against the defendant

24     if plaintiff has proven by a preponderance of the evidence that

25     the defendants' conduct was malicious or involved reckless or

callous indifference."  So, I mean, I think it just mirrors the

charge to include the "has proven" language.

THE COURT:  Thank you.

Let me just respond by explaining how I understand

plaintiff to read the verdict sheet and what the distinction

is.

In the introduction of paragraph three, it requires a

plaintiff prove by preponderance of the evidence that he's

entitled to punitive damages; i.e., has he proven that

according to the language that you just described that the

defendants acted with the degree of culpability that's

articulated there.  So, that degree of proof is encompassed in

paragraph 3, and plaintiff's counsel has not taken issue with

that.

The question that he has raised is whether there is a

particular quantum of proof as to the amount of punitive

damages in the same way that one would prove consequential

damages.  One must prove punitive damages in the same way;

i.e., this is the specific amount that is warranted.  Counsel

for plaintiff has taken the position that punitive damages or

substantive was distinct from something like consequential

damages.

So just to respond briefly to the language from the

charge that you just pointed to, I understand plaintiff to not

take issue with the obligation that plaintiff prove those

J93Qmcc4

1    things by preponderance of the evidence.  My understanding is

2    evidenced by the fact that he did not object to the text of

3    paragraph three of the verdict sheet.  Rather, the issue

4    related here relates to the amount of punitive damages, which

5    is not addressed by the portion of the charge which you just

6    read.

7                MS. GOYKADOSH:  Thank you, your Honor.

8                THE COURT:  Thank you.

9                Good.  So, anything else that we should take up,

10   Counsel, before we adjourn for the day or recess for the day?

11               My hope is that Mr. McCurdy will be here ready to

12   proceed.  Counsel, I hate to ask because I'm sure that you have

13   this in hand, but what about his clothes?

14               MR. LICHTMACHER:  Well, unfortunately, the person who

15   has his clothes, his mother, has proven unavailable.  I will

16   try tonight to see if she can drop it somewhere where maybe she

17   can bring it to the court before work.  And I haven't been

18   lucky with this so far.  I have contacted with her.  I have

19   spoken to her.  I will call her again when I get back to the

20   office and attempt to.

21               THE COURT:  Thank you.  Please do work on that hard.

22   We will need to proceed early in the morning.  I prefer for

23   them not to see him in Rikers garb.

24               MR. LICHTMACHER:  He's not in Rikers garb.

25               THE COURT:  Good.

J93Qmcc4

1          MR. LICHTMACHER:  He's not convicted, so he's in some

2     combination, I don't know that much about it, of what's

3     allowable, but it's not an orange jump suit or anything like

4     that.

5          THE COURT:  That's good to hear.  Thank you.

6          MR. LICHTMACHER:  One more thing.  The medical records

7     review we're going to argue, excuse me, discuss it tonight and

8     I don't think there's any possibility we could get it to you by

9     7:00 considering the late hour now.  So if we could have a

10    little more time with that, maybe a couple more hours, we can

11    get it in.  My adversary is going to provide what she thinks

12    should be redacted.  I'll comment on it, and we can email that

13    to you.  But I won't get back to my office till 6:00.

14         THE COURT:  Thank you.  Let me propose this.  First,

15    I'd be happy to give you a moderate amount of additional time,

16    but I also don't know that that's necessary.  What I believe

17    that you can do, which would be relatively straightforward, is

18    to use some space here to sit together and highlight the

19    relevant language.  If you're all in the same room, it would

20    take out a step of circulating it.  I can hand the parties a

21    highlighter and you can highlight the things that you think

22    should be redacted, and you can show me where there are areas

23    of dispute relatively expeditiously.  That is an option.

24         That said, I'd be happy to give you until 8:00, but I

25    just want to let you know that you may wish to simply do this

J93Qmcc4

1    work in person rather than batting drafts back and forth.

2              MR. LICHTMACHER:  I think I prefer the in-person

3    option.  I think my adversary does.

4              MS. GOYKADOSH:  Yes, your Honor, we would prefer the

5    in-person option, but I just want to be clear about something.

6    We're going to confer with plaintiff's counsel hopefully now,

7    and hopefully we will come to an agreement as to what should be

8    redacted, but the person who is doing the redaction is

9    Mr. Lichtmacher because he is the one that's going to introduce

10   the records.  Is that correct?

11             THE COURT:  Thank you.  Correct.  Him introducing the

12   records will implement them.

13             MR. LICHTMACHER:  After the redactions are agreed to.

14   Of course, I'm not going to send a redacted copy and say I want

15   to make changes.

16             THE COURT:  I'm sorry, would you say that again?  I

17   missed your last comment.

18             MR. LICHTMACHER:  I'm not going to send redacted copy

19   and say do you want to make changes now?  So after we get it

20   confirmed, and I'm sure we will have some discussions with the

21   Court, then I will sit here and do the redactions.

22             THE COURT:  My hope is that the parties will reach

23   substantial agreement on these things, in part because I expect

24   that they will be introduced at some point during the course of

25   trial day tomorrow. You should make arrangements to finalize

J93Qmcc4

1    any redactions following the Court's ruling on any issues early

2    in the day.  If that requires that you have a PDF on a laptop

3    so that you can quickly implement the redactions, you should

4    have one.  But I don't expect that we will be taking a

5    substantial break in the trial day in order to accomplish these

6    redactions.  So I expect that the parties will (A) work to try

7    to identify as many areas of agreement as you can.  And, (B),

8    that you will be prepared to make any mechanical changes to the

9    document promptly tomorrow so that the redacted version can be

10   presented to the jurors.

11            MR. LICHTMACHER:  If it please the Court, I could

12   bring a redacting pen.  I do not have a laptop with facilities

13   that could make redactions.  We only have one computer in my

14   office like that.  But I could bring a redacted pen and they're

15   pretty quick.

16            THE COURT:  That's fine.  Good.  Anything else before

17   we recess?

18            MR. LICHTMACHER:  Small item.

19            THE COURT:  Yes.

20            MR. LICHTMACHER:  Can I leave my bag with some of my

21   important stuff here?

22            THE COURT:  We will be locking the courtroom.  I will

23   not be unlocking it until tomorrow morning.  This is still,

24   however, not a thoroughly secured space.  I think it's pretty

25   secure, but there will be other people that will have access to

J93Qmcc4

1    the space.  I have no other proceedings here between today and

2    the beginning of trial tomorrow.

3              MR. LICHTMACHER:  I guess the answer is yes at my own

4    risk.

5              THE COURT:  Yes, at your own risk.

6              MR. LICHTMACHER:  I'll take the risk, your Honor.

7              THE COURT:  Fine.  Good.

8              Anything else counsel for defendants?

9              MS. GOYKADOSH:  No, your Honor.

10             THE COURT:  Good I'll see you all here tomorrow

11   morning.  Please be here at 9:00.

12             (Trial continued on September 4, 2019 at 9:00 a.m.)

13

14

15

16

17

18

19

20

21

22

23

24

25